530 E-filing

1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name ___CARDIN, LUIS_____
        (Last)              (First)                  (Initial)

3  Prisoner Number ___C-35792_____

4  Institutional Address ___P.O. BOX 689, SOLEDAD, CA 93960-0689___

5

6  ==================================================

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

8  LUIS CARDIN,                                    )
   (Enter the full name of plaintiff in this action.)  )

9                                                  )
                                                   )
10                 vs.                             )   Case No. _____
                                                   )   (To be provided by the clerk of court) **JSW**
   BEN CURRY, WARDEN (A),                          )
11 _____)   **PETITION FOR A WRIT**
                                                   )   **OF HABEAS CORPUS**
12 _____)                          **(PR)**
                                                   )
13 _____)
                                                   )
14 (Enter the full name of respondent(s) or jailor in this action)  )
                                                   )
15 _____)

16 ==================================================
                   Read Comments Carefully Before Filling In

17 When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19 counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 District Court for the district in which the state court that convicted and sentenced you is located. If

26 you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 your petition will likely be transferred to the district court for the district that includes the institution

28 where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1   <u>Who to Name as Respondent</u>

2          You must name the person in whose actual custody you are. This usually means the Warden or

3   jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4   you are imprisoned or by whom you were convicted and sentenced. These are not proper

5   respondents.

6          If you are not presently in custody pursuant to the state judgment against which you seek relief

7   but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8   custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9   was entered.

10  <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11         1. What sentence are you challenging in this petition?

12             (a)    Name and location of court that imposed sentence (for example; Alameda

13                    County Superior Court, Oakland):

14         SUPERIOR COURT                       LOS ANGELES

15             Court                                  Location

16             (b)    Case number, if known __A364312__

17             (c)    Date and terms of sentence _9/15/81    15 YEARS TO LIFE_

18             (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                    parole or probation, etc.)              Yes _X_    No _____

20                    Where?

21                    Name of Institution: CORRECTIONAL TRAINING FACILTY-SOLEDAD

22                    Address: P.O. BOX 689, SOLEDAD, CA 93960-0689

23         2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  187 PC - SECOND DEGREE MURDER

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS        - 2 -

1    3. Did you have any of the following?

2        Arraignment:                                    Yes __X__    No _____

3        Preliminary Hearing:                            Yes __X__    No _____

4        Motion to Suppress:                             Yes _____   No __X__

5    4. How did you plead?

6        Guilty __X__    Not Guilty _____    Nolo Contendere _____    PLEA BARGAIN

7        Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9        Jury _____    Judge alone_____    Judge alone on a transcript _____

10   6. Did you testify at your trial?                   Yes _____   No __X__

11   7. Did you have an attorney at the following proceedings:

12       (a)    Arraignment                              Yes __X__    No _____

13       (b)    Preliminary hearing                      Yes __X__    No _____

14       (c)    Time of plea                             Yes __X__    No _____

15       (d)    Trial                                    Yes _____   No _____

16       (e)    Sentencing                               Yes __X__    No _____

17       (f)    Appeal                                   Yes __X__    No _____

18       (g)    Other post-conviction proceeding         Yes _____   No __X__

19   8. Did you appeal your conviction?                  Yes _____   No _____

20       (a)    If you did, to what court(s) did you appeal?

21              Court of Appeal                          Yes _____   No _____

22              Year: _____    Result: _____

23              Supreme Court of California              Yes _____   No _____

24              Year: _____    Result: _____

25              Any other court                          Yes _____   No _____

26              Year: _____    Result: _____

27

28       (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS        - 3 -

1             petition?                       Yes _____     No_____

2        (c)   Was there an opinion?          Yes _____     No_____

3        (d)   Did you seek permission to file a late appeal under Rule 31(a)?

4                                               Yes _____     No_____

5             If you did, give the name of the court and the result:

6 _____

7 _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?          Yes _____     No _X_

10       [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16     (a)   If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding. Attach extra paper if you need more space.

18         I.   Name of Court: LOS ANGELES SUPERIOR COURT

19            Type of Proceeding: HABEAS CORPUS

20            Grounds raised (Be brief but specific):

21            a. SAME AS HERE

22            b._____

23            c._____

24            d._____

25            Result: DENIED          Date of Result: 6/28/07

26         II.  Name of Court: SECOND APPELLATE DISTRICT

27            Type of Proceeding: HABEAS CORPUS

28            Grounds raised (Be brief but specific):

1       a._____SAME AS HERE_____

2       b._____

3       c._____

4       d._____

5       Result:__DENIED_____Date of Result: 7/26/07

6       III.    Name of Court: __California SUPREME COURT_____

7               Type of Proceeding: ___HABEAS CORPUS_____

8               Grounds raised (Be brief but specific):

9               a._____SAME AS HERE_____

10              b._____

11              c._____

12              d._____

13              Result: ___DENIED_____Date of Result: 3/19/08

14      IV.     Name of Court: _____

15              Type of Proceeding: _____

16              Grounds raised (Be brief but specific):

17              a._____

18              b._____

19              c._____

20              d._____

21              Result: _____Date of Result:_____

22      (b)     Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                              Yes_____    No_x_

24              Name and location of court: _____

25  **B. GROUNDS FOR RELIEF**

26      State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1    need more space. Answer the same questions for each claim.

2        [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5        Claim One: _____ SEE ATTACHED _____

6    _____

7        Supporting Facts:_____ SEE ATTACHED _____

8    _____

9    _____

10   _____

11       Claim Two:_____

12   _____

13       Supporting Facts:_____

14   _____

15   _____

16   _____

17       Claim Three:_____

18   _____

19       Supporting Facts:_____

20   _____

21   _____

22   _____

23       If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25   _____

26   _____

27   _____

28   _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1         List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    SEE ATTACHED

5    _____

6    _____

7    Do you have an attorney for this petition?                            Yes_____     No _X___

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on _3/29/08_

14             Date                                                       Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

**THERE IS NO EVIDENCE TO SUPPORT THE BOARD'S FINDING OF UNSUITABILITY. THE HEARING WAS ARBITRARY AND CAPRICIOUS, THUS VIOLATING PETITIONER'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS. PETITIONER IS A DEPORTABLE ALIEN WHO IS NOT A RISK OF DANGER IN HIS CURRENT CONDITION. THE BOARD'S ACTIONS VIOLATE HIS PLEA AGREEMENT.**

I

FACTS

A. *The offense*

In 1981, Petitioner was received by the California Department of Corrections after accepting a plea bargain for the second degree murder of Juan Carlos Dominguez. Although under the plea agreement the District Attorney told Petitioner he would do no more than 10 years in prison, the judge sentenced him to 15 years to life with the possibility of parole.

According to the District Attorney's files, and as read into the record by the Board, on or about December 2, 1980, victim Peran met Petitioner outside a 7-11 store located at Ninth and West Moreland. Upon leaving the store, Petitioner attempted to pull the victim to his automobile. The victim's boyfriend was approaching and Petitioner, upon seeing him, released the victim and entered his car and drove off. The murder victim Dominguez, chased Petitioner on foot and when he approached within 5 to 10 feet of the driver's side of Petitioner's car, Petitioner shot him. The victim was struck once in the chest and Petitioner drove off.

On December 7, 1980, Linda Consuett, who was living with Petitioner and his girlfriend, reported that Petitioner attempted to rape her. A neighbor, Linda Martinez, overheard her screams and knocked on her door, causing Petitioner to flee. As Petitioner was attempting to run from his residence, he noticed police officers approaching. He threw a handgun, which he was carrying, under a nearby car. Petitioner was originally arrested on the attempted rape and the handgun was recovered. Later testing of this gun and matching of Petitioner's car and his physical description resulted in the connection of Petitioner to the murder of Dominguez, which occurred 5 days earlier. (See Hearing Transcript attached as an Exhibit)

B. *Petitioner's Background*

Petitioner is a 51 year old, Hispanic, first term widowed male that is a native of El Salvador. He has a US-INS hold, and he plans to return to El Salvador on his release. He has 25 years in custody on his sentence. He is a Christian.

Petitioner dropped out of school in approximately the 9th grade in Mexico. However, he has been making good use of his institutional time. He worked as a data processor, using computer to teach students in the education department. He completed Vocational Data Processing in 1998. He also has completed Vocational Optical Technology. He also completed Vocational Microfilm and Technology. In addition, he is an experienced auto mechanic. He does have several job offers for employment as a computer data processing technician.

Both of Petitioner's parents are deceased. He has a brother living in Colombia and a sister living in Los Angeles. He stays in contact with them through letters and occasional calls.

Petitioner's wife was apparently murdered in El Salvador. He has three children by another woman and is in contact with two of those children.

## C. *Petitioner's Performance in Prison*

Petitioner's record during his 25 years of incarceration is rather remarkable. He has exceptional work reports and there is a laudatory Chrono for excellent work as an R&R Clerk. His TABE score is 11.4. As noted above, he has completed several vocational trades. He has participated in AA. He completed Breaking Barriers in 1989 and courses in Sexually Transmitted Diseases, HIV and AIDS in 1998.

His disciplinary history shows a CDC-115 in 1990 for theft. He also has 6 128's, the last one dated January of 1996. He has been disciplinary free for the last 10 years. There is no documented violent behavior. (See Transcript of Hearing attached as Exhibit)

II

## HISTORY OF PROCEEDINGS

### *The 1989 Board Hearing*

Petitioner's minimum eligible parole date was December 9, 1990. At his first parole hearing in 1989, Petitioner presented 4 Psychiatric Evaluations. In 1983, Dr. Bolin wrote, "[Mr. Cardin] appears to be a person of at least average intelligence, maintained a relevant and coherent speech throughout the interview, and has developed a reasonably good command of the English language. He showed no evidence of significant psychiatric disorder."

In 1984, Dr. Ernst wrote, "Violence potential for the crime for which he is convicted is high. This potential now appears to be approaching the normal range. Subject would appear to be one who learns from experience. This instant offense crime is estimated to be a one time only event. Subject is not now seen as representing a danger to society on release."

In 1987, Dr. Martin wrote, "I recommend that he be removed from the special calendar because psychopathology is not significantly related to any future criminal behavior and psychiatric opinion will not contribute to a release decision, and that two or more favorable psychiatric report conclusions have been written. It is felt that if he is to be paroled or release, his violent potential is less than that of the average inmate."

And in 1989, Dr. Walk wrote, "Violence potential outside a controlled setting is probably less than the peer inmate." (ALL PSYCHIATRIC REPORTS USED BY THE BOARD ARE ATTACHED AS EXHBITS)

The Board denied parole for two years based on the commitment offense. It found the offense was carried out in an especially atrocious and callous manner and the motive for the crime is inexplicable. It also found that Petitioner had a record of assaultive behavior behind a battery conviction from June 8, 1979; had an unstable social history due to his illegal alien status; and, that the Psych Report by Dr. Walk was inconclusive and recommended a possible psychosexual problem. (ALL BOARD DECISIONS ARE ATTACHED AS EXHIBITS)

*The 1991 Board Hearing*

For this hearing, a 5th Psychiatric Report was prepared for Petitioner. On November 1991, Dr. Maloof wrote, "If this inmate is to be paroled or released, consideration should be given to the following: Violence potential outside a controlled setting in the past is considered to have been average and at the present is estimated to be decreased." The alleged rape of a woman that was staying with Petitioner and his girlfriend was discussed to the Doctor's satisfaction.

The Board denied parole for 2 years based on the commitment offense. It found the offense was carried out in a dispassionate and calculated manner, which exhibited a callous disregard for the life of others. It also found Petitioner had an unstable social history because he had fathered 3 children by 3 different women and was an illegal alien, and that Dr. Maloof's psychiatric report was not supportive of release noting only slight improvement.

*The 1994 Board Hearing*

For this hearing, a 6th Psychiatric Report was prepared for Petitioner. On January 1994, Dr. O'Meara wrote, "There are no indications of any mental, emotional, or perceptual disorder. The diagnose psychopathology has been related to criminal behavior indirectly. During observation in this institution his behavior has continued to show improvement. In a less controlled setting such as return to the community he is likely to hold present gains as long as he maintains stable family relations, and avoids alcohol. If he is paroled or released violence potential outside a controlled setting is estimated to have decreased."

In spite of the good report, Petitioner stipulated to a 1 year denial by the Board.

*The 1995 Board Hearing*

For this hearing, a 7th Psychiatric Report was prepared for Petitioner. On April 1995, Dr. Wagner wrote, "The diagnosis listed above were indirectly related to this inmate's criminal offenses. It is estimated at this time that his potential for violence is much less than average for this population. It is likely the gains made while incarcerated would hold if released to the larger community." There are no suggested actions and no recommendations.

The Board denied parole for 2 years based on the commitment offense. **The recording equipment malfunction therefore the hearing could not be transcribed.**

*The 1996 Board Hearing*

For this hearing, an 8th Psychological Evaluation was conducted. Petitioner declined to be interviewed. Dr. Horon wrote a report indicating no conclusions could be drawn. The report was dated March 1996.

The Board denied parole for 3 years. It determined that Petitioner would pose an unreasonable risk of danger and a threat to public safety if released. It found the commitment offense was extremely callous. It found that there was "no documentation in the record to enable the Board to evaluate the prisoner's social or criminal history" and that Petitioner had not participated in sufficient self-help and therapy. Amazingly, the Board stated that Dr. Horon's report was dated February 24, 1994, and it was inconclusive in that it was "based on the

statements of the prisoner and those statements are inconsistent with the facts of the crime and the witnesses."

As indicated above, Petitioner declined to be interviewed by Dr. Horon and his report simply stated that no conclusions could be drawn because of that.

*The 1999 Board Hearing*

For this hearing, a 9th Psychological Evaluation was prepared for Petitioner. On February 16, 1999, Dr. Terrini wrote, "In consideration of several factors including this man's relative lack of any criminal history, as well as his relative lack of a violent history, his relative lack of CDC-115's (his only one being in 1990) and any violent CDC-115's, his violence potential within a controlled setting is considered to be significantly below average, relative to this Level II inmate population. If released to the community his violence potential is estimated to be no more than the average citizen in the community." Under psychosexual development, Dr. Terrini found no history of sexual aggression.

The Board denied parole for 3 years. The Board based its finding on the commitment offense. It stated that the offense was carried out in a callous manner. There were multiple victims. And the offense was carried out in a dispassionate manner. The Board also spoke about Petitioner's prior prison record and stated Dr. Terrini failed to address psychosexual issues.

*The 2002 Board Hearing*

No psychiatric report was prepared for this hearing. Dr. Zika, Senior Supervising Staff Psychologist, wrote, "According to the agreement that CDC Psychologists made with the Board, once a mental health evaluation is completed in the new format, revised in August of 1998, a new evaluation is not necessary each time the inmate appears before the Board. Therefore, a mental health evaluation was not conducted at this time."

The Board denied parole for 3 years. The Board based its decision on the commitment offense. It found the offense was carried out in an especially cruel and callous manner. The offense was carried out in a dispassionate manner. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. The motive for the crime was inexplicable or very trivial in relationship to the offense committed. The Board also relied on previous arrest history, failure to upgrade vocationally and educationally and insufficient self-help and therapy programs. Interestingly, the Board felt the 1999 report prepared by Dr. Terrini "appeared to be supportive" of parole.

*The 2006 Board Hearing*

For this hearing, a 10th Psychological Evaluation was prepared for Petitioner. Dr. Macomber wrote the report on March 14, 2006. Dr. Macomber found that complains of rape made in Petitioner's case were fabricated and that Petitioner had never had any problems with sexual acting out. Under ASSESSMENT OF DANGEROUSNESS he wrote, "The Level of Service Inventory was administered to determine level of risk. This is an actuarial measure that assesses criminal history, substance abuse problems, disciplinary history, and several other factors to determine current risk level. His score places him at the 4.2 cumulative frequency for prison inmates. This means that if 100 men were released on parole, he would do better than 95

of them. His potential for dangerous behavior, at this point in his life, is no greater than the average citizen in the community."

The Board denied parole for 2 years. It stated that Petitioner would pose an unreasonable risk of danger to society or a threat to public safety in released from prison. The motive for the crime was inexplicable and very trivial in relationship to the offense. The Board also stated that they could not determine the level of insight and remorse. Apparently prior criminal history was a negative factor as was allegation of sexual misconduct. And the Board stated that Dr. Macomber's report, although favorable, was contradicted by confidential information which the Board read. (See Attached Transcript of Hearing)

### *The need for Habeas review*

Petitioner now files this latest writ for habeas corpus alleging the Board has violated his due process and equal protection rights because its unsuitability determination was not supported by the forensic evidence available at the hearing [in the form of 10 Psychiatric Evaluations] and was therefore arbitrary and capricious. Further, Petitioner's due process were violated because the Board's findings were (1) contrary to the only reliable evidence of his current dangerousness and (2) relied on findings unsupported by any evidence.

III

LEGAL FRAMEWORK

A. Parole Suitability.

Penal Code section 3041 provides the framework for parole decisions for indeterminate life inmates. Subdivision (a) requires that, one year prior to the inmate's minimum release date, the BPT meet with the inmate and "normally set a parole release date" according to specified criteria. However, subdivision (b) provides that if the BPT determines the inmate is not suitable for parole because "consideration of the public safety requires a more lengthy period of incarceration," it need not set a release date.

B. Standard of Review.

This writ proceeding is an original proceeding that requires an independent review of the record **that was before the BPT at the time it made its decision.**

IV

ANALYSIS

A. The Commitment Offense.

The BPT concluded Petitioner posed an unreasonable risk of danger to society or a threat to public safety if released from prison. The motive for the crime was inexplicable and very trivial in relationship to the offense.

*No Evidence the Murder Was Especially Cruel and/or Callous.*

Section 2402, subdivision (c)(1)(D), describing one of the factors that supports a finding the crime was committed "in an especially heinous, atrocious or cruel manner," provides the offense was "carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." Petitioner contends there is no evidence to support this finding. The victim died of a single gunshot wound, fired from between 5 to 10 feet, to his chest area. Death was almost instantaneous. The crime was not committed in an exceptionally callous manner disregarding the victim's suffering, because the forensic evidence confirms there was no painful or lingering death.

Courts have stated that all second degree murders by definition involve some callousness – i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others. As noted, however, parole is the rule, rather than the exception, and a conviction for second degree murder does not automatically render one unsuitable. Accordingly, the BPT cannot rely on the bare conviction for second degree murder to deny parole under the exceptionally callous or cruel factor. To deny parole on this ground there must be some evidence

Petitioner engaged in conduct apart from and beyond the minimum conduct necessary to convict him of second degree murder, that cruelly or callously exacerbated the victim's suffering.

The record is devoid of any evidence of aggravated of aggravated conduct reflecting an exceptionally callous disregard for human suffering. There is no evidence Petitioner tormented, terrorized, or injured the victim before deciding to shoot him; or that he gratuitously increased or unnecessarily prolonged his pain and suffering.

The relevant evidence shows no conduct beyond the minimum required for conviction of second degree murder showing a callous disregard for human suffering, therefore the BPT's use of this factor was arbitrary and capricious.

*No Evidence the Murder Was Dispassionate.*

Section 2402, subdivision (c)(1)(B), describing a factor that can support a finding the crime was committed "in an especially heinous, atrocious or cruel manner," provides that the offense was one "carried out in a dispassionate and calculated manner." Petitioner contends there is no evidence to support this finding. The BPT's only reference to the evidence supporting this finding was again to note the manner of the death. However, Petitioner accepted responsibility for his actions by accepting a plea agreement for second degree murder involving only 10 years of prison time. He now has 25 years in custody for this offense even though he never contested the charges brought on by the State.

Accordingly, the BPT's reliance on this factor was arbitrary and capricious.

ADDITIONALLY, PETITIONER REQUESTS THAT THIS COURT SPECIFICALLY ADDRESS THE FOLLOWING THREE BOARD REMARKS AND THEIR CONSTITUTIONAL IMPLICATIONS: (1) IS THE BOARD CORRECT IN ITS BELIEF THAT THERE IS NO LIMIT ON HOW MUCH TIME PETITIONER MUST SERVE?

On Page 27 of the Hearing Transcript, when Petitioner indicated that according to his plea agreement he would do no more than 10 years, Presiding Commissioner Biggers stated:

"Yeah, but see – what I think you fail to realize is that you got a life sentence. You were given a life sentence. Not 10 years. Now, you can – there are certain things that you can do. Program and show the Board and the People of the State of California that you will be found suitable to be paroled so that you can – that you will not go back and re-offend. But, **there is nothing to say that you have a time limit on how long you have to be in prison.** Do you understand what I've just said?"

Petitioner submits that this statement is contrary to constitutional mandates and violates the principles of rehabilitation, which are the cornerstone of parole. Apparently the Board is not aware of the language of Penal Code section 3041, which states that parole is the norm, nor is the Board taking into consideration any proportionality issues.

(2) IS IT TRUE THAT THE DA DOES NOT HAVE THE RIGHT TO MAKE
A DEAL? A PLEA BARGAIN NEED NOT BE HONORED?

On Page 28 of the Hearing Transcript, Presiding Commissioner Biggers
again states:

"I don't think any District Attorney has the right to make a deal
with you to say only 10 years. Especially when you got a life sentence."

Petitioner replies that that's what he was told when he plead guilty.
To which the Commissioner answers:

"But again, the DA does not have that authority. When you make – when
you go into a plea bargain, the judge has to be there, all the
(indiscernible) has to be there and they all agree. So if the DA told you
10 years and the judge was sentencing you to life, at that point then you
have grounds for appeal."

Petitioner submits the Board is wrong in its views. In Buckley v.
Terhune (9th Circuit 2006) 441 F.3d 688, Buckley was also sentenced to 15
years to life, but the federal court found that the State had breached the
terms of his agreement. See also Brown v. Poole (9th Circuit 2003) 337 F.3d
1155.

(3) THE BOARD KEEPS BRINGING UP AN ALLEGED ATTEMPTED RAPE THAT
TOOK PLACE ON THE DAY OF HIS ARREST. IN SPITE OF THE 10 PSYCH
REPORTS PRESENTED, THE BOARD STATES THAT PSYCHOSEXUAL ISSUES
REMAIN UNRESOLVED.

On page 38 of the hearing Transcript, the Board states Petitioner
needs therapy for psychosexual issues based on an alleged rape. This
allegation was unsubstantiated. The alleged assaults could have been
proven, but weren't. They were dismissed.

Petitioner's attorney objected to this line of inquiry and Presiding
Commissioner Biggers overruled the objection on the grounds that he could
do so because this was just an administrative hearing.

Is this ruling constitutional? Petitioner has had 10 Psychological
Reports prepared by 10 different Doctors and before this hearing he took a
Level of Service Inventory with Dr. Macomber. No psychosexual issues have
been found. Can the Board continue to use this factor to deny parole?

V

## CONCLUSION

Petitioner respectfully requests that this Court review the present petition to insure that Petitioner was accorded the basic requirements of due process and equal protection of the law. Petitioner submits that there is no evidence to support the BPT's decision that he would pose an unreasonable risk of danger to society if released, based solely on the commitment offense.

Petitioner attaches as exhibits all his hearing transcripts, and all his Psych Reports, for review.

Petitioner prays this Court will issue the writ and order him released forthwith. Petitioner also prays this Court will directly address the remarks made by Presiding Commissioner Biggers in regards to his plea agreement, "life means life," and the use of a rape allegation that was dismissed because it was fabricated.

DATED: 3/29/08

Respectfully submitted,

Luis Cardin, In Pro Se

## G. **OTHER RELEVANT DECISIONS**

Petitioner respectfully requests that the Court take a look and compare this case with others where the circumstances were more aggravated, yet reviewing courts found that due process was violated and the "some evidence" standard not met.

The Court in <u>In re Wen Lee</u> (2006) 143 Cal.App.4th 1400, [a multiple victims case with one person dead], found that Lee's crimes were not "especially heinous, atrocious or cruel." Additionally, the Court held, "Besides not being especially atrocious, heinous or callous, Lee's crimes have little, if any, predictive value for future criminality. Simply from the passing of time, Lee's crimes **almost 20 years ago** have lost much of their usefulness in foreseeing the likelihood of future offenses than if he had committed them five or ten years ago." Further, "The test is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety." Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety.

In <u>In re Jeffrey Elkins</u>, 2006 DJDAR 14489, Elkins beat his victim over the head with a baseball bat, robbed him, put the body in his car trunk and drove to a remote area where he dumped the body. He was convicted by a jury in 1980. **He served 26 years**. The Court wrote, "The commitment offense, this court has observed, is an unsuitability factor that is immutable and whose predictive value 'may be very questionable after a long period of time.' (*Scott II*, supra, 133 Cal.App.4th at pp. 594-595, fn. Omitted.) We have also noted, as has our Supreme Court, strong legal and scientific support that 'predictions of future dangerousness are exceedingly unreliable,' even where the passage of time is not a factor and the assessment is made by an

expert. Reliance on an immutable factor, without regard to or consideration of subsequent circumstances, may be unfair, run contrary to the rehabilitative goals espoused by the prison system, and result in a due process violation. A parole hearing does not ordinarily provide a prisoner a very good opportunity to show his offense was not committed 'in an especially heinous, atrocious or cruel manner,' even if such evidence exists and the prisoner is willing to run the risk his effort to make such a showing will be seen as unwillingness to accept responsibility and therefore evidence of unsuitability."

"Our case, while resting on state due process (Cal. Const., art. I, section 7, subd. (a)), compares favorably to cases affording habeas corpus relief on federal due process grounds, against parole denials for California inmates with exemplary post-offense records who had been sentenced to terms of at least 15 years to life for second degree murder . In one, the same inmate earlier involved in our Supreme Court's decision in *Rosenkrantz* had offended at age 18, shooting a younger brother's friend [while lying in wait] who had revealed the inmate's homosexuality to the inmate's intolerant father. The inmate's 'perfect prison record' and gains of nearly **two decades** included, like Elkins' act of jeopardizing his own safety to protect a correctional officer, saving the life of a fellow inmate. The Court found due process violated when the former Board of Prison Terms denied parole, as it had before, based solely on the gravity of the commitment offense. (Rosenkrantz v. Marshall (C.D. Cal. 2006 444 F.Supp.2d 1063, 1065, 1070.)

"In a second such case, former Governor Davis had reversed a BPT suitability determination, stressing principally the gravity of the commitment offense. (Martin v. Marshall (2006) 431 F.Supp.2d 1038) After first finding no support for other grounds, the court turned to the factors surrounding and preceding the offense, which included the 26-year-old petitioner fleeing the scene of his fatally shooting a drug dealer acquaintance and bystander in a

blaze of gunfire at a restaurant, wounding yet another bystander, and without seeking medical assistance for any of his victims. The court reasoned: 'Petitioner has surpassed his minimum sentence, and has already been found suitable for parole by two decision-making bodies ... He has been in prison for approximately 26 years and has taken advantage of numerous rehabilitation and enrichment programs. He has exceeded his minimum sentence by approximately six years ... The Governor's sole reliance on the circumstance of the offense and conduct prior to the offense, constitutes a due process violation.'"

"A third instructive case is Irons v. Warden of Solano (2005) 358 F.Supp.936 (Irons) (app. pending sub nom. Irons v. Carey (9th Cir. 2005) 408 F.3d 1165, No. 05-15275), where an inmate serving 17 years to life was found unsuitable for parole at his 5th hearing before the BPT. The facts of the offense, again, in many respects far worse than those before us. The petitioner killed a fellow boarder after an argument in which the victim denied stealing from the landlords, as the landlords had claimed. The petitioner loaded a handgun, went to the victim's room, fired 12 rounds into him, said he was going to let him bleed to death and, when the victim complained of the pain, took out a buck knife and stabbed him twice in the back. The petitioner later borrowed a car and drove the body to an isolated coastal location where he released it into the surf. The BPT had relied exclusively on the facts of the commitment offense and the petitioner's drug use at the time. The Court wrote: 'Important in assessing any due process violation is the fact that continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole ... The circumstances of the crimes will always be what they were, and petitioner's motive for committing them will always be trivial. Petitioner has no hope for ever obtaining parole    .

except that a panel in the future will arbitrarily hold that the circumstances were not that serious or the motive was more than trivial.' ... **After 15 or so years** in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, this petitioner does not posses those attributes, the predictive ability of the circumstances of the crime is near zero."

In Rio v. BPT Commissioners, ND No. C 05-1483 MPH (Dec. 2006), a case involving a petitioner convicted of second degree murder even though not the actual shooter, Judge Patel wrote: "The BPT considered the circumstances of the murder and concluded that it was an carried out in a cruel and callous manner, carried out in a manner which demonstrates exceptionally callous disregard for human suffering, and was done for a trivial motive." Rio and his crime partners Amaro and Willie went to Roberto Hernandez's apartment under the pretense of purchasing jewelry. During the robbery, Willie shot Hernandez in the back of the head. The Judge went on to say, "There was not sufficient evidence to support the finding that the circumstances of the commitment offense tended to show unsuitability. The BPT looked at the killing without any attention paid to Rio's role in that killing. The BPT's approach fails to distinguish between the actual killer and those who may be held liable based on their role in the crime such as aiding and abetting or under a felony murder theory as it rates all of them the same on the dangerousness scale. Not only does that approach seem contrary to common sense, it also is contrary to the wording of the regulation. The regulation calls for the BPT to consider whether 'the prisoner committed the offense in an especially heinous, atrocious or cruel manner,' indicating that the focus is on the parole candidate's particular actions in the killing ... Here, Rio was present when his crime partner killed the victim. The evidence also

was that Rio was there for a robbery and the shooting of the victim was rather unexpected to Rio. There was no evidence that Rio was the leader of the criminal episode, and no evidence that Rio directed the killing or otherwise urged the killer to kill. Under the circumstances, his crime partner's execution-style killing does not provide some evidence that Rio 'committed the offense in an especially heinous, atrocious or cruel manner.' The state may hold a person criminally liable when his crime partner kills during a robbery, but the BPT has a different chore. The BPT is charged with determining whether a prisoner is suitable for parole, not whether he may be held liable for the killing in the first place. **The evidence in the record does not support a finding that Rio committed the offense in an especially heinous, atrocious or cruel manner."**

Finally, In Willis v. Kane, 2007 WL 1232060 (N.D.Cal.), Willis killed his 19-month old daughter in 1983. He hit her several times in the head and failed to obtain medical help when she exhibited signs of distress. After the baby was dead, Willis disposed of her body by first hiding it in a closet and then putting it in a dumpster. The BPH found Willis unsuitable for parole, relying primarily on the circumstances of the offense. The BPH also stated that Willis had not sufficiently participated in beneficial self-help and therapy programming and that he did not have realistic parole plans. The Court **granted relief** and noted that "[W]hen the totality of circumstances are considered, Willis' 1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003. Willis' case is the kind of case Biggs and Irons cautioned about: the continued reliance on the immutable events of the crime to deny parole for present dangerousness despite the candidate's exemplary behavior in prison, favorable current psychological reports, and the absence of any other violence or criminal record." The Court also noted that Willis apparently had been in custody even longer than his **18 years** in the state

prison system because he had earned credits for time spent in custody before his arrival in the state prison system. When Willis was denied parole in 2003, it was the **seventh time** he was found unsuitable for parole. *It appears that the commitment offense was the paramount reason at each decision, as Willis' otherwise favorable profile had not changed in years: almost discipline-free in prison, no substance abuse problem, a stable social history and no criminal activity other than the murder.*

## CONCLUSION

The Board's decision was arbitrary and capricious. The Petitioner did not receive a fair hearing, nor will he ever.

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _____ LUIS CARDIN _____, declare:

I am over 18 years of age and a party to this action. I am a resident of _____ SOLEDAD _____

_____ Prison,

in the county of _____ MONTEREY _____,

State of California. My prison address is: _____ P.O. BOX 689, GW-215L _____,

_____.

On_____·_____ 3/29/08 _____,
                                    (DATE)

I served the attached: _____ PETITION FOR HABEAS CORPUS _____

_____

(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

        Office of The Attorney General
        110 West A Street, Suite 1100
        San Diego, CA 92186

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _3/29/08_
            (DATE)

                                    _____
                                    (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                                    ::ODMA\PCDOCS\WORDPERFECT\22832\1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | APRIL 30, 2007 | | | |
|---|---|---|---|---|
| Honorable: STEVEN R. VAN SICKLEN | | Judge | J. PULIDO | Deputy Clerk |
| NONE | | Bailiff | NONE | Reporter |

| | (Parties and Counsel checked if present) | |
|---|---|---|
| BH 004215 In re, LUIS CARDIN, Petitioner, | Counsel for Petitioner: | |
| On Habeas Corpus | Counsel for Respondent: | |

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered petitioner's Writ of Habeas Corpus filed on August 18, 2006. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole (See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667 (hereafter *Rosenkrantz*).)

Petitioner was received in the Department of Corrections on September 15, 1981 after a conviction for second-degree murder. He was sentenced to fifteen years to life. His minimum parole eligibility date was December 9, 1990. The record reflects that on December 2, 1980, petitioner attempted to force a female victim into his car. When he noticed her boyfriend approaching, he let her go, got into his car and drove away. Her boyfriend began to chase the car on foot. At that point, petitioner shot the man in the chest and fled. He was arrested five days later after a friend who was staying at his home accused him of attempting to rape her. Police were able to find the gun used in the shooting and match his appearance and car to the description given by witness at the crime scene.

The Board found petitioner unsuitable for parole after a parole consideration hearing held on April 5, 2006. Petitioner was denied parole for two years. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.

The Court finds that there is some evidence to support the Board's finding that "the motive for the crime is inexplicable or very trivial in relation to the offense" (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E).) "To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." (*In re Scott* (2004) 119 Cal.App.4th 871, at 893.) In this case, petitioner shot and killed the victim after making a pass at his girlfriend. The victim was unarmed and on foot, while petitioner was in his car and could easily have driven away without any altercation. The Board found that there was no reason for petitioner to shoot this man; and, therefore, the motive is materially less significant than those that conventionally drive people to commit second-degree murder and there is some evidence to support that finding.

1

| Minutes Entered |
|---|
| 04-30-07 |
| County Clerk |

# *SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES*
**DEPT 100**

| Date: | APRIL 30, 2007 | | | |
|---|---|---|---|---|
| Honorable: STEVEN R. VAN SICKLEN | | Judge | J. PULIDO | Deputy Clerk |
| NONE | | Bailiff | NONE | Reporter |

<table>
<tr><td colspan="2" align="center">(Parties and Counsel checked if present)</td></tr>
<tr><td>BH 004215<br>In re,<br>LUIS CARDIN,<br>    Petitioner,</td><td>Counsel for Petitioner:</td></tr>
<tr><td>On Habeas Corpus</td><td>Counsel for Respondent:</td></tr>
</table>

The Board found that petitioner has not demonstrated that "he understands the nature and magnitude of the offense." (Cal. Code Regs., tit. 15, §2402, subd. (d)(3).) The commitment offense occurred as a result of petitioner's attempt to force a woman into his car. Five days later, he was accused of an attempted sexual assault on a friend. The Board found that petitioner needed to address this issue with a psychologist before he is ready for parole. (*Reporter's Transcript,* April 5, 2006, p. 61.) Although petitioner denies the allegations, there is some evidence in the record to support the Board's finding that petitioner would benefit from further programming.

Accordingly, the petition is denied.

The court order is signed and filed this date. The clerk is directed to send notice.

A true copy of this minute order is sent via U.S. Mail to the following parties:

Luis Cardin
C-35792
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Department of Justice
Office of the Attorney General of the State of California
110 West A Street, Suite 1100
San Diego, CA 92186-9961
Attn: Ms. Cynthia Lumely



THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED IS A FULL, TRUE, AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN THIS OFFICE.

ATTEST _____   JUN 2 8 2007

JOHN A. CLARKE, Executive Officer/Clerk of the Superior Court of the State of California for the County of Los Angeles.

By __Joseph K. Pulido_____, Deputy

2        JOSEPH M. PULIDO, S.C.C.
                233219

| Minutes Entered |
|---|
| 04-30-07 |
| County Clerk |

| **SUPERIOR COURT OF CALIFORNIA** **COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012 | CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles Superior Court<br><br>JUN 2 8 2007<br><br>John A. Clarke, Executive Officer/Clerk<br>By_____, Deputy |
| PLAINTIFF/PETITIONER:<br><br>LUIS CARDIN | |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br><br>BH004215 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

☐ Order Extending Time
☐ Order to Show Cause
☐ Order for Informal Response
☐ Order for Supplemental Pleading

☑ Order re: Writ of Habeas Corpus
☐ Order
☐ Order re:
☐ Copy of Petition for Writ of Habeas Corpus for the Attorney General

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

June 28, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _____, Clerk
JOSEPH M. PULIDO, S.C.C.
233219

Luis Cardin
C-35792
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Department of Justice
Office of the Attorney General of the State of California
110 West A Street, Suite 1100
San Diego, CA 92186-9961
Attn: Ms. Cynthia Lumely

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

COURT OF APPEAL - SECOND DIST.

F I L E D

JUL 2 6 2007

JOSEPH A. LANE _____ Clerk

_____ Deputy Clerk

| | |
|---|---|
| In re | B200715 |
| LUIS CARDIN, | (L.A.S.C. No. A364312) |
| on | O R D E R |
| Habeas Corpus. | |

THE COURT*:

The petition for writ of habeas corpus, filed July 23, 2007, has been read and considered.

The petition is denied.

_____        _____        _____
*SPENCER, P. J.                          MALLANO, J.                         ROTHSCHILD, J.

S155483

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re LUIS CARDIN on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

MAR **1 9** 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____GEORGE_____
Chief Justice

# EXHIBIT A
# (2006 HEARING TRASCRIPT)

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of:               )        CDC Number C-35792
                          )
LUIS CARDIN               )        INMATE
                          )
_____)        COPY

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

APRIL 5, 2006

PANEL PRESENT:

Mr. Archie Joe Biggers, Presiding Commissioner
Ms. D.H. McBean, Deputy Commissioner

OTHERS PRESENT:

Mr. Luis Cardin, Inmate
Ms. Pat Fox, Attorney for Inmate
Mr. Jack Delavigne, Deputy District Attorney
Mr. Carlos Noriega, observer

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No    See Review of Hearing
_____  Yes   Transcript Memorandum

**Sheri Robinson, Peters Shorthand Reporting**

ii

## INDEX

PAGE

Proceedings ........................................ 1

Case Factors ..................................... 13

Pre-Commitment Factors ........................... 14

Post-Commitment Factors .......................... 28

Parole Plans ..................................... 48

Closing Statements ............................... 53

Recess ........................................... 58

Decision ......................................... 60

Adjournment ...................................... 66

Transcriber Certification ........................ 67

--oOo--

1

1          P R O C E E D I N G S

2          **DEPUTY COMMISSIONER MCBEAN:** Okay, good

3    morning, we're on record.

4          **PRESIDING COMMISSIONER BIGGERS:** Okay,

5    this is a subsequent parole consideration

6    hearing for Luis Cardin, CDC number is C-35792.

7    Today's date is April the 5th, 2006. We are

8    located at the Correctional Training Facility in

9    Soledad. The inmate was received on 09-15-81

10   from Los Angeles County. The life term began on

11   the same date. 09-15 - September 15, 1981.

12   Controlling offense which the inmate has been

13   committed is second degree murder, one count

14   with a violation of Penal Code 187. The inmate

15   received a term of 15 years to life with a

16   minimum eligible parole date of 12-09-90. Case

17   number is A364312. This hearing is being tape

18   recorded and for the purpose of voice

19   identification, each of us will state our first

20   and last names, spelling our last name. When

21   it's your turn Mr. Cardin, after spelling your

22   last name, please give us your CDC number. I

23   will give my name first and move to my left. My

24   name is Archie Joe Biggers, B-I-G-G-E-R-S and

25   I'm the Commissioner.

26          **DEPUTY COMMISSIONER MCBEAN:** My name is

27   D.H. McBean, M-C-B-E-A-N, Deputy Commissioner.

2

1          **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  Jack

2     Delavigne, D-E-L-A-V-I-G-N-E, Deputy District

3     Attorney, L.A. County.

4          **ATTORNEY FOX:**  Pat Fox, F-O-X, attorney

5     for Mr. Cardin.

6          **INMATE CARDIN:**  Luis Cardin, C-A-R-D-I-N.

7     CDC number Charlie 35792.

8          **PRESIDING COMMISSIONER BIGGERS:**  Thank

9     you very much. Mr. Cardin, there - in front of

10    you there is a - an ADA statement. I'm sorry. I

11    forgot that we had an observer here today.

12         **DEPUTY COMMISSIONER MCBEAN:**  Yeah, we

13    have an observer.

14         **MR. NORIEGA:** Carlos Noriega, N-O-R-I-E-G-

15    A.

16         **PRESIDING COMMISSIONER BIGGERS:**  Mr.

17    Noriega is being considered to become a

18    Commissioner and is observing the hearing. Now,

19    Mr. Cardin, there is a - an ADA statement that's

20    in front of you. Would you please read it out

21    loud for us?

22         **INMATE CARDIN:**  Yes sir. The American

23    with Disabilities Act, ADA is a law to help

24    people with disabilities. Disabilities are

25    problems that make - make it harder for some

26    people to see, hear, breathe, talk, walk, learn,

27    think, work or take care of themselves than it

3

1    is for others. Nobody can be kept out of public

2    places or activities because of a disability. If

3    you have a disability, you have the right to ask

4    for help to get read - ready for your BPT

5    Hearing. Get to the hearing, talk, read - read

6    forms and papers and understand the hearing

7    process. BPT will look at what you ask for to

8    make sure that you have a disability that is

9    covered by the ADA and that you have asked for

10   the right kind of help. If you do not get help

11   or if you don't think you got - you got the kind

12   of help you need, ask for a BPT 1074 Grievance

13   Form. You can also get help to fill it out.

14         **PRESIDING COMMISSIONER BIGGERS:**  Okay, do

15   you understand what that means, Mr. Cardin?

16         **INMATE CARDIN:**  Yes, sir.

17         **PRESIDING COMMISSIONER BIGGERS:**  Okay.

18   What does it mean in your own words?

19         **INMATE CARDIN:**  If I have any disability.

20         **PRESIDING COMMISSIONER BIGGERS:**  What

21   kind of disability?

22         **PRESIDING COMMISSIONER BIGGERS:**  Walking

23   and talking, understanding everything that's

24   said on the forms.

25         **PRESIDING COMMISSIONER BIGGERS:**  Okay,

26   now I see here that you signed a BPT Form 1073

27   on February 22, 2005, indicating that you do not

4

1   have a disability that's defined under the

2   Americans' with Disabilities Act. Is that still

3   true?

4          **INMATE CARDIN:** Yes, sir. It's still

5   true.

6          **PRESIDING COMMISSIONER BIGGERS:** I see

7   you're wearing glasses.

8          **INMATE CARDIN:** Yes.

9          **PRESIDING COMMISSIONER BIGGERS:** Okay,

10  did you have those glasses when you reviewed

11  your Olson?

12         **INMATE CARDIN:** Yes.

13         **PRESIDING COMMISSIONER BIGGERS:** The same

14  glasses?

15         **INMATE CARDIN:** The same glasses.

16         **PRESIDING COMMISSIONER BIGGERS:** Okay so

17  then you don't need any magnifying device or

18  anything to help you?

19         **INMATE CARDIN:** No sir.

20         **PRESIDING COMMISSIONER BIGGERS:** Okay,

21  how about hearing? You have any hearing

22  impairments?

23         **INMATE CARDIN:** No, I do not.

24         **PRESIDING COMMISSIONER BIGGERS:** Have you

25  ever been involved in the Triple CMS or EOP

26  programs?

27         **INMATE CARDIN:** No, I have not sir.

5

1        **PRESIDING COMMISSIONER BIGGERS:**   How far
2   did you get in school on the streets?

3        **INMATE CARDIN:**   On the streets. Ninth
4   grade.

5        **PRESIDING COMMISSIONER BIGGERS:**   Okay.
6   You didn't take any special education classes or
7.  anything?

8        **INMATE CARDIN:**   No, sir.

9        **PRESIDING COMMISSIONER BIGGERS:**   So, do
10  you suffer from any disability that would
11  prevent you from participating in today's
12  hearing?

13       **INMATE CARDIN:**   No.

14       **PRESIDING COMMISSIONER BIGGERS:**   Okay,
15  counsel has your client's ADA rights been met?

16       **ATTORNEY FOX:**   Yes, as to this hearing.

17       **PRESIDING COMMISSIONER BIGGERS:**   Thank
18  you very much.

19       **ATTORNEY FOX:**   You're welcome.

20       **PRESIDING COMMISSIONER BIGGERS:**   This
21  hearing is being conducted pursuant to section
22  3041 and 3042. And the rules and regulations of
23  the Board of Parole - Board of Prison Terms
24  governing parole consideration hearings for life
25  inmates. The purpose of today's hearing is to
26  once again, consider the number and nature of
27  the crimes you were committed for, your prior

6

1  criminal and social history and your behavior
2  and programming since your commitment. We've had
3  the opportunity to review your Central File and
4  the prior transcript and you will be given the
5  opportunity to correct or clarify the record. We
6  will reach a decision today and inform you
7  whether or not we find you suitable for parole
8  and the reason for our decision. If you are
9  found suitable for parole, the length of your
10 confinement will be explained to you. Nothing
11 that happens here today will change the findings
12 of the Court. This Panel is not here to retry
13 your case. The Panel is here for the sole
14 purpose to determine - determining whether
15 you're suitable for parole. Now do you
16 understand this?

17        **INMATE CARDIN:**  Yes, sir I do.

18        **PRESIDING COMMISSIONER BIGGERS:**  Okay,
19 The hearing will be conducted in three phases.
20 The Commissioner will - I will start off and
21 discuss with you your committed offense, your
22 prior criminal and social history. Then
23 Commissioner McBean will talk to you about some
24 of your post-conviction factors which will
25 include your - your counselor's report and your
26 psychological evaluation. Then, I will return
27 and discuss with you your parole plans and any

7

1    letters of support or opposition that may be in

2    your file. Once that is concluded, the

3    Commissioner, the District Attorney, we have one

4    here from L.A. County and your attorney will be

5    given the opportunity to ask you questions.

6    Questions from the District Attorney shall be

7    asked through the Chair and you will directly -

8    direct your answers to the panel. Next, the

9    District Attorney, then your attorney, and then

10   you will be given an opportunity to make a final

11   statement regarding your parole suitability.

12   Your statements should address why you feel you

13   are suitable for parole. You understand that?

14        **INMATE CARDIN:**  Yes, sir.

15        **PRESIDING COMMISSIONER BIGGERS:**  Okay.

16   The panel will then recess, clear the room and

17   deliberate. Once the deliberations are complete

18   the panel will resume the hearing and announce

19   its decision. The California Code of Regulations

20   state that regardless of time served, a life

21   inmate shall be found unsuitable or denied

22   parole if, in the judgment of the panel, the

23   inmate would pose an unreasonable risk of danger

24   to society if released from prison. You have

25   certain rights. Those rights include the right

26   to a timely notice of this hearing, the right to

27   review your Central File and the right to

8

1    present relevant documents. Counselor, Miss Fox,

2    has your client's rights been met?

3           **ATTORNEY FOX:**  Yes, as to this hearing.

4           **PRESIDING COMMISSIONER BIGGERS:**  Thank

5    you.

6           **ATTORNEY FOX:**  You're welcome.

7           **PRESIDING COMMISSIONER BIGGERS:**  You have

8    an additional right to be heard by an impartial

9    panel. Do you have any objections to the panel?

10          **INMATE CARDIN:**  No, I do not.

11          **PRESIDING COMMISSIONER BIGGERS:**  Okay, do

12    you Miss Fox?

13          **ATTORNEY FOX:**  No, no objection, thank

14    you.

15          **PRESIDING COMMISSIONER BIGGERS:**  Thank

16    you. You will receive a written copy of our

17    tentative decision today. The decision becomes

18    effective within 120 days. A copy of the

19    decision and a copy of the transcript will be

20    sent to you and you will have 90 days from that

21    date to appeal, if you so desire. At this point,

22    I just want to let you know the Board has

23    eliminated its appeal process. If you disagree

24    with anything in today's hearing, you have the

25    right to go directly to the Court with your

26    complaint. Do you understand this?

27          **INMATE CARDIN:**  Yes, I do.

9

1        **PRESIDING COMMISSIONER BIGGERS:**  Okay.
2    You're not required to admit your offense or
3    discuss your offense; however, the panel does
4    accept the finding of the Court to be true. Do
5    you understand this?

6        **INMATE CARDIN:**  I do understand.

7        **PRESIDING COMMISSIONER BIGGERS:**  Okay,
8  . thank you. Commissioner McBean, is there any
9    confidential information and if so, will it be
10   used?

11       **DEPUTY COMMISSIONER MCBEAN:**  Yes, there
12   is confidential information and we will use it.

13       **PRESIDING COMMISSIONER BIGGERS:**  Thank
14   you very much. Pass over the checklist to your
15   attorney and to the District Attorney.
16   (indiscernible) one to make sure that we are all
17   operating off the same set of documents. In
18   fact, I have to make sure that you both sign
19   that as well.

20       **ATTORNEY FOX:**  Alright, if it pleases the
21   Panel, I'll mark that we do have the Board
22   reports and we have the psychiatric evaluation
23   as well.

24       **PRESIDING COMMISSIONER BIGGERS:**  Okay,
25   thank you.

26       **ATTORNEY FOX:**  You're welcome. Today we
27   were handed some documents, and I will be

10

1    objecting to at least one of them on the ten day
2    rule. Thank you.

3        **PRESIDING COMMISSIONER BIGGERS:** The ten
4    day rule on which one, ma'am?

5        **ATTORNEY FOX:** The - a letter that is in
6    the file, or was handed to me in today's
7    materials from the Los Angeles Police
8    Department.

9        **PRESIDING COMMISSIONER BIGGERS:** Well, I
10   have to sustain your objection simply because
11   the District Attorney will be - I mean this is
12   from the L.A. Police Department.

13       **ATTORNEY FOX:** Right.

14       **DEPUTY DISTRICT ATTORNEY DELAVIGNE:** I
15   have them, thank you.

16       **PRESIDING COMMISSIONER BIGGERS:** And we
17   have the District Attorney from - from the L.A.
18   County and I will take that under advisement and
19   if we elect to use it, then I will rule at that
20   point, as to whether or not we will consider it.
21   Thank you. Are there any additional documents to
22   be submitted?

23       **ATTORNEY FOX:** No, not at this time.

24       **PRESIDING COMMISSIONER BIGGERS:** Okay.
25   Are there any preliminary objections?

26       **ATTORNEY FOX:** Yes, we object to the
27   reference to the confidential file and the use

11

1    of any information that may be held in that file

2    simply because I have not had access to it and

3    we're not able to meet any allegations that

4    might be - or rebut any allegations that might

5    be persuasive to the Panel.

6        **PRESIDING COMMISSIONER BIGGERS:**  Alright,

7    ma'am. Counsel, thank you very much. Your

8    objection is overruled. Will the inmate be

9    speaking to us today?

10       **ATTORNEY FOX:**  Yes, Mr. Cardin will,

11   however, he will not be discussing the facts of

12   the crime of commitment. He does have a prepared

13   statement that's very brief that he would like

14   to read at the end of the hearing.

15       **PRESIDING COMMISSIONER BIGGERS:**  Okay,

16   thank you very much.

17       **ATTORNEY FOX:**  You're welcome.

18       **PRESIDING COMMISSIONER BIGGERS:**  Okay, in

19   order for me to get the facts of the record, I'm

20   going to read just the facts of the case into

21   the record.

22       **ATTORNEY FOX:**  And may I inquire the

23   source of the statement?

24       **PRESIDING COMMISSIONER BIGGERS:**  The

25   source is going to be the probation officer's

26   report.

27       **ATTORNEY FOX:**  Okay, and I would make an

12

1  objection to that, simply because it's not under
2  oath and in - in my view of the probation
3  officer's report is merely a police officer's
4  wish list and contains hearsay on hearsay and
5  unreliable alleged information. So, we'd object
6  to that, but I do understand -

7      **PRESIDING COMMISSIONER BIGGERS:** Okay.
8      **ATTORNEY FOX:** The case went by way of
9  plea and there is no -

10     **PRESIDING COMMISSIONER BIGGERS:** Thank you
11 and after that - with that, then your - your
12 objection is overruled.

13     **ATTORNEY FOX:** Thank you.

14     **PRESIDING COMMISSIONER BIGGERS:** Alright.
15 The facts of the offense obtained by the
16 District Attorney file (indiscernible). On or
17 about December the 2nd, 1980, victim Peran, P-E-
18 R-A-N met the defendant outside a 7-11 store
19 located at Ninth and West Moreland (phonetic).
20 Upon leaving the store, the defendant attempted
21 to pull the victim to his automobile. The
22 victim's boyfriend was approaching and the
23 defendant, upon seeing him, released the victim
24 and entered his car and drove off. The murder
25 victim Dominguez, D-O-M-I-N-G-U-E-Z, chased the
26 defendant on foot and when he approached within
27 five to ten feet of the driver's side of the

13

1   defendant's car, the defendant shot him. The
2   victim was struck once in the chest and the
3   defendant drove off. Statement of witnesses
4   indicate that the victim did not have a weapon
5   and the defendant had the opportunity to drive
6   from the scene without the conflict. A physical
7   description of the defendant and his automobile
8   was obtained. On December 7, 1980, Linda and
9   I'll spell the last name. C-O-N-S-U-E-T-T,
10  Consuett, who was living with the defendant and
11  his girlfriend, reported that the defendant
12  attempted to rape her. A neighbor, Linda
13  Martinez, M-A-R-T-I-N-E-Z, overheard her screams
14  and knocked on her door, causing the defendant
15  to flee. As the defendant was attempting to run
16  from his residence, he noticed police officers
17  approaching. He threw a handgun, which he was
18  carrying, under a nearby car. The defendant was
19  originally arrested on the attempted rape and
20  the handgun was recovered. Later testing of this
21  gun and matching of the defendant's car and his
22  physical description resulted in the connection
23  of the defendant to the murder which occurred
24  five days later.

25          **ATTORNEY FOX:**  Earlier.

26          **PRESIDING COMMISSIONER BIGGERS:**  Earlier,
27  I'm sorry. Five days earlier. So, I understand

14

1   Mr. Cardin, that you do not want to discuss the

2   crime. The gun, how did you get the gun?

3        **INMATE CARDIN:**  That's the crime too,

4   right?

5        **ATTORNEY FOX:**  Won't be discussing it.

6        **PRESIDING COMMISSIONER BIGGERS:**  He won't

7   discuss any aspects of the crime, whatsoever?

8   Where he got the gun or anything like that?

9        **INMATE CARDIN:**  This is why I have this

10   little statement.

11        **PRESIDING COMMISSIONER BIGGERS:**  Okay,

12   Alright.

13        **ATTORNEY FOX:**  I understand.

14        **PRESIDING COMMISSIONER BIGGERS:**  Let's go

15   to your social factors. You are the third of six

16   children born to Louis Ortega P-E-C-H and Viola

17   Cardin?

18        **INMATE CARDIN:**  Yes.

19        **PRESIDING COMMISSIONER BIGGERS:**  They

20   live in Mexico?

21        **INMATE CARDIN:**  Used to. My mom, until I

22   was eleven years old - my mother moved to El

23   Salvador.

24        **PRESIDING COMMISSIONER BIGGERS:**  To El

25   Salvador?

26        **INMATE CARDIN:**  Yes.

27        **PRESIDING COMMISSIONER BIGGERS:**  But you

15

1  were born in Mexico?

2      **INMATE CARDIN:**  Yes, I was.

3      **PRESIDING COMMISSIONER BIGGERS:**  Okay,

4  your mother has never worked and your father is

5  a doctor with the Mexican Army?

6      **INMATE CARDIN:**  Used to be. He's dead

7  already.

8      **PRESIDING COMMISSIONER BIGGERS:**  He

9  passed away. I'm sorry to hear that.

10      **INMATE CARDIN:**  Okay.

11      **PRESIDING COMMISSIONER BIGGERS:**  Now all

12  of your remaining family members are in Mexico,

13  is that right?

14      **INMATE CARDIN:**  No, there's – most of my

15  family lives in El Salvador now.

16      **PRESIDING COMMISSIONER BIGGERS:**  El

17  Salvador now. Why'd they leave Mexico and go to

18  El Salvador?

19      **INMATE CARDIN:**  Because my mother moved

20  from Mexico to El Salvador when she separated

21  from my father.

22      **PRESIDING COMMISSIONER BIGGERS:**  Okay.

23      **INMATE CARDIN:**  (indiscernible) my

24  mother.

25      **PRESIDING COMMISSIONER BIGGERS:**  Okay,

26  you say there are no history of alcohol or drug

27  abuse or criminality for any of your other ·

16

1   family members?

2          **INMATE CARDIN:**  No, sir.

3          **PRESIDING COMMISSIONER BIGGERS:**  Okay.

4   You came to the United States in 1977 illegally,

5   and remained in California for approximately one

6   year?

7          **INMATE CARDIN:**  Yes.

8          **PRESIDING COMMISSIONER BIGGERS:**  Okay,

9   then you moved to Chicago?

10          **INMATE CARDIN:**  Yes, sir.

11          **PRESIDING COMMISSIONER BIGGERS:**  What did

12   you do in Chicago?

13          **INMATE CARDIN:**  I just worked for a

14   mechanic's shop.

15          **PRESIDING COMMISSIONER BIGGERS:**

16   Mechanic's shop. Okay, you completed seven years

17   of school in Mexico?

18          **INMATE CARDIN:**  That's nine, not seven,

19   sir.

20          **PRESIDING COMMISSIONER BIGGERS:**  Nine?

21          **INMATE CARDIN:**  That should be a mistake

22   on the paperwork.

23          **PRESIDING COMMISSIONER BIGGERS:**  Okay and

24   you quit at age 18 to work with your father?

25          **INMATE CARDIN:**  Yes.

26          **PRESIDING COMMISSIONER BIGGERS:**  You

27   started late?

17

1        **INMATE CARDIN:**  That was when I came back
2    from El Salvador. Because, when I was eleven
3    years old and moved with my mother to El
4    Salvador, then I came back about two or three
5    years later - I came back to Mexico and stayed
6    with my father. That's when my mother remarried
7    in El Salvador, so I came back to stay with my
8    father for awhile.

9        **PRESIDING COMMISSIONER BIGGERS:**  Okay. I
10   see here that you have some vision problems but
11   you didn't mention that earlier.

12       **INMATE CARDIN:**  No, I had a surgery the
13   day I was - what do you call it? (indiscernible)
14   removal.

15       **PRESIDING COMMISSIONER BIGGERS:**  Okay.

16       **INMATE CARDIN:**  It's something that grows
17   on top of your eye.

18       **PRESIDING COMMISSIONER BIGGERS:**  Okay. A
19   cataract or something like that?

20       **INMATE CARDIN:**  It looks like it but it
21   kind of grows inside. The (indiscernible) grows
22   on the outside.

23       **PRESIDING COMMISSIONER BIGGERS:**  Okay, it
24   doesn't bother you right now?

25       **INMATE CARDIN:**  No, sir.

26       **PRESIDING COMMISSIONER BIGGERS:**  Okay.
27   You enjoy football and basketball for

18

1   recreation, huh?

2          **INMATE CARDIN:**  Yeah.

3          **PRESIDING COMMISSIONER BIGGERS:**  Not

4   married?

5          **INMATE CARDIN:**  No, I used to be married.

6   My wife got killed in El Salvador.

7          **PRESIDING COMMISSIONER BIGGERS:**  Oh, now

8   we'll talk about that a little later on here.

9          **INMATE CARDIN:**  Okay.

10         **PRESIDING COMMISSIONER BIGGERS:**  I see

11  that you - you have three children, age nine,

12  eight, and six. Living in Mexico and the product

13  of three separate females?

14         **INMATE CARDIN:**  Yes.

15         **PRESIDING COMMISSIONER BIGGERS:**  Okay, is

16  one of those one you married or did you marry

17  somebody after those three?

18         **INMATE CARDIN:**  No, it was one of them.

19         **PRESIDING COMMISSIONER BIGGERS:**  One of

20  those three. And you said that -

21         **INMATE CARDIN:**  You mean the lady I

22  married - no, no, no, sir.

23         **PRESIDING COMMISSIONER BIGGERS:**  She's

24  not one of those three?

25         **INMATE CARDIN:**  No, no, sir.

26         **PRESIDING COMMISSIONER BIGGERS:**  Okay, so

27  you married - you married to - is she's still

19

1    alive - the lady that you married got killed?

2        **INMATE CARDIN:** Yes, that's the one.

3        **PRESIDING COMMISSIONER BIGGERS:** Okay,

4    how did she die?

5        **INMATE CARDIN:** She got killed by gang

6    members in - they tried to rob her when she went

7    out - she used to live in San Francisco - she

8    went to visit her family down in El Salvador and

9    they robbed her and took the car she had,

10   (indiscernible) her money and they shot her.

11       **PRESIDING COMMISSIONER BIGGERS:** In El

12   Salvador?

13       **INMATE CARDIN:** In El Salvador.

14       **PRESIDING COMMISSIONER BIGGERS:** Sorry to

15   hear that. And this is - the three children - do

16   you know where they are? Are they still in

17   Mexico?

18       **INMATE CARDIN:** Yes, they're in touch

19   with me.

20       **PRESIDING COMMISSIONER BIGGERS:** They are

21   in touch with you?

22       **INMATE CARDIN:** The oldest - the oldest

23   one lives in El Salvador also because she lives

24   with my sister now.

25       **PRESIDING COMMISSIONER BIGGERS:** How old

26   are the children now?

27       **INMATE CARDIN:** My oldest one is 31.

20

1   That's the one you have a letter from. A support
2   letter.
3           **PRESIDING COMMISSIONER BIGGERS:**   Okay.
4   What about the other two?
5           **INMATE CARDIN:**   The other two, they live
6   in Mexico. They're married.
7           **PRESIDING COMMISSIONER BIGGERS:**   And
8   married?
9           **INMATE CARDIN:**   Yeah.
10          **PRESIDING COMMISSIONER BIGGERS:**   All
11  girls or boys?
12          **INMATE CARDIN:**   Girls, girls
13          **PRESIDING COMMISSIONER BIGGERS:**   All
14  girls.
15          **INMATE CARDIN:**   Yeah, all girls.
16          **PRESIDING COMMISSIONER BIGGERS:**   No son?
17          **INMATE CARDIN:**   No.
18          **PRESIDING COMMISSIONER BIGGERS:**   Okay, I
19  see here you were not a - there is no indication
20  that you were a gang member, is that right?
21          **INMATE CARDIN:**   Yes, sir. I've never been
22  in a gang.
23          **PRESIDING COMMISSIONER BIGGERS:**   Never
24  been involved with a gang, huh? I also noticed
25  that you didn't have a juvenile record but
26  you've had a - somewhat of a substantial adult
27  record. In 12-10-78 you - you (indiscernible) a

21

1  drunk driving warrant, is that correct?

2       **INMATE CARDIN:** Yes, sir.

3       **PRESIDING COMMISSIONER BIGGERS:** And the

4  - then May 16th for violation of a 242 you spent

5  180 days in county jail?

6       **INMATE CARDIN:** Yes.

7       **PRESIDING COMMISSIONER BIGGERS:** And 5-16

8  - I think that was the same one, but 11-15-80

9  you had an outstanding warrant. What was that

10  about, for vehicle - was that for the drunk

11  driving one?

12      **INMATE CARDIN:** The drunk driving, yeah.

13  That's what it was.

14      **PRESIDING COMMISSIONER BIGGERS:** They put

15  a warrant out for you. You didn't go to the

16  hearing or something?

17      **INMATE CARDIN:** I did, but they sent me

18  to this place like AA and I went - I attended

19  like one time and that's when I moved to

20  Chicago.

21      **PRESIDING COMMISSIONER BIGGERS:** So, you

22  stopped going to where - court ordered

23  treatment?

24      **INMATE CARDIN:** Yes, sir.

25      **PRESIDING COMMISSIONER BIGGERS:** Okay.

26  Then you got another drunk driving, is that

27  correct? No I'm sorry this is - they got the

22

1    same one here for '78. What about the battery on

2    a person? That happened in '79. This is out of

3    sequence here too. You had - you only had one

4    242, is that right?

5          **INMATE CARDIN:**  Yes.

6          **PRESIDING COMMISSIONER BIGGERS:**  Battery

7    on a person. What was that all about?

8          **INMATE CARDIN:**  Just a street fight.

9          **PRESIDING COMMISSIONER BIGGERS:**  Street

10   fight?

11         **INMATE CARDIN:**  Yeah.

12         **PRESIDING COMMISSIONER BIGGERS:**  Who'd

13   you fight?

14         **INMATE CARDIN:**  Another individual that

15   was (indiscernible) and he grabbed my ex-old

16   lady's behind and we started arguing behind the

17   (indiscernible) and we got into a fight. Fist

18   fight.

19         **PRESIDING COMMISSIONER BIGGERS:**  Then

20   there was a burglary charge back in 10-16-80.

21         **INMATE CARDIN:**  Yeah, but that's - that's

22   - that's because they arrested me and another

23   guy who was looking for work and when I came

24   back from Chicago, we was driving in a

25   residential area and they said it had been

26   reported some burglars and they thought that we

27   was one of them. They arrested us and took us to

23

1    Van Nuys County Jail - whatever that jail is and
2    they released us the next day.

3           **PRESIDING COMMISSIONER BIGGERS:**   Next
4    day, huh?

5           **INMATE CARDIN:**   Yes, sir.

6           **PRESIDING COMMISSIONER BIGGERS:** Well that
7    can be searched out a little bit to make sure
8    that - I don't see any - we can check that into
9    the C-File when you get there.

10          **ATTORNEY FOX:**   Okay.

11          **PRESIDING COMMISSIONER BIGGERS:**   Please.
12   And the lady you married was a Dolly Root
13   (phonetic) Zalelana, Z-A-L-E-L-A-N-A ?

14          **INMATE CARDIN:**   Yes ma'am - sir, excuse
15   me.

16          **PRESIDING COMMISSIONER BIGGERS:**   That's
17   alright. Okay, is there anything in here that I
18   missed that you'd like to (indiscernible) for
19   the Panel at this point?

20          **INMATE CARDIN:**   No, sir.

21          **PRESIDING COMMISSIONER BIGGERS:**   Okay,
22   Miss McBean, do you have any questions?

23          **DEPUTY COMMISSIONER MCBEAN:**   I do have a
24   question. I know you don't want to talk about
25   the facts of the crime but I'd like to know how
26   you feel about this crime.

27          **INMATE CARDIN:**   Well -

24

1    **DEPUTY COMMISSIONER MCBEAN:**   If you'd
2    like to discuss it.

3    **INMATE CARDIN:**   How I feel about the
4    crime. Well, I feel, you know, very sorry about
5    what I've done. What I did – it was out of –
6    done in stupidity. Because I understand I was
7    young and didn't think what I was doing and now
8    that I'm a mature person, I know everything that
9    I was doing was very wrong and if I had a chance
10   to turn the clock back, I guarantee you I
11   wouldn't be doing the same things. I'm very
12   sorry. I'm very sorry about the pain that I have
13   caused Juan Carlos' family, to society, to my
14   family – because we all are involved in this
15   ordeal, not just one person and if I – I wished
16   now – I wished that I had the opportunity to
17   talk to him or his family and beg them for
18   forgiveness because I have my own family now and
19   I understand what they went through. What I've
20   done. What I did to him. It was – that was
21   something very stupid – something that I
22   shouldn't have done and I understand that I
23   deserve that kind of punishment – I've got for
24   it, but there's only, you know, so much. Because
25   I – you know, I've – I've been through a lot
26   too. I've lost my parents, both of them. I lost
27   a brother while in prison, so that made me

25

1    realize - you know what these - those people
2    went through when I killed their son and I am
3    very very sorry for what I've - what I did.

4        **DEPUTY COMMISSIONER MCBEAN:**  How old was
5    your victim?

6        **INMATE CARDIN:**  17 I understand. Too
7    young. That's too young to die, I understand
8    that and -

9        **DEPUTY COMMISSIONER MCBEAN:**  Thank you.
10       **PRESIDING COMMISSIONER BIGGERS:**  Okay, I
11   have a follow up question after that as well. I
12   know you don't want to talk about the crime, but
13   in the files and especially when I'm talking
14   about your psychological evaluation, which I'm
15   sure that Commissioner McBean is going to get
16   into. You made a statement, "There is nothing I
17   can do about it now". Could you tell me what you
18   meant by that?

19       **INMATE CARDIN:**  Yeah. What I meant about
20   bringing him to - you know, Juan Carlos back
21   alive. But I just - much more that I can do, you
22   know. I'm going to - like - see, I used to drink
23   now and then, you know on occasions and so that
24   has changed. I can't do that because I know when
25   I was on the streets I was acting stupid because
26   there is no other way to describe what I - what
27   I did, okay? Now the good things I can do about

26

1   is, now - not to go back to the same life this
2   time, but I had (indiscernible) try to harm
3   people like I used to.

4       **PRESIDING COMMISSIONER BIGGERS:**  Did you
5   also remember making the statement that, "I
6   deserve punishment, but I don't think I belong
7   here. It was a mistake"?

8       **INMATE CARDIN:**  No, I didn't say - what I
9   meant was, it was a mistake what I made when I
10  committed the crime, that's what I meant.

11      **PRESIDING COMMISSIONER BIGGERS:**  Okay,
12  how about the punishment that you don't think
13  you belong here?

14      **INMATE CARDIN:**  That was 1989, right?

15      **PRESIDING COMMISSIONER BIGGERS:**  No, that
16  was on the report that I just got from 2005.

17      **INMATE CARDIN:**  No, that report was taken
18  out of the first one in 1989 done by Counselor
19  Lopez.

20      **PRESIDING COMMISSIONER BIGGERS:**
21  According to this, this was - well, I see the
22  same statement here from - done by your
23  correctional counselor here - okay; well anyway,
24  you - why didn't you feel you belong here?

25      **INMATE CARDIN:**  That I belong - I don't
26  belong here?

27      **PRESIDING COMMISSIONER BIGGERS:**  Yes, you

27

1    didn't belong here. Why did you feel that way?

2        **INMATE CARDIN:**  That's because I've

3    changed. I know I've changed a lot.

4        **PRESIDING COMMISSIONER BIGGERS:**  Okay,

5    but I'm saying - now, we'll get to that a little

6    later. When you made that statement, why didn't

7    you feel that you belonged in prison after you

8    had committed a crime where you killed someone?

9        **INMATE CARDIN:**  Yeah, the meaning was

10   after so much time.

11       **PRESIDING COMMISSIONER BIGGERS:**  So much

12   time?

13       **INMATE CARDIN:**  Exactly. Because I was -

14   I was told by the court of law that I was going

15   to go to prison for ten years and get out.

16       **PRESIDING COMMISSIONER BIGGERS:**  Yeah,

17   but see - what I think you fail to realize is

18   that you got a life sentence. You were given a

19   life sentence. Not ten years. It was life, okay?

20   And life means life. Now, you can - there are

21   certain things that you can do. Program and show

22   the Board and the people of the State of

23   California that you will be found suitable to be

24   paroled so that you can - that you will not go

25   back and re-offend. But, there's nothing to say

26   that you have a time limit on how long you have

27   to be in prison. Do you understand what I've

28

1   just said?

2       **INMATE CARDIN:**   Yeah, I understand what
3   you're saying.

4       **PRESIDING COMMISSIONER BIGGERS:**   So now,
5   if the District Attorney - I don't think any
6   District Attorney has the right to make a deal
7   with you to say only ten years. Especially when
8   you got a life sentence.

9       **INMATE CARDIN:**   That's what I was told
10  when I plead guilty.

11      **PRESIDING COMMISSIONER BIGGERS:**   But
12  again, the District Attorney does not have that
13  authority. When you make a - when you go into a
14  plea bargain, the judge has to be there, all the
15  (indiscernible) has to be there and they all
16  agree. So if the District Attorney told you ten
17  years and the judge is sentencing you to life,
18  at that point then you had grounds for appeal.
19  But, what we're doing here at this
20  administrative hearing - we're seeing that you
21  got 15 years to life. Okay, Miss McBean, would
22  you please go into the post-conviction factors?

23      **DEPUTY COMMISSIONER MCBEAN:**   Okay.
24  Alright Mr. Cardin, in this phase of the hearing
25  we're looking at your institutional adjustment
26  and I reviewed the Central File, the Board
27  report, the psych evaluations and I will give

29

1   you an opportunity to add some things if I miss

2   anything. I see you last appeared before the

3   Board on 6-5-02. At that time you were given a

4   three year denial and you were asked to remain

5   disciplinary free, upgrade educationally and

6   vocationally and participate in self-help.

7   Especially some kind of drug or alcohol program.

8   You have a current classification score of 19.

9   Your custody level is medium AR. Are you still

10  working as a sergeant's clerk?

11        **INMATE CARDIN:** Yes, in Receiving.

12        **DEPUTY COMMISSIONER MCBEAN:** In R&R?

13        **INMATE CARDIN:** Yes.

14        **DEPUTY COMMISSIONER MCBEAN:** Okay and

15  before that you were in the - in culinary, were

16  you?

17        **INMATE CARDIN:** Yes.

18        **DEPUTY COMMISSIONER MCBEAN:** As a clerk?

19  We've had a number of clerk positions and you're

20  doing really well in that position. You're

21  making exceptional work reports and there's a

22  laudatory chrono in the file regarding your

23  excellent work in R&R. You have a TABE Score of

24  11.4. Looks like you haven't acquired a GED yet

25  though, is that correct?

26        **INMATE CARDIN:** Yes, it is.

27        **DEPUTY COMMISSIONER MCBEAN:** Okay, why

30

1   haven't you gotten a GED yet?

2       **INMATE CARDIN:**  Because I decided to take

3   vocationals on trades instead because I'm going

4   to be deported when I – on release I'm going to

5   be deported back to my country and that's what

6   I'm going to really need. Vocationals to get a

7   job. Like right now, I completed my computer

8   technician vocational and that's what I do now

9   for – in here. And that's what I'm planning to

10  do when I get out. I want – when I – when I go

11  back to El Salvador, GED means nothing down

12  there in my country.

13      **DEPUTY COMMISSIONER MCBEAN:**  Well, it

14  means you have a high school diploma. They have

15  high school in El Salvador, right?

16      **INMATE CARDIN:**  Yes, they do.

17      **DEPUTY COMMISSIONER MCBEAN:**  You'd be

18  able to say you have a high school diploma so

19  I'm sure it would have meaning, is that right?

20      **INMATE CARDIN:**  Yes.

21      **DEPUTY COMMISSIONER MCBEAN:**  Well, what

22  do you mean then? That it wouldn't mean

23  anything?

24      **INMATE CARDIN:**  Because they don't – they

25  don't really pay attention to whatever comes

26  from the United States because it's a different

27  language. Different culture – that's the way

31

1   they see it in my country. Any vocationals I get
2   is - will be of good use for me and that's why I
3   focus myself on vocationals more than - than the
4   GED.

5       **DEPUTY COMMISSIONER MCBEAN:**   Well, we'll
6   talk about your voc's in a minute and it looks
7   like you've done a good job there, but I'm sure
8   that El Salvador values education and especially
9   a high school education. So, we - we ask
10  everybody to at least acquire a GED, so we would
11  want you to do that and you can do it anytime.
12  But, your TABE score is pretty high. You
13  probably don't even need to go to school for it.
14  I imagine you could probably do self study and
15  take the exam and probably pass it. But, just so
16  you know, that is something the Board is going
17  to continue to expect of you. Let's talk about
18  vocations. Now they're - they're calling things
19  that - all different names, so I'm getting a
20  little confused. First of all, you did work in
21  something called PIA Micrographics in '94?

22      **INMATE CARDIN:**   That's -

23      **DEPUTY COMMISSIONER MCBEAN:**   Is that
24  right?

25      **INMATE CARDIN:**   Yes.

26      **DEPUTY COMMISSIONER MCBEAN:**   And what is
27  that?

32

1      **INMATE CARDIN:**  its micro film we used to

2   film documents from the state agencies and put

3   them in micro film - micro film rolls or

4   microfiche and send them back to -

5      **DEPUTY COMMISSIONER MCBEAN:**  You were

6   converting documents to microfiche?

7      **INMATE CARDIN:**  Exactly.

8      **DEPUTY COMMISSIONER MCBEAN:**  Okay. Yeah,

9   we were doing that in the 90's. I remember that.

10   Alright that's good and you did very well in

11   that job. You got exceptional work reports and

12   you did very well. And then, you completed Data

13   Processing in '98. Is that the same as

14   Information Technology?

15      **INMATE CARDIN:**  That's the same, yes.

16      **DEPUTY COMMISSIONER MCBEAN:**  Okay, so you

17   did complete that program. And then you were

18   also in Optical. Was that PIA or -

19      **INMATE CARDIN:**  No, vocation.

20      **DEPUTY COMMISSIONER MCBEAN:**  Was that a

21   vocational program?

22      **INMATE CARDIN:**  Yes.

23      **DEPUTY COMMISSIONER MCBEAN:**  Okay, in

24   1990. You were disciplinary unassigned from that

25   program but it looks like you completed it. Is

26   that correct?

27      **INMATE CARDIN:**  After I completed it,

33

1    yes.

2        **DEPUTY COMMISSIONER MCBEAN:**  Okay, so you

3    have completed two vocational programs?

4        **INMATE CARDIN:**  Three exactly.

5        **DEPUTY COMMISSIONER MCBEAN:**  What's the

6    third one?

7        **INMATE CARDIN:**  That's microfilming.

8    That's vocational, yes.

9        **DEPUTY COMMISSIONER MCBEAN:**  Okay.

10        **INMATE CARDIN:**  That's not PIA, that's

11    vocational. What they do - they have their own

12    classroom that's vocational and after inmates

13    graduated out of the classroom then they can

14    work in PIA. The Industries. Its two different

15    shops.

16        **DEPUTY COMMISSIONER MCBEAN:**  Okay, but it

17    - okay. I just don't know. Normally PIA's a high

18    pay number but it's not considered a vocational

19    trade although we certainly recognize the job

20    skill -

21        **INMATE CARDIN:**  Yeah, but in microfilming

22    they just don't bring inmates to The Industries

23    not knowing what they're doing because there's a

24    lot - training.

25        **DEPUTY COMMISSIONER MCBEAN:**  How long was

26    the educational portion?

27        **INMATE CARDIN:**  About 16 to 18 months.

34

1   I'm not sure but it's over a year. 1,500 hours
2   to be exact.

3        **DEPUTY COMMISSIONER MCBEAN:**  Okay.
4   Alright, okay good. Any others?

5        **INMATE CARDIN:**  No, just those three.

6        **DEPUTY COMMISSIONER MCBEAN:**  And those
7   are all three that you think you can use though
8   in El Salvador?

9        **INMATE CARDIN:**  Yes, I'm an auto
10  mechanic. That's what I was doing when I was -
11  trade - when I got arrested.

12       **DEPUTY COMMISSIONER MCBEAN:**  Let's see
13  from a self help standpoint, you have a history
14  of alcohol use and marijuana. I see you
15  participated in AA in '94, '98, '04, '05 and
16  '06. Is that right?

17       **INMATE CARDIN:**  Yes.

18       **DEPUTY COMMISSIONER MCBEAN:**  Okay, very
19  good. And do you use the steps?

20       **INMATE CARDIN:**  Most of them.

21       **DEPUTY COMMISSIONER MCBEAN:**  Okay. Which
22  ones do you find you use the most?

23       **INMATE CARDIN:**  Now the one I use the
24  most is three, when I made my decision to turn
25  my world - my life over to the care of God and -
26  because I recently - I had developed a cancer -
27  they found out that I had cancer so I went out

35

1   to the hospital and I had a major surgery. They

2   removed the tumor and I've - I was told that I

3   only had twenty percent chance to live, okay?

4   After the surgery - to survive the surgery so

5   who else could have saved me? It was God and

6   that's when I - when I found God and I accepted

7   Jesus as my savior and that's when I started out

8   - what do you call it? On step number three when

9   I really made my decision to turn my life - my

10  life over to the care of him.

11      **DEPUTY COMMISSIONER MCBEAN:**  Okay, any

12  other steps that you use?

13      **INMATE CARDIN:**  Step eight.

14      **DEPUTY COMMISSIONER MCBEAN:**  What does

15  that one say?

16      **INMATE CARDIN:**  Made a list of all the

17  persons I have harmed and became willing to make

18  a mense to them all. That's the one - believe me

19  I've been - I write many times - I wrote so many

20  letters and I just - to be active and know that

21  - asking Juan Carlos' family for forgiveness. My

22  family, my daughters because they also suffer

23  and -

24      **DEPUTY COMMISSIONER MCBEAN:**  Okay, good.

25  So you're going to continue your participation

26  in Substance Abuse?

27      **INMATE CARDIN:**  Yes.

36

1          **DEPUTY COMMISSIONER MCBEAN:**  You also

2    completed Breaking Barriers in '89 and you've

3    done a course in Sexually Transmitted Diseases;

4    HIV and AIDS in '98?

5          **INMATE CARDIN:**  Yes, that's true.

6          **DEPUTY COMMISSIONER MCBEAN:**  Okay,

7    anything else? Have you participated in any

8    other self help over the years?

9          **INMATE CARDIN:**  No, besides AA, Breaking

10   Barriers.

11         **DEPUTY COMMISSIONER MCBEAN:**  Okay.

12         **INMATE CARDIN:**  And -

13         **DEPUTY COMMISSIONER MCBEAN:**  You've been

14   in prison about 25 years now. Is there some

15   reason you haven't done more - more self help?

16         **INMATE CARDIN:**  Not besides AA. I - I

17   requested the therapy when the Board told me and

18   I went to see the psychia - the psychologic -

19   psychologist, Dr. -

20         **ATTORNEY FOX:**  Dr. Gamerd (phonetic).

21   What he's handed me is a chrono and verbatim it

22   reads, "Inmate Cardin C-35792 has complied with

23   the recommendation of the Board of Prison Terms

24   by requesting individual counseling. However,

25   such treatment is not indicated, not available,

26   and he does not qualify for placement in the

27   correctional clinical case management system."

37

1   And, it's signed by Dr. Gamerd and it's dated,

2   October 19, 2001.

3        **DEPUTY COMMISSIONER MCBEAN:**   You're not

4   part of triple C?

5        **INMATE CARDIN:**   No.

6        **DEPUTY COMMISSIONER MCBEAN:**   Or, you're

7   not EOP or triple C, is that right?

8        **INMATE CARDIN:**   No.

9        **DEPUTY COMMISSIONER MCBEAN:**   So, it's −

10  we understand that − then you're not available

11  probably for therapy. But there is a lot of

12  other programs available. Project Change the

13  Impact Program.

14       **INMATE CARDIN:**   I'm on the waiting list

15  for the Impact Program − That's four or five

16  years waiting list because there's so many

17  lifers here at CTF −

18       **DEPUTY COMMISSIONER MCBEAN:**   We

19  understand.

20       **INMATE CARDIN:**   And trying to get in the

21  program −

22       **DEPUTY COMMISSIONER MCBEAN:**   Okay, I just

23  want to give you credit for everything you've

24  done. I noticed in a prior transcript you had

25  indicated that you didn't think the programs

26  were − I think the word was worthy or not up to

27  your standards or something and that's why you

38

1   had not participated in other self help. I want
2   to see how you felt about that today?

3        **INMATE CARDIN:** No, what I meant by that
4   is - I told the Commissioner that AA here for
5   some inmates was a joke, okay? Because I was - I
6   love AA, don't get me wrong. Recently before
7   that Board - before that hearing in 2002 a major
8   fight broke down in AA at church between
9   northerners and southerners and that's why -
10  that was the reason they separated and
11  northerners went to a north facility and
12  southern stayed here. And, I've - I got
13  handcuffed and taken to a holding cell and all
14  that just because going to AA and that's what I
15  meant. AA for some people is a joke in prison.
16  Because that's true. I don't go to AA just to
17  get a chronos and look good before the Board. I
18  go to AA because I love AA. I like to put the
19  steps in practice for myself and that's what I
20  meant the last time I went to the Board.

21       **DEPUTY COMMISSIONER MCBEAN:** Okay good.
22  I'm glad you clarified that. So you have not had
23  an opportunity to have any kind of therapy at
24  all to deal with the psychosocial - psychosexual
25  issues that are raised in your history? Is that
26  right?

27       **INMATE CARDIN:** But I don't have a

39

1   history.

2   **DEPUTY COMMISSIONER MCBEAN:**  Well you
3   have – in your – in your commitment offense was
4   an allegation of a victim who alleged you tried
5   to rape her five days after the commitment
6   offense. I know you don't want to talk about
7   your crime, but you know the – the history
8   raises issues of sexual assaults.

9   **ATTORNEY FOX:**  I'd object to the use in
10  reference to that unsubstantiated allegation. In
11  the event the alleged assaults – I believe there
12  were two, initially alleged – could have been
13  proven, they would have been proven and they
14  weren't. The cases were dismissed.

15  **PRESIDING COMMISSIONER BIGGERS:**  But, I'm
16  going to overrule on that because this being an
17  administrative hearing, we have the right to go
18  over everything that's in the files.

19  **ATTORNEY FOX:**  I understand that.

20  **PRESIDING COMMISSIONER BIGGERS:**  It's in
21  the files that this was in fact something that
22  was alleged and as long as we use the
23  terminology alleged, then I think we're good to
24  go along with that. And also it has become
25  fairly clear that the only reason that Mr.
26  Cardin was even convicted of this crime was
27  because of what took place with the other –

40

1      **ATTORNEY FOX:**  Well, it was alleged to
2  have taken place.

3      **PRESIDING COMMISSIONER BIGGERS:**  Alleged
4  to have taken place.

5      **ATTORNEY FOX:**  And what actually took
6  place is that she made a phone call. That we
7  know for sure. What inspired her to make that
8  phone call, we don't know.

9      **PRESIDING COMMISSIONER BIGGERS:**  We don't
10  know. So therefore, as long as we use the term
11  alleged then I'm going to overrule your
12  objection.

13      **DEPUTY COMMISSIONER MCBEAN:**  Well, the
14  question is really only to give you an
15  opportunity to let us know whether or not you
16  looked at that issue or whether you've dealt
17  with that issue. Because, it's - you know,
18  there's several references in the file, so -

19      **ATTORNEY FOX:**  And it's a non-issue so no
20  he hasn't.

21      **PRESIDING COMMISSIONER BIGGERS:**  Okay,
22  thank you.

23      **ATTORNEY FOX:**  You're welcome.

24      **DEPUTY COMMISSIONER MCBEAN:**  Alright,
25  let's talk about your disciplinary history then.
26  You do have one CDC 115. This is dated 10-25-90
27  for theft. Apparently this was when you were

41

1   working at the PIA a lens lab and they did an
2   unclothed body search and apparently you had a
3   pair of sunglasses taped to your - to your
4   buttocks. Two pairs of sunglasses for some
5   reason.

6          **INMATE CARDIN:**   One pair.

7          **DEPUTY COMMISSIONER MCBEAN:**   That's sort
8   of an odd thing to do. What were you doing
9   there?

10         **INMATE CARDIN:**   I stated many times at
11  many Board hearings - that the reason I had
12  completed that vocational - I had been begging
13  my counselor to get me out of there because I
14  don't play no gang bang, right? And at that
15  time, there was North and South going off at
16  Solano and since I got arrested in L.A. County,
17  south siders wanted me to join a gang. So I was
18  being pressured at that because the shop is yard
19  three and yard four, right? That's in the middle
20  and you got two gang bangers going in the same
21  shop, so they wanted me to join a gang. Since I
22  knew - since my counselor told me that he didn't
23  have a - time to take me to classification to
24  unassign me from that shop so I decided to take
25  those glasses on my own. Those were a pair of
26  old glasses and tape them here to my back, over
27  here. Because I knew we was going to get

42

1    unclothed body search at the end of the day

2    leaving the shop and I knew getting that 115

3    would get me out of any conflicts because it was

4    escalating and it was going to lead to a mucho

5    combat or whatever you can call it but it's

6    going to (indiscernible) and I don't want to

7    have anything to do with any violence.

8        **DEPUTY COMMISSIONER MCBEAN:**  So, the only

9    way out for you was to get a 115, in your

10   estimation?

11       **INMATE CARDIN:**  Exactly. And instead of

12   fighting anybody, I decided to get that 115.

13   That was on my own.

14       **DEPUTY COMMISSIONER MCBEAN:**  Did you talk

15   to your - to your vocational instructor about

16   that?

17       **INMATE CARDIN:**  I did. (indiscernible)

18   was his last name -

19       **DEPUTY COMMISSIONER MCBEAN:**  And he

20   couldn't - he or she couldn't see to it that you

21   were moved elsewhere?

22       **INMATE CARDIN:**  He's the one that talked

23   to my counselor and my counselor said that he

24   didn't have time to take me to classification.

25   He said it would be six months before my annual

26   and he was going on assignment - annual - but I

27   was in a spot that, you know - either this side

43

1   or that side and I'm not a gang banger. Never
2   have, never will be.

3       **DEPUTY COMMISSIONER MCBEAN:** Okay. You
4   also have six 128's. The last one was dated 1-
5   30-96 and that is for - apparently you wrote a
6   letter to a Miss Rodriguez who didn't appreciate
7   your letter? It says you were given a direct
8   order to cease any further attempts to contact
9   Miss Rodriguez, be it written or oral. Who is
10  Miss Rodriguez?

11      **INMATE CARDIN:** 120 - 128? No, I was
12  never given a -

13      **DEPUTY COMMISSIONER MCBEAN:** 128 -
14  January 30, '96 at Solano.

15      **INMATE CARDIN:** No. I - I remember the
16  squad coming to search my locker because this -
17  this gentlemen, this co-worker of mine had given
18  me an address before he went home to write this
19  letter - to write this lady. I wrote her a
20  friendly letter but she never answered the
21  letter so that was it. And then a couple of
22  weeks later, the (indiscernible) squad searched
23  my locker looking for her address which I never
24  kept. And that's what he told me that the lady
25  had called them, but I was never given a copy of
26  a 128.

27      **DEPUTY COMMISSIONER MCBEAN:** Okay, yeah

44

1    there is one in the file here. So you were - you
2    just were writing a letter to somebody you
3    didn't know?

4        **INMATE CARDIN:**  Exactly.

5        **DEPUTY COMMISSIONER MCBEAN:**  I see, so
6    have you tried to contact her since?

7        **INMATE CARDIN:**  No sir - no ma'am.

8        **DEPUTY COMMISSIONER MCBEAN:**  Okay, the
9    other 128's are for failing to report for the
10   most part. You have one for disrespecting staff
11   in '92. Staff were telling you to go to your
12   work area and you started laughing and said,
13   "I'm not going to do - I'm not going to jump
14   when you tell me to do something. I'm not going
15   to take orders and be treated like a kid". Do
16   you remember that one?

17       **INMATE CARDIN:**  Yes, that's her only
18   statement. That lady was fired and sent for a
19   psychological evaluation and she got fired. You
20   can do research -

21       **DEPUTY COMMISSIONER MCBEAN:**  I don't know
22   anything about that. You're lucky you didn't get
23   a 115 on that one though.

24       **INMATE CARDIN:**  That's why the Lieutenant
25   (indiscernible) because that's a 115 material
26   and they knew and I had witnesses, even her co-
27   worker (indiscernible) staff, Lamont Dalton

45

1   (phonetic) was his name, he knew and he told the

2   Lieutenant that it wasn't true - or what she was

3   saying didn't happen.

4       **DEPUTY COMMISSIONER MCBEAN:** I see.

5       **INMATE CARDIN:** Because the Lieutenant

6   wanted to lock me up because he said that was

7   115 material.

8       **DEPUTY COMMISSIONER MCBEAN:** It sure is.

9       **INMATE CARDIN:** Yes, and that's why they

10  left it a 128 because the (indiscernible) staff

11  knew that that didn't take place.

12      **DEPUTY COMMISSIONER MCBEAN:** Did you

13  appeal it?

14      **INMATE CARDIN:** No, I didn't appeal it

15  because I didn't get lock up. Just a 128 - you

16  can't appeal a 128. It will never be removed out

17  of the C-File.

18      **DEPUTY COMMISSIONER MCBEAN:** Yeah, that

19  might be true.

20      **INMATE CARDIN:** We can appeal 115's but

21  not 128's.

22      **DEPUTY COMMISSIONER MCBEAN:** Okay.

23  Alright, let's look at your psych evaluation.

24  This is dated 3-14-06 by Dr. Melvin Macomber.

25  Okay. And now on the psych evaluation does

26  review the life crime. Talks about many of the

27  things that we have already discussed here

46

1    today, as well as your accomplishments. In terms
2    of the sexual allegations, the psych evaluation
3    on page three says, "The girlfriend, after
4    seeing her boyfriend die, told the police that
5    Mr. Cardin had attempted to kidnap her. These
6    charges were never substantiated. Also, a woman,
7    a girlfriend of his, who was in jail at the
8    time, who was living with Mr. Cardin, during an
9    argument about the use of a T.V. complained to
10   the police. When the judge learned that the
11   police had coached the woman to enhance her
12   complaint with a rape charge, he dropped all the
13   charges. Mr. Cardin has never had any problems
14   with sexual acting out". I'm not sure if - did
15   he get that from your statement?

16        **INMATE CARDIN:**  I think he got it from
17   the C-File because he asked me those questions.
18   Is this true, what happened and I said no. I
19   told him my version that I've been saying all
20   this time.

21        **DEPUTY COMMISSIONER MCBEAN:**  He does note
22   that you take full responsibility for the
23   offense and feelings of remorse appear to be
24   sincere and genuine. In terms of an assessment
25   of dangerousness, he notes no evidence of any
26   violent acting out and never been in possession
27   of weapons, riots or assaults on others.

47

1   Potential for violent behavior is definitely
2   below average in comparison to other inmates. He
3   notes, "This man is an active and involved
4   Christian. He knows that his former lifestyle
5   was wrong and he's actively engaged in bible
6   study in an effort to live a life that would be
7   pleasing to God as well as to his fellow man. He
8   endorses Christian values, such as turning the
9   other cheek when provoked, avoiding any
10  conflicts or altercations and loving others." A
11  Level of Service Inventory was administered to
12  determine level of risk. His potential for
13  dangerous behavior at this point in his life is
14  no greater than the average citizen in the
15  community. As a result of these factors and a
16  score that you received on the inventory. He
17  says on the last page that he knows you haven't
18  completed a GED and he says, "A GED will not be
19  helpful to him when he goes to South America.
20  The GED would only be of benefit to someone who
21  plans on staying in the United States,
22  therefore, he should not be required to obtain
23  this. A prognosis for successful adjustment in
24  the community in this case is outstanding". You
25  know, I want you to be clear that the Board does
26  expect you to complete a GED and I'm - I don't
27  know if he got this from you or what, but I've

48

1    never heard of a country that didn't value

2    education or you know, a high school diploma

3    which is what a GED is equivalent to. So, we

4    would still expect you to obtain that. Is there

5    anything else that you would like to add that I

6    may have missed in terms of your institutional

7    accomplishments?

8         **INMATE CARDIN:**  No, ma'am.

9         **DEPUTY COMMISSIONER MCBEAN:**  Okay.

10   Anything else, Counsel?

11        **ATTORNEY FOX:**  No, I think you covered it

12   very well, thank you.

13        **DEPUTY COMMISSIONER MCBEAN:**  Return to

14   the Chair.

15        **PRESIDING COMMISSIONER BIGGERS:**  Alright,

16   thank you very much. Just for the record, I also

17   think - I spent some time in El Salvador and I

18   do think that they do - would like for the

19   education aspect would be something that can be

20   utilized, that's all. I don't know where that's

21   coming from. Anyway, I'm going to look at your

22   parole plans and right now from what I'm reading

23   is your plans are - you are going to be

24   deported, once you leave here and you will be

25   going to El Salvador. And I have a letter - I

26   have several letters. Some are in Spanish and

27   some are in English. I have one for - that I saw

49

1    here that I want to - I underlined this because
2    I'm not quite sure what was meant by this and
3    this I believe is from your daughter, Sylvia
4    Marlena Aguira Cardin (phonetic).

5            **INMATE CARDIN:**  Yes.

6            **PRESIDING COMMISSIONER BIGGERS:**  And she
7    mentioned that - and I want to just read what
8    she says here. Just this portion. "The object is
9    to", I think she's thinking of the objective.
10   "Is to humanize and sensitize the inmate to find
11   an honest path and become an example for the
12   community. The pain of so many years of
13   incarceration have turned him into", meaning
14   yourself there, Mr. Cardin. "Into a much more
15   mature human being who is closer to God." And
16   she's saying that she will support you. There
17   was a letter from your sister, Anna and she
18   lives in L.A. now?

19           **INMATE CARDIN:**  Yes, she's been living in
20   L.A. for years.

21           **PRESIDING COMMISSIONER BIGGERS:**  Okay,
22   but I thought that you said something about your
23   family were in El Salvador.

24           **INMATE CARDIN:**  I got family - I got all
25   the sisters -

26           **PRESIDING COMMISSIONER BIGGERS:**  All your
27   other family -

50

1          **INMATE CARDIN:**   Yes.

2          **PRESIDING COMMISSIONER BIGGERS:**   I

3     thought you. Maybe I misunderstood but I thought

4     you said that all your family were -

5          **INMATE CARDIN:**   No, not all of my - I

6     have a brother and sister here in Los Angeles.

7          **PRESIDING COMMISSIONER BIGGERS:**   Okay.

8     You said - this is from your sister Anna

9     Consuela Aguera, who lives in 1854 West 20th

10    Street in Los Angeles and she indicates you can

11    stay with her. That she knows you'll be deported

12    from the United States to your native country

13    and the family has agreed to go - to go out of

14    their way as to any stipulations that we may

15    have for you. Your brother, Salfrado (phonetic)?

16         **INMATE CARDIN:**   Salfrado, yes.

17         **PRESIDING COMMISSIONER BIGGERS:**   Salfrado

18    Aguera - he lives at 6713 Santa Clara Avenue in

19    North Hollywood. And that he would gladly

20    participate in whatever programs or activities

21    deemed appropriate by your Board as a condition

22    for his parole. I think the letters were in fact

23    trans - letters in Spanish were in fact trans -

24    they were translated. Is that right? By Valerie

25    Artese, A-R-T-E-S-E, who is a state certified

26    interpreter. That was a letter from February the

27    8th from - from a Alfredo Rodriguez who says he

51

1  is -

2      **INMATE CARDIN:**  That's my daughter's
3  husband.

4      **PRESIDING COMMISSIONER BIGGERS:**  Your
5  daughter's husband who says that he'll have the
6  support of not only of your daughter but to the
7  whole family. There was a letter from - this one
8  is from Marta Angelina Catera (phonetic) who is
9  a administrative general - who does she work
10  for?

11      **INMATE CARDIN:**  She works for a big
12  company that's an auto parts company.

13      **PRESIDING COMMISSIONER BIGGERS:**  Okay and
14  then she signed her name as the administrator
15  general?

16      **INMATE CARDIN:**  Yes. She administrates
17  the whole company.

18      **PRESIDING COMMISSIONER BIGGERS:**  Okay.
19      **INMATE CARDIN:**  The CEO, in other words
20  here in America.

21      **PRESIDING COMMISSIONER BIGGERS:**  She's a
22  very close friend of your daughter, Sylvia and
23  that they've been friend for four years and due
24  to the trust established, she confided - she
25  heard about you and she indicated that her
26  daughter has spoken about the knowledge you
27  acquired in the area of computers since your

52

1    incarceration in the most sophisticated penal
2    system in the world necessary to (indiscernible)
3    knowledge of the above area. I am considering
4    the possibility (indiscernible) join the firm in
5    which I am sole administrator. So she's offering
6    you a job basically, is what she's saying here.
7    I'm considering the possibility. She didn't say
8    you have it. She said the possibility that you
9    would have a job.

10        **INMATE CARDIN:**  But at the end, if you
11    read at the end she –

12        **PRESIDING COMMISSIONER BIGGERS:**  Without
13    (indiscernible) you can have a permanent job
14    here from the minute he returns to his native
15    land. Okay. Did I miss any of your letters?

16        **INMATE CARDIN:**  No sir.

17        **PRESIDING COMMISSIONER BIGGERS:**  And
18    there was a 3042 letter in there that we, based
19    on the objections of your counsel that we will
20    not take into consideration, because of the ten
21    day rule, however, we do have a representative
22    from the District Attorney's Office in the
23    County of Los Angeles who will be speaking very
24    shortly. Is there anything I missed on your
25    parole plans and/or your letters?

26        **INMATE CARDIN:**  No, sir.

27        **PRESIDING COMMISSIONER BIGGERS:**  At this

53

1    point, do you have any additional questions?

2         **ATTORNEY FOX:**  No, I don't.

3         **PRESIDING COMMISSIONER BIGGERS:**  Okay,

4    thank you. Do you have any questions, Mr.

5    District Attorney?

6         **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  No,

7    thank you. No questions.

8         **PRESIDING COMMISSIONER BIGGERS:**  Okay,

9    counsel?

10        **ATTORNEY FOX:**  Just one. Mr. Cardin, is

11   it your intention to attend AA when you return

12   to El Salvador?

13        **INMATE CARDIN:**  When I return to El

14   Salvador, yes it is. I'm planning to stay in AA

15   forever.

16        **ATTORNEY FOX:**  Okay, no further

17   questions.

18        **PRESIDING COMMISSIONER BIGGERS:**  I have

19   an additional question. What NA or AA programs

20   that they have in El Salvador? Have you done any

21   research on those?

22        **INMATE CARDIN:**  AA – it's everywhere in

23   El Salvador. It's like worldwide now and

24   everywhere you go there's a group.

25        **PRESIDING COMMISSIONER BIGGERS:**  Do you

26   have a name for that particular group?

27        **INMATE CARDIN:**  No, because all you would

54

1  do, is when you get there just go to any group
2  you would like to. It's all over the city, AA
3  groups.

4      **PRESIDING COMMISSIONER BIGGERS:**  Okay.
5  Alright. Mr. Delavigne, would you like to close
6  please?

7      **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  Yes,
8  briefly. I am looking at some memos from prior
9  D.A.'s that handled hearings for the inmate and
10 the one I have dated is 2002 and in bold print,
11 the inmate should engage in self help therapy
12 and it seems to me that he is indicating that he
13 knows better than what the Board would like him
14 to do and for that reason, I object to a finding
15 of suitability until he does seek self help
16 therapy and handle himself in such a way that
17 the Board wants him to and it will make him a
18 better candidate for a parole date in the
19 future. But, I do object to a finding of
20 suitability at this time. Thank you.

21     **PRESIDING COMMISSIONER BIGGERS:**  Ms. Fox?
22     **ATTORNEY FOX:**  Thank you. On behalf of
23 Mr. Cardin, I respectfully disagree with my
24 esteemed colleague from Los Angeles. Mr. Cardin
25 would have you find him suitable for parole
26 because he is. And he will read a brief
27 statement as soon as I finish with my comments.

55

1    The Board report is supportive. His one 115 is

2    from 1990. He's not been a disciplinary problem.

3    He's upgraded educationally and vocationally.

4    And, is equipped to support himself when he does

5    leave the institution. The psychological

6    evaluation is very supportive with a Global

7    Assessment Functioning of 90 which is very high

8    and I think the Panel should assign great weight

9    to that. Because that's something that indicates

10   someone who can get along in a law abiding

11   fashion in a community and Mr. Cardin has

12   demonstrated consistently that he can do that

13   and in fact I think I read in no fewer than

14   three of the psychological evaluations, by

15   different writers, that the Global Assessment

16   Functioning is 90. It is noteworthy that this

17   case was resolved by a plea agreement of 15

18   years to life. There was no firearm enhancement.

19   The other spurious allegations were dismissed

20   and although the panel is entitled to refer to,

21   and use hearsay under the Administrative

22   Procedures Act, the panel is also confined to

23   using the findings of the court and that's not

24   carte blanche to rely upon the unsubstantiated

25   inflammatory false complaints of the biased

26   witnesses to Mr. Cardin's detriment. The issues

27   raised there are very serious and I won't

56

1    comment further than that except that it would
2    be to Mr. Cardin's detriment and we can't defend
3    on it, because they were never proven
4    allegations. The probation plans are viable in
5    his country of - where he will return to. El
6    Salvador. And he has skills that will be put to
7    use there, working with cars and also the
8    technical skills he's learned since he's been in
9    custody and he's just short of a GED, perhaps
10   that's something that he could sign up and take
11   the test and in the event he's not found
12   suitable this time, he would have that available
13   for subsequent panels. He has strong, sustained
14   family support over the years and has a family
15   out there waiting for him. So, I'll submit based
16   on that. Mr. Cardin should be found suitable and
17   a date should be set for his release but I know
18   he has a statement he'd like to read.

19          **PRESIDING COMMISSIONER BIGGERS:**  Okay,
20   well at this point - thank you counselor.

21          **ATTORNEY FOX:**  You're welcome.

22          **PRESIDING COMMISSIONER BIGGERS:**  At this
23   point, Mr. Cardin, you have the opportunity to
24   tell this panel why you feel that you are
25   suitable and I believe you said you had a
26   statement prepared.

27          **INMATE CARDIN:**  This statement is - was

57

1    just at the beginning – was concerning the – my
2    not discussing of the crime.

3           **PRESIDING COMMISSIONER BIGGERS:**  You can
4    use that in conjunction with your statement if
5    you'd like.

6           **INMATE CARDIN:**  Well the reason I think
7    that I should be found suitable for parole is
8    because I've done 25 – 26 years almost of the
9    time. I understand you said I was sentenced to
10   15 years to life term – I have a life term. I
11   know I changed a lot. I'm not the same stupid
12   young boy that I used to be when I got arrested.
13   When I committed this crime, it's no other word
14   to – to – to call it but it was committed in
15   stupidity. It's not a person in his right mind
16   would have done what I did and I know it was
17   something I done very awful that I don't wish
18   anybody to happen to. I – I understand the pain
19   Juan Carlos' family has been going through. I
20   understand the great harm that I've caused to
21   society and at this point in my life, I'm 51
22   years old. All I need – all I want now is one
23   opportunity to prove society that I'll be a good
24   citizen, if I am released. I'm sorry if my
25   English is not real good.

26          **PRESIDING COMMISSIONER BIGGERS:**  Not a
27   problem. I understand what you're saying. Okay,

58

1   is that it?

2        **INMATE CARDIN:**  Yes, sir.

3        **PRESIDING COMMISSIONER BIGGERS:**  Did you

4   want to read your letter?

5        **INMATE CARDIN:**  No, I wasn't -

6        **ATTORNEY FOX:**  Okay, he wanted to read it

7   at the beginning.

8        **INMATE CARDIN:**  (indiscernible) it was

9   something else.

10        **ATTORNEY FOX:**  Well, no I didn't think it

11   was something else. The Commissioners would not

12   allow you to read it at the beginning of the

13   hearing. It just tells why he - he's not

14   discussing the facts. I think it's important

15   that you read that.

16        **INMATE CARDIN:**  Okay. I hope the Panel

17   doesn't mind, but I've decided not to discuss

18   the facts and evidence concerning my commitment

19   offense. I've discussed the facts, in detail,

20   many times at my previous hearings and with many

21   counselors, psychologists who have interviewed

22   me for their report and evaluation for Board. In

23   accepting my responsibility for my offense, I no

24   longer dispute the facts. No matter how the

25   Panel views them. Whether certain facts are true

26   or not, doesn't lessen my guilt or

27   responsibility one bit. So, instead of

59

1    discussing or arguing about the facts further, I

2    simply accept whatever version the Panel adopts

3    and you're free to consider the facts as you

4    may. I am still willing to talk about how I feel

5    about what I did and my feelings about the

6    persons involved in this ordeal, any time you'd

7    like me to do so. Thank you.

8         **PRESIDING COMMISSIONER BIGGERS:**  Okay.

9    Alright, we'll recess at this time.

10        **ATTORNEY FOX:**  Thank you.

11                    R  E  C  E  S  S

12                       --oOo--

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

60

```
1        CALIFORNIA BOARD OF PAROLE HEARINGS
2                    D E C I S I O N
3        DEPUTY COMMISSIONER MCBEAN:  Okay, we're
4   back on record.
5        PRESIDING COMMISSIONER BIGGERS:  Okay let
6   the record reflect that all parties that were in
7   the room prior to deliberation are now back in
8   the room. In the matter of Mr. Luis Cardin, CDC
9   number C-35792, panel has reviewed all
10  information received from the public and relied
11  on the following (indiscernible) parole would
12  pose an unreasonable risk or danger to society
13  or a threat to public safety if released from
14  prison. We looked at the factors and we think we
15  found that the motive for the crime was
16  inexplicable and very trivial in relationship to
17  the offense. In that you shot an individual
18  after you had made a pass on his girlfriend and
19  you tried to pull her into your car and he was
20  coming to her rescue. The witnesses said he had
21  no weapon. You said that you thought you saw
22  something but you indiscriminately pointed the
23  gun in that direction and you shot him. I took
24  that from the - well, we took that from the
25  statement of facts and it just - it was
26  extremely difficult for us to determine, also
27  LUIS CARDIN C-35792  DECISION PAGE 1   4/05/06
```

61

1   the level of your insight and your remorse on

2   the crime because of that. In looking at that,

3   it was hard to determine your level of insight

4   and your remorse that you have, however, we took

5   that into consideration. We took into

6   consideration previous testimony that you had in

7   determining that factor. We took that from the

8   probation officer's report. We looked at your

9   prior criminality which would include a failure

10  to appear and battery. And, also the allegation

11  of sexual misconduct, although it was not

12  prosecuted, but it is in your file. So, we took

13  that into consideration as well. The - you have

14  programmed in a limited fashion while you've

15  been incarcerated. For 25 years, you did get

16  three vocations and you have done AA and

17  Breaking Barriers over the last 25 years.

18  However, the panel feels strongly that you

19  should have - you should get your GED.

20  Irregardless of what you may think about your -

21  what education holds - feelings they may have in

22  your native country of El Salvador. The Panel

23  disagreed with your concession that you really

24  don't need to get any GED while you're here

25  because you are going to El Salvador. We looked

26  at your chronos. You had six 128's and one 115

27  **LUIS CARDIN C-35792  DECISION PAGE 2   4/05/06**

62

1    and the last one being 10-25-90 and you should
2    be commended for that. The psychological report
3    from Dr. McComber that was dated 3-13-06 was
4    favorable, however, we relied on a confidential
5    information that contradicted the statement you
6    gave to Dr. McComber about the crime. The panel
7    was also concerned that the sexual issues
8    identified in your record and that was discussed
9    here today were not sufficiently addressed by
10   Dr. McComber and we're going to order a new
11   psych evaluation. Your realistic parole plans
12   are good. You got a place to stay with your
13   brother or sister, here in California. You also
14   have family in El Salvador. You have a
15   marketable skill, so you shouldn't really have
16   any problems finding employment in either place.
17   However, I just want to caution you that I think
18   you should have - we realize that you're going
19   to be turned over to INS, but if for some
20   reason, INS releases you, you probably should
21   have some employment plans here locally in the
22   event that they don't deport you back to El
23   Salvador. On the 3042 notice, I want to put on
24   record that we did not consider the letter of
25   the L.A. Police Department because of the
26   objection by the defense counsel and the ten day
27   **LUIS CARDIN C-35792  DECISION PAGE 3   4/05/06**

63

1    rule. However, the District Attorney who was

2    present at the hearing from L.A. County

3    indicated his opposition to a finding of

4    suitability. We want to commend you for your

5    three vocations that you have accomplished. The

6    Date Processing and the Optical and

7    Micrographics and the AA program that you've

8    been attending – that you attend regularly since

9    2004. However, these positives aspects of your

10   behavior do not outweigh the factors of

11   unsuitability. In a separate decision, the

12   hearing Panel found that it's not necessary to

13   expect that parole would be granted

14   (indiscernible) in the following two years. The

15   specific reason for these findings are as

16   follows: The motive for the crime was

17   inexplicable or very trivial in relation to the

18   offense in that the victim was shot while trying

19   to rescue his girlfriend from your attempt to

20   pull her in your – into your vehicle. And

21   secondly, the psychiatric report by Dr. McComber

22   was dated 3-14-06 did not significantly address

23   the underlined sexual issues that were discussed

24   in the hearing today and also in your record. We

25   recommend that you remain disciplinary free. We

26   want you to upgrade yourself educationally, get

27   **LUIS CARDIN C-35792   DECISION PAGE 4   4/05/06**

64

1    your GED. Do some more self help. We recommend
2    also that you cooperate with your clinicians to
3    - since we ordered a new psychological
4    evaluation that will explore the underlying
5    sexual issues as identified in the discussion
6    today and also in your file. Do you have
7    anything you'd like to add?

8        **DEPUTY COMMISSIONER MCBEAN:**  I think
9    you've covered it real well, thank you.

10       **PRESIDING COMMISSIONER BIGGERS:**  Okay.

11       **ATTORNEY FOX:**  Given that the clinician
12   will be required to delve into matters that we
13   have denied, will that clinician have access to
14   the confidential file? I don't know what the
15   issue -

16       **PRESIDING COMMISSIONER BIGGERS:**  The
17   information that we receive from the
18   confidential file only talked about the
19   committing offense and the contradictory
20   statements that were made as to the committing
21   offense. Not about the sexual innuendos that
22   were read. That is in the record. When we go
23   back and see the record, there were two
24   allegations of sexual - possible sexual activity
25   and we're basing our request for a new
26   psychological evaluation to try to find out
27   **LUIS CARDIN C-35792  DECISION PAGE 5  4/05/06**

65

1   something about those that were not talked about

2   in the last '06 psych report.

3        **DEPUTY COMMISSIONER MCBEAN:**   And so

4   specifically, to answer your question, the

5   doctor will not be using the confidential

6   section of the file, but the crime report as to

7   the rape allegation is in the Central File and

8   if he wants to look at that –

9        **ATTORNEY FOX:**   There was no allegation.

10   There were two attempts.

11        **DEPUTY COMMISSIONER MCBEAN:**   Attempted

12   rape allegation.

13        **ATTORNEY FOX:**   Okay, I'm sorry.

14        **DEPUTY COMMISSIONER MCBEAN:**   It's in all

15   of our packets today.

16        **PRESIDING COMMISSIONER BIGGERS:**   Two

17   attempted rapes.

18        **DEPUTY COMMISSIONER MCBEAN:**   And it is in

19   the Central File.

20        **ATTORNEY FOX:**   Okay, thank you. I just

21   want to be –

22        **PRESIDING COMMISSIONER BIGGERS:**   Yeah, we

23   want to make sure of that. And one of the

24   things, Mr. Cardin that I want you to

25   understand. You presented yourself well here

26   today, but we feel – the panel feels that those

27   **LUIS CARDIN C-35792  DECISION PAGE 6   4/05/06**

66

1   issues need to be addressed before we can make a

2   recommendation of finding you suitable for

3   parole. You need to discuss that with your

4   clinician. You need to discuss that with them.

5           **INMATE CARDIN:**   May I say something.

6           **PRESIDING COMMISSIONER BIGGERS:**   That

7   concludes the hearing and the time is now 1:45.

8           **DEPUTY COMMISSIONER MCBEAN:**   Good luck,

9   sir.

10          **PRESIDING COMMISSIONER BIGGERS:**   Good

11  luck to you, sir.

12          **INMATE CARDIN:**   Is this my

13  (indiscernible)

14          **ATTORNEY FOX:**   Yeah, that's for you. Wait

15  for me though, okay?

16                      --oOo--

17

18

19

20

21

22                              **AUG   3** 2006

23  **PAROLE DENIED TWO YEARS.**

24  **THIS DECISION WILL BE FINAL ON:**_____

25  **YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT**

26  **DATE, THE DECISION IS MODIFIED.**

27  **LUIS CARDIN C-35792   DECISION PAGE 7   4/05/06**

67

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, SHERI ROBINSON, a duly designated
transcriber, PETERS SHORTHAND REPORTING, do hereby
declare and certify under penalty of perjury that I
have transcribed tape(s) which total one in number and
cover a total of pages numbered 1 - 66, and which
recording was duly recorded at CORRECTIONAL TRAINING
FACILITY, SOLEDAD, CALIFORNIA, in the matter of the
SUBSEQUENT PAROLE CONSIDERATION HEARING OF LUIS
CARDIN, CDC NO. C-35792, ON APRIL 5, 2006, and that
the foregoing pages constitute a true, complete, and
accurate transcription of the aforementioned tape to
the best of my ability.

I hereby certify that I am a disinterested
party in the above-mentioned matter and have no
interest in the outcome of the hearing.

Dated APRIL 15, 2006, at Sacramento,
California.

SHERI ROBINSON
TRANSCRIBER
**PETERS SHORTHAND REPORTING**

# EXHIBIT B
# (TRASCRIPTS OF PRIOR PROCEEDINGS)

60

1       **CALIFORNIA BOARD OF PAROLE HEARINGS**
2               **D E C I S I O N**
3       **DEPUTY COMMISSIONER MCBEAN:**  Okay, we're
4    back on record.
5       **PRESIDING COMMISSIONER BIGGERS:**  Okay let
6    the record reflect that all parties that were in
7    the room prior to deliberation are now back in
8    the room. In the matter of Mr. Luis Cardin, CDC
9    number C-35792, panel has reviewed all
10   information received from the public and relied
11   on the following (indiscernible) parole would
12   pose an unreasonable risk or danger to society
13   or a threat to public safety if released from
14   prison. We looked at the factors and we think we
15   found that the motive for the crime was
16   inexplicable and very trivial in relationship to
17   the offense. In that you shot an individual
18   after you had made a pass on his girlfriend and
19   you tried to pull her into your car and he was
20   coming to her rescue. The witnesses said he had
21   no weapon. You said that you thought you saw
22   something but you indiscriminately pointed the
23   gun in that direction and you shot him. I took
24   that from the - well, we took that from the
25   statement of facts and it just - it was
26   extremely difficult for us to determine, also
27   **LUIS CARDIN C-35792  DECISION PAGE 1    4/05/06**

61

1   the level of your insight and your remorse on

2   the crime because of that. In looking at that,

3   it was hard to determine your level of insight

4   and your remorse that you have, however, we took

5   that into consideration. We took into

6   consideration previous testimony that you had in

7   determining that factor. We took that from the

8   probation officer's report. We looked at your

9   prior criminality which would include a failure

10  to appear and battery. And, also the allegation

11  of sexual misconduct, although it was not

12  prosecuted, but it is in your file. So, we took

13  that into consideration as well. The - you have

14  programmed in a limited fashion while you've

15  been incarcerated. For 25 years, you did get

16  three vocations and you have done AA and

17  Breaking Barriers over the last 25 years.

18  However, the panel feels strongly that you

19  should have - you should get your GED.

20  Irregardless of what you may think about your -

21  what education holds - feelings they may have in

22  your native country of El Salvador. The Panel

23  disagreed with your concession that you really

24  don't need to get any GED while you're here

25  because you are going to El Salvador. We looked

26  at your chronos. You had six 128's and one 115

27  **LUIS CARDIN C-35792 DECISION PAGE 2    4/05/06**

62

1    and the last one being 10-25-90 and you should

2    be commended for that. The psychological report

3    from Dr. McComber that was dated 3-13-06 was

4    favorable, however, we relied on a confidential

5    information that contradicted the statement you

6    gave to Dr. McComber about the crime. The panel

7    was also concerned that the sexual issues

8    identified in your record and that was discussed

9    here today were not sufficiently addressed by

10   Dr. McComber and we're going to order a new

11   psych evaluation. Your realistic parole plans

12   are good. You got a place to stay with your

13   brother or sister, here in California. You also

14   have family in El Salvador. You have a

15   marketable skill, so you shouldn't really have

16   any problems finding employment in either place.

17   However, I just want to caution you that I think

18   you should have - we realize that you're going

19   to be turned over to INS, but if for some

20   reason, INS releases you, you probably should

21   have some employment plans here locally in the

22   event that they don't deport you back to El

23   Salvador. On the 3042 notice, I want to put on

24   record that we did not consider the letter of

25   the L.A. Police Department because of the

26   objection by the defense counsel and the ten day

27   **LUIS CARDIN C-35792   DECISION PAGE 3   4/05/06**

63

1    rule. However, the District Attorney who was
2    present at the hearing from L.A. County
3    indicated his opposition to a finding of
4    suitability. We want to commend you for your
5    three vocations that you have accomplished. The
6    Date Processing and the Optical and
7    Micrographics and the AA program that you've
8    been attending - that you attend regularly since
9    2004. However, these positives aspects of your
10   behavior do not outweigh the factors of
11   unsuitability. In a separate decision, the
12   hearing Panel found that it's not necessary to
13   expect that parole would be granted
14   (indiscernible) in the following two years. The
15   specific reason for these findings are as
16   follows: The motive for the crime was
17   inexplicable or very trivial in relation to the
18   offense in that the victim was shot while trying
19   to rescue his girlfriend from your attempt to
20   pull her in your - into your vehicle. And
21   secondly, the psychiatric report by Dr. McComber
22   was dated 3-14-06 did not significantly address
23   the underlined sexual issues that were discussed
24   in the hearing today and also in your record. We
25   recommend that you remain disciplinary free. We
26   want you to upgrade yourself educationally, get
27   **LUIS CARDIN C-35792   DECISION PAGE 4   4/05/06**

64

1    your GED. Do some more self help. We recommend

2    also that you cooperate with your clinicians to

3    - since we ordered a new psychological

4    evaluation that will explore the underlying

5    sexual issues as identified in the discussion

6    today and also in your file. Do you have

7    anything you'd like to add?

8        **DEPUTY COMMISSIONER MCBEAN:**   I think

9    you've covered it real well, thank you.

10       **PRESIDING COMMISSIONER BIGGERS:**   Okay.

11       **ATTORNEY FOX:**   Given that the clinician

12   will be required to delve into matters that we

13   have denied, will that clinician have access to

14   the confidential file? I don't know what the

15   issue -

16       **PRESIDING COMMISSIONER BIGGERS:**   The

17   information that we receive from the

18   confidential file only talked about the

19   committing offense and the contradictory

20   statements that were made as to the committing

21   offense. Not about the sexual innuendos that

22   were read. That is in the record. When we go

23   back and see the record, there were two

24   allegations of sexual - possible sexual activity

25   and we're basing our request for a new

26   psychological evaluation to try to find out

27   **LUIS CARDIN C-35792   DECISION PAGE 5   4/05/06**

65

1    something about those that were not talked about
2    in the last '06 psych report.

3        **DEPUTY COMMISSIONER MCBEAN:**  And so
4    specifically, to answer your question, the
5    doctor will not be using the confidential
6    section of the file, but the crime report as to
7    the rape allegation is in the Central File and
8    if he wants to look at that –

9        **ATTORNEY FOX:**  There was no allegation.
10   There were two attempts.

11       **DEPUTY COMMISSIONER MCBEAN:**  Attempted
12   rape allegation.

13       **ATTORNEY FOX:**  Okay, I'm sorry.

14       **DEPUTY COMMISSIONER MCBEAN:**  It's in all
15   of our packets today.

16       **PRESIDING COMMISSIONER BIGGERS:**  Two
17   attempted rapes.

18       **DEPUTY COMMISSIONER MCBEAN:**  And it is in
19   the Central File.

20       **ATTORNEY FOX:**  Okay, thank you. I just
21   want to be –

22       **PRESIDING COMMISSIONER BIGGERS:**  Yeah, we
23   want to make sure of that. And one of the
24   things, Mr. Cardin that I want you to
25   understand. You presented yourself well here
26   today, but we feel – the panel feels that those
27   **LUIS CARDIN C-35792  DECISION PAGE 6   4/05/06**

66

1  issues need to be addressed before we can make a

2  recommendation of finding you suitable for

3  parole. You need to discuss that with your

4  clinician. You need to discuss that with them.

5       **INMATE CARDIN:**  May I say something.

6       **PRESIDING COMMISSIONER BIGGERS:**  That

7  concludes the hearing and the time is now 1:45.

8       **DEPUTY COMMISSIONER MCBEAN:**  Good luck,

9  sir.

10      **PRESIDING COMMISSIONER BIGGERS:**  Good

11 luck to you, sir.

12      **INMATE CARDIN:**  Is this my

13 (indiscernible)

14      **ATTORNEY FOX:**  Yeah, that's for you. Wait

15 for me though, okay?

16                   --oOo--

17

18

19

20

21

22                              **AUG  3** 2006

23 **PAROLE DENIED TWO YEARS.**

24 **THIS DECISION WILL BE FINAL ON:**_____

25 **YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT**

26 **DATE, THE DECISION IS MODIFIED.**

27 **LUIS CARDIN C-35792  DECISION PAGE 7  4/05/06**

67

CERTIFICATE AND

DECLARATION OF TRANSCRIBER

I, SHERI ROBINSON, a duly designated
transcriber, PETERS SHORTHAND REPORTING, do hereby
declare and certify under penalty of perjury that I
have transcribed tape(s) which total one in number and
cover a total of pages numbered 1 - 66, and which
recording was duly recorded at CORRECTIONAL TRAINING
FACILITY, SOLEDAD, CALIFORNIA, in the matter of the
SUBSEQUENT PAROLE CONSIDERATION HEARING OF LUIS
CARDIN, CDC NO. C-35792, ON APRIL 5, 2006, and that
the foregoing pages constitute a true, complete, and
accurate transcription of the aforementioned tape to
the best of my ability.

I hereby certify that I am a disinterested
party in the above-mentioned matter and have no
interest in the outcome of the hearing.

Dated APRIL 15, 2006, at Sacramento,
California.

SHERI ROBINSON
TRANSCRIBER
**PETERS SHORTHAND REPORTING**

BOARD OF PRISON                                                    STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING            ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER |
|---|---|
| CARDIN, LUIS, ORTIZ | C35792 |
| DATE OF HEARING | LOCATION |
| WEDNESDAY JUNE 5, 2002 AT 12:15 PM | CORRECTIONAL TRAINING FACILITY - SOLEDAD |

## LEGAL STATUS

| DATE RECEIVED | DATE LIFE TERM STARTS (IF DIFFERENT) | COUNTY |
|---|---|---|
| 9-15-81 | SAME | LOS ANGELES |
| OFFENSE | | CASE NUMBER |
| MURDER 2ND | | A364312 |
| COUNT NUMBER(S) | | PENAL CODE SECTIONS(S) VIOLATED |
| 02 | | P187 |
| TERMS | | MEPD |
| 15-LIFE | | 12-9-90 |

## OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| Welch | Smith | |

OTHERS PRESENT

☐ PRISONER (IF ABSENT, WHY)

☒ ATTORNEY            DAVE SPOWART

☒ DEPUTY D. A.        ANTHONY SOUZA            COUNTY OF   LOS ANGELES

☐ OTHERS:

## STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATED BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _Nov 29, 89_, PAGES ___6___ THROUGH ___6___

☐ THE STATEMENT OF FACT IS

  ☐ QUOTED FROM THE BOARD REPORT, DATED _____ ,PAGE(S) _____

  ☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____

  ☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____

BPT  1000 (Rev 8/90)

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION (BPT §2041)

I.  [X]  PAROLE DENIED   *three*   3  *years* ,

   If this proposed decision denying parole is approved, the Board will send you a copy of the approved
   decision, including the reasons for denial of parole, within 30 days of the hearing.

II.  [ ]  PAROLE GRANTED

   A.  Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ Months

   _____    _____    _____
   Case No.                Count No.               Offense

   B.  Firearm Enhancement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

   C.  Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

   _____    _____    _____    _____ mos.
   Case No.                Count No.               Offense

   _____    _____    _____    _____ mos.
   Case No.                Count No.               Offense

   _____    _____    _____    _____ mos.
   Case No.                Count No.               Offense

   D.  Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .= _____ Months

   E.  Postconviction Credit From _____ To _____  −  _____ Months
                                            (Date)                        (Date)

   F.  Total Period of Confinement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ Months

   The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed
   pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days.
   At that time appropriate pre-prison credits will be applied and a parole release date computed.

   You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or post-
   ponement of your parole date.

III.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed
   decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be
   scheduled for a new hearing, as appropriate.

| PANEL HEARING CASE | | |
|---|---|---|
| Name | | Date |
| Name | | Date |
| | | Date |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|
| CARDIN, LUIS | XXX  C35792 | CTF-SOLEDAD | JUNE 5, 2002 |

**BOARD OF PRISON TERMS**
LIFE PRISONER DECISION FACE SHEET

**STATE OF CALIFORNIA**

| PERIOD OF CONFINEMENT | | | |
|---|---|---|---|
| *(RECORDS OFFICER USE ONLY)* | YR | MO | DAY |
| Adjusted Period of Confinement.. | | | |
| Date Life Term Begins .... | 81 | 09 | 15 |
| At Large Time...... | + | | |
| PAROLE DATE | = | | |

MISCELLANEOUS

*Parole denied three (3) years -*

*(Request a New Psy report)*

Panel recommendations and requests:
_____ Become _____ Remain disciplinary free.
_____ Work towards reducing his/her custody level.
_____ Upgrade _____ vocationally _____ educationally
_____ Participate in _____ self-help (and) _____ therapy.
_____ Transfer to _____ Cat. X _____ Cat. T.

PENAL CODE SECTION 3042 NOTICES    ☒ SENT    (Date) APRIL 19, 2002

**COMMITMENT OFFENSE**

| P187 | MURDER 2ND |
|---|---|
| (Code Section) | (Title) |
| A364312 | 02 |
| (Case Number) | (Count Number) |

| Date Received by CDC 9-15-81 | Date Life Term Begins | Controlling MEPD 12-9-90 |
|---|---|---|
| Type of Hearing ☐ INITIAL ☒ SUBSEQUENT (Hearing No.) #5 | | If Subsequent Hearing, Date of Last Hearing 05/05/99 |
| Department Representative D.S. LEVORSE, C&PR | | |
| Counsel for Prisoner DAVE SPOWART | Address | |
| District Attorney Representative ANTHONY SOUZA | County LOS ANGELES | |

PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a __proposed decision__ and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

By:

| Presiding (Name) | Date |
|---|---|
| Concurring (Name) | Date |
| Concurring (Name) | Date |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CARDIN, LUIS, ORTIZ | C35792 | CTF | MAY 2002 | 06/05/02 |

BPT 1001 (Rev. 1/91)

1    CALIFORNIA BOARD OF PRISON TERMS

2              D E C I S I O N

3    **PRESIDING COMMISSIONER WELCH:**  Okay.  The Panel

4    reviewed all information received from the public

5    and relied on the following circumstances in

6    concluding that the prisoner is not suitable for

7    parole and would pose an unreasonable risk of danger

8    to society or a threat to public safety if released

9    from prison.  The offense was carried out in an

10   especially cruel and callous manner.  The offense

11   was carried out in a dispassionate manner.  The

12   offense was carried out in a manner which

13   demonstrates an exceptionally callous disregard for

14   human suffering.  The motive for the crime was

15   inexplicable or very trivial in relationship to the

16   offense that was committed.  The conclusion was

17   drawn from the Statement of Facts wherein on

18   12/2/1980 the prisoner met Ms. Penny Peran,

19   P-E-R-A-N, outside a 7-11 Store.  He attempted to --

20   He attempted to force the person into this vehicle.

21   The victim's boyfriend, Mr. Dominguez,

22   D-O-M-I-N-G-U-E-Z, observed this and when the

23   prisoner saw Mr. Dominguez approaching the vehicle

24   he drove away.  Mr. Dominguez began to chase the

25   prisoner on foot.  And as he approached the car the

26   prisoner fired a shot and struck him in the chest

27   **LUIS ORTIZ CARDIN C-35792 DECISION PAGE 1   6/5/02**

35

1    causing his death.  The prisoner had a minimal
2    arrest history.  However, it is noted that it was an
3    escalating arrest history.  He failed previous
4    grants of probation.  He failed to profit from
5    society's previous attempts to correct his
6    criminality.  Such attempts included probation and
7    county jail.  Under unstable social history, it's
8    hard to access the prisoner's unstable social
9    history because he came to this country illegally
10   and there's no documentation in terms of whether he
11   had a juvenile history or an unstable social history
12   in his native country.  However, prior criminality c
13   consists of arrests for drunk driving, failure to
14   appear, outstanding warrants for Vehicle Codes,
15   battery on a person, burglary, and of course the
16   instant offense of murder.  The prisoner have not
17   sufficiently upgraded educationally and
18   vocationally.  He have not sufficiently participated
19   in self-help or therapy programs as previously
20   recommend by other Boards.  The recent psychiatric
21   report, overall it appears to be a supportive report
22   dated 12/17/1999 by Dr. Terrini.  The prisoner's
23   parole plans could use some shoring up.  However, we
24   do recognize that the prisoner will be going -- he
25   have an INS hold and he should be returning to his
26   native country.  The prisoner needs to shore up his
27   **LUIS ORTIZ CARDIN C-35792 DECISION PAGE 2   6/5/02**

36

1    parole plans.  The hearing Panel notes that in

2    response to Penal Code 3042 Notices indicate an

3    opposition to a finding of suitability, specifically

4    the Deputy District Attorney from Los Angeles spoke

5    in opposition to a finding of suitability at this

6    time.  The Panel makes the following findings:  The

7    prisoner still needs to develop the ability to face,

8    discuss, understand and cope with stress in a

9    nondestructive manner.  Until significant progress

10   is made the prisoner continues to be unpredictable

11   and a threat to others.  However, there are things

12   the prisoner should be commended for.  We certainly

13   want to commend him for his good work reports.  We

14   certainly want to commend him for being

15   disciplinary-free all of these years, only one 115

16   since 1990, and four 128s, and the last one being

17   2/25/1990.  However, these positive aspects of his

18   behavior does not outweigh his factors of

19   unsuitability.  Therefore, the prisoner will receive

20   another three-year parole denial.  In a separate

21   decision the hearing Panel find that the prisoner

22   has been convicted of murder and it's not reasonable

23   to expect that parole would be granted at a hearing

24   during the following three years.  The specific

25   reason why, the prisoner committed the offense in an

26   especially cruel and callous manner.  He attempted

27   LUIS ORTIZ CARDIN C-35792 DECISION PAGE 3    6/5/02

37

1    to kidnap the victim. When her boyfriend interceded
2    the prisoner, shot the boyfriend in the chest
3    causing his death. It appears that -- Well, the
4    prisoner's offense was carried out in a
5    dispassionate manner. The offense was carried out
6    in a manner which demonstrates an exceptionally
7    callous disregard for human suffering. And the
8    motive for the crime was inexplicable or very
9    trivial in relationship to the offense. The
10   prisoner had started to have an escalating pattern
11   of criminal conduct prior to the commitment offense.
12   And the other issues is that the prisoner had not --
13   have not completed necessary programming, which is
14   essential to his programming. He needs additional
15   time to gain such programming. He have not
16   sufficiently upgraded educationally, vocationally,
17   and have not sufficiently participated in self-help
18   programs. It's noted, however, that the prisoner
19   opted not to participate in self-help programs as
20   per his own assessment. He deemed them not worthy
21   of his participation because they were not up to his
22   standards. Therefore, a longer period of
23   observation and evaluation of the prisoner is
24   required before the Board shall find that the
25   prisoner is suitable for parole. The Panel
26   recommend that you remain disciplinary-free,
27   **LUIS ORTIZ CARDIN C-35792 DECISION PAGE 4    6/5/02**

38

1    excellent work in that area, that you continue to

2    upgrade educationally, vocationally, and certainly

3    you participate in self-help programming. Certainly

4    the recommendation of the Board that you participate

5    in some type of self-help program, i.e. drug,

6    alcohol program. And, however, the Board does not

7    specifically advocate any one type of self-help

8    program. We don't say that you have to participate

9    in AA or NA, faith base program. We leave that up

10   to you. But we certainly recommend that you do

11   participate in certain kinds of self-help programs,

12   and that you not only participate in them, but you

13   make -- that's part of your parole planning in that

14   it extends beyond the institution. That you do some

15   long range thinking in terms of your parole plans,

16   that you make that a part of your parole plans also.

17   And with that we certainly want to wish you good

18   luck. And, Commissioner Smith, any comments?

19        **DEPUTY COMMISSIONER SMITH:** No comments.

20        **PRESIDING COMMISSIONER WELCH:** This hearing is

21   concluded at 13:00 hours. Good luck to you, sir.

22                              --o0o--

23

24

25   **PAROLE DENIED THREE YEARS**

26   **EFFECTIVE DATE OF DECISION** _____ **JUN 2 8 2002**

27   **LUIS ORTIZ CARDIN C-35792 DECISION PAGE 5    6/5/02**

39

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, CONNIE MASTIN, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 38, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of LUIS ORTIZ CARDIN, CDC No. C-35792, on JUNE 5, 2002, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated JUNE 22, 2002, at Sacramento County, California.

Connie Mastin
Transcriber
**CAPITOL ELECTRONIC REPORTING**

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION (BPT §2041)

I. ☒ PAROLE DENIED    3 years.

   If this proposed decision denying parole is approved, the Board will send you a copy of the approved
   decision, including the reasons for denial of parole, within 30 days of the hearing.

II. [ ] PAROLE GRANTED

   A. Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ Months

   | Case No. | Count No. | Offense |
   |---|---|---|

   B. Firearm Enhancement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

   C. Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

   | Case No. | Count No. | Offense | _____ mos. |
   |---|---|---|---|
   | Case No. | Count No. | Offense | _____ mos. |
   | Case No. | Count No. | Offense | _____ mos. |

   D. Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .= _____ Months

   E. Postconviction Credit From _____ To _____ − _____ Months
                                          (Date)                (Date)

   F. Total Period of Confinement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ Months

   The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed
   pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days.
   At that time appropriate pre-prison credits will be applied and a parole release date computed.

   You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or post-
   ponement of your parole date.

III. If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed
    decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be
    scheduled for a new hearing, as appropriate.

| PANEL HEARING CASE | | |
|---|---|---|
| Name | | Date |
| Name | | Date |
| Name | | Date |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|
| CARDIN, LUIS | C-35792 | CTF | 5-7-99 |

Distribution: White—C. File
Canary—BPT

BOARD OF PRISON                                                          STATE OF CALIFORNIA

## LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING            ☒ SUBSEQUENT HEARING

| PRISONER'S NAME  CARDIN, LUIS | CDC NUMBER  C-35792 |
|---|---|
| DATE OF HEARING  5/05/99 | LOCATION  CTF SOLEDAD |

### LEGAL STATUS

| DATE RECEIVED  09/15/81 | DATE LIFE TERM STARTS (IF DIFFERENT)  SAME | COUNTY  LOS ANGELES |
|---|---|---|
| OFFENSE  MURDER 2ND | | CASE NUMBER  A364312 |
| COUNT NUMBER(S)  02 | PENAL CODE SECTIONS(S) VIOLATED  187 | |
| TERMS  15-LIFE | MEPD  12/09/90 | |

### OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | Burglary 2nd | 459 | L.A. | A371882 | 01 |
| ☐ | | | | | |
| ☐ | | | | | |

### PRESENT AT HEARING

| PANEL MEMBER  GIAQUINTO | PANEL MEMBER  SHELTON | PANEL MEMBER  BORDOVARO |
|---|---|---|

OTHERS PRESENT

☒ PRISONER (IF ABSENT, WHY)

☒ ATTORNEY    J. CHAMPLIN

☒ DEPUTY D. A.    R. DVER    COUNTY OF    LA

☐ OTHERS: _____

### STATEMENT OF FACTS

☒ THE HEARING PANEL INCORPORATED BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON    11-29-89    , PAGES    2.    THROUGH    3

☐ THE STATEMENT OF FACT IS

    ☐ QUOTED FROM THE BOARD REPORT, DATED _____ ,PAGE(S) _____

    ☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____

    ☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____

BPT   1000 (Rev 8/90)

BOARD OF PRISON TERMS
**LIFE PRISONER DECISION FACE SHEET**

STATE OF CALIFORNIA

## PERIOD OF CONFINEMENT

*(RECORDS OFFICER USE ONLY)*

| | YR | MO | DAY |
|---|---|---|---|
| Adjusted Period of Confinement......................................................................... | | | |
| Date Life Term Begins................................................................................ + | 81 | 09 | 15 |
| At Large Time........................................................................................ + | | | |
| PAROLE DATE......................................................................................... = | | | |

## MISCELLANEOUS

Denial - 3 years,

Panel recommendations and requests:
_____ Become   ✓ Remain disciplinary free.
       Work towards reducing his/her custody level.
_____ Upgrade    ✓ vocationally   ✓ educationally
_____ Participate in   ✓ self-help (and)   ✓ therapy.
_____ Transfer to _____ Cat. X   _____ Cat. T.

PENAL CODE SECTION 3042 NOTICES ☒ SENT       (Date) **MARCH 19, 1999**

COMMITMENT OFFENSE

| 187 | **MURDER 2ND** |
|---|---|
| (Code Section) | (Title) |
| A364312 | 02 |
| (Case Number) | (Count Number) |

| Date Received by CDC
**09/15/81** | Date Life Term Begins
**SAME** | Controlling MEPD
**12/09/90** |
|---|---|---|
| Type of Hearing
☐ INITIAL    ☒ SUBSEQUENT (Hearing No.)   #4 | | If Subsequent Hearing, Date of Last Hearing
**3/7/96** |

Department Representative
**JOY KELLAM TYLER, C & PR**

| Counsel for Prisoner
**JEFF CHAMPLIN** | Address |
|---|---|
| District Attorney Representative
**ROBERT DVER** | County
**LOS ANGELES** |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a proposed decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

By:

| Presiding (Name) | | Date |
|---|---|---|
| Concurring (Name) | | Date |
| Concurring (Name) | | Date |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| **CARDIN, LUIS** | **C-35792** | **CTF** | **3/99** | **05/07/99** |

BPT 1001 (Rev. 1/91)

43

1          CALIFORNIA BOARD OF PRISON TERMS

2                    D E C I S I O N

3          PRESIDING COMMISSIONER GIAQUINTO:  Okay.  We're

4     back on record at 2:50.  And with the exception of

5     Mr. Bordonaro who had to leave because of traffic

6     issues, everyone else that was in the room prior to

7     the recess is back.  We did deny your parole.  The

8     time is 2:50.  We denied your parole.  The Panel

9     reviewed all the information received from the public

10    and relied on the following circumstances in

11    concluding that the prisoner is not suitable for

12    parole and would pose an unreasonable risk of danger

13    to society and a threat to public safety if released

14    from prison.  The offense was carried out in a callous

15    manner.  There were multiple victims.  The offense was

16    carried out in a dispassionate manner.  These

17    conclusions are drawn from the Statement of Facts

18    wherein the prisoner accosted a stranger to him,

19    female, in public and attempted to force her into his

20    car.  He attempted to grab her, apparently, if the way

21    the reports read.  And she -- Her boyfriend was

22    nearby, the victim in this case, and apparently he

23    chased after the prisoner who by this time was in his

24    own car, the prisoner was.  The prisoner withdrew a

25    weapon, a handgun, and shot and killed the victim.

26    five days later, the prisoner apparently was with

27    LUIS CARDIN    C-35792    DECISION PAGE 1    5/5/99

C-FILE COPY

44

1    another female and she says that he attempted to rape
2    her, the reason that we're talking about this. And he
3    wasn't convicted of that offense, apparently. In
4    fact, it was dismissed. But that led us to the murder
5    weapon because she's screaming, a neighbor hears it.
6    He flees from the residence, the cops are all
7    apparently right there as he's leaving because he sees
8    the cops, takes the gun and throws it under a nearby
9    vehicle. They recovered the gun. And they recovered
10   the handgun and they match it up as the murder weapon
11   from the murder. The prisoner had been arrested on
12   several occasions prior to that, the driving under the
13   influence, at least three times, and a battery. So,
14   apparently, he was experiencing some problems with
15   alcohol abuse. And he has also experimented with
16   marijuana. The prisoner sufficiently participated in
17   self-help or therapy programming. And the most recent
18   psychiatric report, I've also spoken to some of the
19   issues of concern on the record in that this prisoner
20   has an R suffix and the doctor chose not to even
21   address the psychosexual issues if there are any. I
22   don't know. I'm not a clinician, but they surely
23   should have been addressed to some degree given the
24   circumstances of the life offense and the
25   circumstances of the event that occurred five days
26   after the murder. The District Attorney -- Well, the
27   LUIS CARDIN   C-35792   DECISION PAGE 2   5/5/99

C-FILE COPY

45

1    District Attorney is here.  And also the prisoner
2    should be commended for having completed optical lab
3    technology, and previously he's been involved in
4    Breaking Barriers.  However, these positive aspects of
5    his behavior do not outweigh the factors of
6    unsuitability.  This denial is for three years.  The
7    Panel finds it's not reasonable to expect that parole
8    would be granted during the following three years for
9    the following reasons:  Number one is the life
10   offense, which was carried out in a callous manner,
11   specifically the prisoner had accosted a female in a
12   public place and her boyfriend then, who was nearby,
13   chased this prisoner.  The prisoner entered his own
14   vehicle and withdrew a handgun and shot and killed the
15   victim.  And five days later, according to the victim
16   in the second case, or female witness in the second
17   case, he attempted to rape the second female at which
18   time he fled and was apprehended by the police.  And
19   they noticed that he threw a weapon away under a
20   nearby vehicle.  They matched up that weapon to the
21   murder weapon.  The prisoner has not sufficiently
22   participated in self-help and therapy programming.
23   And the psychiatric report does not give us a lot of
24   guidance, at least in the one area that I previously
25   discussed, and that is whether does exist or did exist
26   any psychosexual issues that should be of concern to
27   LUIS CARDIN   C-35792   DECISION PAGE 3   5/5/99

C-FILE COPY

46

1    anybody deliberating potential parole release.  The

2    Panel requests that the prisoner remain

3    disciplinary-free, continue to upgrade educationally

4    and vocationally, and participate in available

5    self-help and therapy programming.  And that ends the

6    reading of the decision.  Mr. Shelton, do you have any

7    comments?

8            COMMISSIONER SHELTON:  No, I have none.

9            PRESIDING COMMISSIONER GIAQUINTO:  All right.

10    Good luck to you and that ends this hearing at 2:55.

11                        --oOo--

12

13

14

15

16

17

18

19    .

20

21

22

23

24

25    PAROLE DENIED THREE YEARS            MAY 2 8 1999

26    EFFECTIVE DATE OF DECISION_____

27    LUIS CARDIN   C-35792   DECISION PAGE 4   5/5/99

C-FILE COPY

47

CERTIFICATE AND

DECLARATION OF TRANSCRIBER

I, CONNIE MASTIN, a duly designated
transcriber, CAPITOL ELECTRONIC REPORTING, do hereby
declare and certify under penalty of perjury that I
have transcribed tape(s) which total one in number and
cover a total of pages numbered 1 - 46, and which
recording was duly recorded at CORRECTIONAL TRAINING
FACILITY at SOLEDAD, CALIFORNIA, in the matter of the
SUBSEQUENT PAROLE CONSIDERATION HEARING OF LUIS
CARDIN, CDC No. C-35792, on MAY 5, 1999, and that the
foregoing pages constitute a true, complete, and
accurate transcription of the aforementioned tape(s)
to the best of my ability.

I hereby certify that I am a disinterested
party in the above-captioned matter and have no
interest in the outcome of the hearing.

Dated MAY 20, 1999, at Sacramento, California.


CONNIE MASTIN
TRANSCRIBER
CAPITOL ELECTRONIC
REPORTING

C-FILE COPY

BOARD OF PRISON TERMS                                              STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER |
|---|---|
| CARDIN, LUIS | C-35792 |

| DATE OF HEARING | LOCATION |
|---|---|
| MARCH 7, 1996 | CSP-SOL |

## LEGAL STATUS

| DATE RECEIVED | DATE LIFE TERM STARTS (IF DIFFERENT) | COUNTY |
|---|---|---|
| 9-15-81 | 9-15-81 | LOS ANGELES |

| OFFENSE | CASE NUMBER |
|---|---|
| MURDER 2ND | A364312 |

| COUNT NUMBER(S) | PENAL CODE SECTION(S) VIOLATED |
|---|---|
| 2 | 187 PC |

| TERMS | MEPD |
|---|---|
| 15 - LIFE | 12-9-90 |

### OTHER COMMITMENT OFFENSES   OR   STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| J. Collis | R. Foster | D. VanCourt |

OTHERS PRESENT:

[ ] PRISONER (IF ABSENT, WHY?) _____

[ ] ATTORNEY _____RHONDA SKIPPR-DOTTA_____

[ ] DEPUTY D. A. ___ALEXIS DE LA GARZA___ - COUNTY OF ___LOS ANGELES___

[ ] OTHERS: _____

## STATEMENT OF FACTS

] THE HEARING PANEL INCORPORATES BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _____ , PAGES _____ THROUGH _____ .

] THE STATEMENT OF FACTS IS

☒ QUOTED FROM THE BOARD REPORT, DATED _3-20-95_ , PAGE(S) __1__ .

☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____ .

☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____ .

BPT 1000 (Rev. 8/90)

BOARD OF PRISON TERMS

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION (BPT §2041)

I.    [ ✗ ]    PAROLE DENIED     3 Yrs

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

---

II.    [ ]    PAROLE GRANTED

A.  Base Period of Confinement ...................................... _____ Months

_____
Case No.          Count No.          Offense

B.  Firearm Enhancement............................................+ _____ Months

C.  Other Crimes Total ...............................................+ _____ Months

_____  _____ mos.
Case No.          Count No.          Offense

_____  _____ mos.
Case No.          Count No.          Offense

_____  _____ mos.
Case No.          Count No.          Offense

D.  Total Term ......................................................= _____ Months

E.  Postconviction Credit From _____ To _____ − _____ Months
                              (Date)          (Date)

F.  Total Period of Confinement....................................= _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

---

III.    If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

### PANEL HEARING CASE

| Name | | Date |
|---|---|---|
| Name | | Date |
| Name | | Date |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|
| CARDIN, LUIS | C-35792 | CSP-SOL | 3/7/96 |

Distribution:  White−C. Fi
Canary−BF
Pink−Prison

BOARD OF PRISON TERMS                      P/o  ~  Sut # 3    STATE CI

# LIFE PRISONER DECISIO   ACE SHEET

## PERIOD OF CONFINEMENT

*(RECORDS OFFICER USE ONLY)*

|  | YR | MO |
|---|---|---|
| Adjusted Period of Confinement ........................................ | | |
| Date Life Term Begins ........................................ | + | |
| At Large Time ........................................ | + | |
| PAROLE DATE ........................................ | = | |

## MISCELLANEOUS

Parole Denied 3 YRS.

Panel recommendations and requests:
____ Become ____✓ Remain disciplinary free.
____ Work towards reducing his/her custody level.
✓ Upgrade ____ vocationally ____ educationally.
✓ Participate in ____ self-help (and) ____ therapy.
____ Transfer to ____ Cat. X ____ Cat. T.

PENAL CODE SECTION 3042 NOTICES    ☒ SENT    (Date)_____ JANUARY, 23, 1996 _____

COMMITMENT OFFENSE

| 187 | MURDER 2ND |
|---|---|
| (Code Section) | (Title) |
| A364312 | 2 |
| (Case Number) | (Count Number) |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|---|---|---|
| 9-15-81 | 9-15-81 | 12-9-90 |

| Type of Hearing | If Subsequent Hearing, Date of Last Hearing |
|---|---|
| ☐ INITIAL ☒ SUBSEQUENT (Hearing No.) __2__ | 4-13-95 |

Department Representative

| Counsel for Prisoner | Address |
|---|---|
| RHONDA SKIPPER-DOTTA | P.O. BOX 542, GALT 95632-0542 |
| District Attorney Representative | County |
| ALEXIS DE LA GARZA | LOS ANGELES |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a __proposed__ decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

By:

| Presiding (Name) | Date |
|---|---|
| Concurring (Name) | Date |
| Concurring (Name)  a. F. Van Court | Date |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DA |
|---|---|---|---|---|
| CARDIN, LUIS | C-35792 | CSP-SOL | NEXT AVAIL. | 3/7/96 |

42                                          C-FILE

1          CALIFORNIA BOARD OF PRISON TERMS

2                     D E C I S I O N

3          **PRESIDING COMMISSIONER GILLIS:**    Back on the

4     record and all those who were previously identified

5     have returned.  The Panel, Mr. Cardin, has unanimously

6     determined that you're not suitable for parole at this

7     time and that you'd pose an unreasonable risk of

8     danger and a threat to public safety if released.  We

9     find the commitment offense was extremely callous.

10    These conclusions are drawn from the Statement of

11    Facts wherein the prisoner shot the young victim after

12    the victim had attempted to pursue the prisoner after

13    the prisoner had attempted to kidnap the victim's

14    female friend.  Under previous record, there is no

15    documentation which would enable the Board to evaluate

16    the prisoner's social or criminal history in that he

17    had recently come to the U.S. illegally.  Under

18    institutional behavior, the prisoner has not

19    participated in sufficient self-help and therapy

20    programming.  Under psychiatric report, the report

21    dated February 24, of 1994, authored by R. Horon

22    (phonetic) is inconclusive in that it is based on the

23    statements of the prisoner and those statements are

24    inconsistent with the facts of the crime and the

25    witnesses.  Under remarks, the Panel finds that the

26    prisoner's gains are minimal and recent and he must

27    **LUIS CARDIN    C-35792  DECISION PAGE 1    3/07/96**

43

1   demonstrate an ability to improve and maintain gains

2   over an extended period of time.  However, the

3   prisoner has made some progress.  We commend him for

4   being disciplinary free for 16 years.  He has

5   programmed well.  He has good work reports.  However,

6   these positive aspects do not outweigh the factors of

7   unsuitability.  The Panel also finds that it's not

8   reasonable to expect that parole would be granted

9   within the next three years and we base that on the

10   following factors:  the commitment offense, again, was

11   extremely callous, specifically the prisoner attempted

12   to kidnap a young female and then when her friend came

13   to her rescue, the prisoner callously shot the friend

14   as he pursued the prisoner.  Also, the psychiatric

15   report dated February 24, of 1995, authored by Dr.

16   Horon, is inconclusive and this indicates a need for a

17   longer period of observation and evaluation.  And

18   finally, the prisoner has not come to grips with his

19   actions and the commitment offense and needs

20   additional time to gain some insight.  Recommendations

21   to the prisoner is that you remain disciplinary free,

22   that you participate in self-help and therapy

23   programming if it becomes available to you.

24        That concludes the formal portion.  I'll ask if

25   any of the Panel Members have any comments.  Mr.

26   Foster?

27   LUIS CARDIN    C-35792    DECISION PAGE 2    3/07/96

44

```
 1          DEPUTY COMMISSIONER FOSTER:  No, thank you.
 2          PRESIDING COMMISSIONER GILLIS:  Mr. Van Court?
 3          COMMISSIONER VAN COURT:  No, I have none.
 4          ATTORNEY SKIPPER-DOTTA:  Do you have any
 5     specific, when participate in self-help and therapy.
 6     Since he's been in substance abuse programs and Borg
 7     and he's in MVP, is there anything in particular you
 8     would like for him to focus on?
 9          PRESIDING COMMISSIONER GILLIS:  Yes.
10     Developing insight and --
11          ATTORNEY SKIPPER-DOTTA:  Okay.
12          PRESIDING COMMISSIONER GILLIS:  -- whatever
13     would give, whatever therapy that he can get, one-to-
14     one or whatever's available to him or help him
15     understand his actions in the commitment offense and
16     come to grips with it, then that's what we're looking
17     for.
18          ATTORNEY SKIPPER-DOTTA:  Okay.  Thank you.
19          PRESIDING COMMISSIONER GILLIS:  Okay.  That
20     concludes the hearing.
21          INMATE CARDIN:  Question.
22          PRESIDING COMMISSIONER GILLIS:  Yes.
23          INMATE CARDIN:  How can I participate on that
24     where they don't have it available here in this -- ?
25          PRESIDING COMMISSIONER GILLIS:  Well, that -- I
26     said if it's available to you.  If it's not available,
27     LUIS CARDIN    C-35792    DECISION PAGE 3    3/07/97
```

96

45

1    then give your --

2         INMATE CARDIN: It was if 30 (inaudible) go by --

3         PRESIDING COMMISSIONER GILLIS:    Well, let me

4    finish.  Let me finish.  If it's not available to you,

5    then you're going to have to find someway of doing it

6    on your own in self-study or you're going to have to

7    do some reading or whatever, someway.  You're the one

8    who needs to make the change.

9         INMATE CARDIN:    Well, you know, I (inaudible)

10   anyway.  Believe me, sir.  Unfortunately, you can't

11   permit the prisoner to get out.

12        PRESIDING COMMISSIONER GILLIS:    Okay.  Good

13   luck to you.

14                        ---o0o---

15

16

17

18

19

20

21

22

23

24

25   PAROLE DENIED THREE YEARS

26   EFFECTIVE DATE OF THIS DECISION     MAY 1 3 1996

27   LUIS CARDIN    C-35792    DECISION PAGE 4    3/07/96

BOARD OF PRISON TERMS

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION  (BPT §2041)

I.  [ ✗ PAROLE DENIED   *two years*

   If this proposed decision denying parole is approved, the Board will send you a copy of the approved
   decision, including the reasons for denial of parole, within 30 days of the hearing.

II.  [ ]   PAROLE GRANTED

   A.  Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ Months

   _____
   Case No.          Count No.          Offense

   B.  Firearm Enhancement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

   C.  Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .+ _____ Months

   _____ _____ mos.
   Case No.          Count No.          Offense

   _____ _____ mos.
   Case No.          Count No.          Offense

   _____ _____ mos.
   Case No.          Count No.          Offense

   D.  Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .= _____ Months

   E.  Postconviction Credit From _____ To _____ − _____ Months
                                   (Date)              (Date)

   F.  Total Period of Confinement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ Months

   The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed
   pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days.
   At that time appropriate pre-prison credits will be applied and a parole release date computed.

   You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or post-
   ponement of your parole date.

III.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed
   decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be
   scheduled for a new hearing, as appropriate.

| PANEL HEARING CASE | | |
|---|---|---|
| Name | | Date  4/1 |
| Name | | Date  /13/95 |
| 'ame | | Date |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|
| CARDIN, LOUIS | C-35792 | CSP–SOL | 4/13/95 |

Distribution: White–C.

BOARD OF PRISON TERMS                                                STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER |
|---|---|
| CARDIN, LOUIS | C-35792 |

| DATE OF HEARING | LOCATION |
|---|---|
| APRIL 13, 1995 | CSP-SOL |

## LEGAL STATUS

| DATE RECEIVED | DATE LIFE TERM STARTS (IF DIFFERENT) | COUNTY |
|---|---|---|
| 9-15-81 | 9-15-81 | LOS ANGELES |

| OFFENSE | CASE NUMBER |
|---|---|
| MURDER 2ND | A364312 |

| COUNT NUMBER(S) | PENAL CODE SECTION(S) VIOLATED |
|---|---|
| 2 | 187 |

| TERMS | MEPD |
|---|---|
| 15 - LIFE | 12-9-90 |

## OTHER COMMITMENT OFFENSES, OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| M. GUADERRAMA | P. FOSTER | J. GILLIS |

OTHERS PRESENT:

☒ PRISONER (IF ABSENT, WHY?) _____

☒ ATTORNEY _____ PAT CASSADY _____

☒ DEPUTY D. A. ___ KAREN THORPE ___  -  COUNTY OF ___ LOS ANGELES ___

☐ OTHERS: _____

## STATEMENT OF FACTS

☒ THE HEARING PANEL INCORPORATES BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON 11/29/89 _____, PAGES 2 THROUGH 3 .

☐ THE STATEMENT OF FACTS IS

   ☐ QUOTED FROM THE BOARD REPORT, DATED _____, PAGE(S) _____ .

   ☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____ .

   ☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____ .

BPT 1000 (Rev. 8/90)

PERIOD OF CONFINEMEN. 4/97 *Subs #3*

*(RECORDS OFFICER USE ONLY)*

| | YR | MO |
|---|---|---|
| Adjusted Period of Confinement | | |
| Date Life Term Begins | | |
| At Large Time | | |
| PAROLE DATE | | |

## MISCELLANEOUS

*Parole denied two years*

Panel recommendations and requests:
_____ Become _____ Remain disciplinary free.
_____ Work towards reducing his/her custody level.
_____ Upgrade _____ vocationally _____ educationally.
_____ Participate in _____ self-help (and) _____ therapy.
_____ Transfer to _____ Cat. X _____ Cat. T.

| | | |
|---|---|---|
| Prep. Time: | | hr. |
| Start Time: | | am |
| Stop Time: | | am |
| Total Time: | | hr. |

PENAL CODE SECTION 3042 NOTICES  ☒ SENT  (Date) ___MARCH 3, 1995___

COMMITMENT OFFENSE

| | |
|---|---|
| 187 | MURDER 2ND |
| (Code Section) | (Title) |
| A364312 | 2 |
| (Case Number) | (Count Number) |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|---|---|---|
| 9-15-81 | 9-15-81 | 12-9-90 |

| Type of Hearing | If Subsequent Hearing, Date of Last Hearing |
|---|---|
| ☐ INITIAL  ☒ SUBSEQUENT (Hearing No.) __2__ | 11-21-91 |

Department Representative

| Counsel for Prisoner | Address |
|---|---|
| PAT CASSADY | P.O. BOX 199; CONCORD  94522-0199 |
| District Attorney Representative | County |
| KAREN THORPE | LOS ANGELES |

## PAROLE HEARING CALENDAR

This form and the panel's statement at the conclusion of the hearing constitute a **proposed** decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.

By:

| | Date |
|---|---|
| Presiding (Name) | |
| Concurring (Name) | Date |
| Concurring (Name) | Date |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CARDIN, LOUIS | C-35792 | CSP-SOL | 4/95 | 4/13/95 |

BPT 1001 (REV. 1/91)

PERMANENT ADDE

BOARD OF PRISON TERMS                                          STATE OF CALIFORNIA
## DECISION REVIEW COMMITTEE REVIEW OF PROPOSED DECISION

================================================================================

| INMATE  Louis **Cardin** | CDC NUMBER C-35792 |
|---|---|

| TYPE OF HEARING   Subsequent Parole Consideration | DATE OF HEARING 4/13/95 |
|---|---|

| ☐ Affirm original decision | ☒ Schedule new hearing | ☐ Modify decision |
|---|---|---|

Review by the Decision Review Unit of the proposed decision from the second subsequent parole consideration hearing of April 13, 1995, has disclosed that due to an apparent malfunction of the recording equipment, the April 13, 1995 hearing could not be transcribed. As a result, there is no record of the hearing.

Since a transcript of the hearing panel's decision is not only required by law but is also necessary for a review of the hearing decision, **disapprove the proposed decision of April 13, 1995, and schedule a rehearing on the next available calendar.**

SUPPORTIVE REASONING FOR DECISION:

See attached BPT form 1138.

| COMMISSIONER SIGNATURE | DATE | | |
|---|---|---|---|
| *[signature]* | 11-14-95 | ☐ CONCUR | ☐ DISSENT |
| COMMISSIONER SIGNATURE *[signature]* | DATE 11-14-95 | ☒ CONCUR | ☐ DISSENT |
| COMMISSIONER SIGNATURE Arthur F. Van Count | DATE 11/14/95 | ☒ CONCUR | ☐ DISSENT |

I dissent from the majority for the following reasons:

| SIGNATURE | DATE |
|---|---|

================================================================================

BPT  1139  (4/87)

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA
## REVIEW OF PROPOSED DECISION

=================================================================

☐ APPROVED      ☐ REFER TO DECISION REVIEW COMMITTEE      ☐ REFER TO RECONSIDERATION PANEL

| INMATE Louis **Cardin** | CDC NUMBER C-35792 |
|---|---|
| TYPE OF HEARING  Subsequent Parole Consideration | DATE OF HEARING  4/13/95 |

The Decision Review Unit has completed a review of the above hearing and has identified the following issues which need further review:

Review by the Decision Review Unit of the proposed decision from the second subsequent parole consideration hearing of April 13, 1995, has disclosed that due to an apparent malfunction of the recording equipment, the April 13, 1995 hearing could not be transcribed. As a result, there is no record of the hearing.

Since a transcript of the hearing panel's decision is not only required by law but is also necessary for a review of the hearing decision, a rehearing of the prisoner's second subsequent parole consideration hearing will be required.

**RECOMMENDATION:** Disapprove the proposed decision of April 13, 1995, and schedule a rehearing on the next available calendar.

| DECISION REVIEW UNIT SIGNATURE | DATE 11-13-95 |
|---|---|
| REVIEWED BY LEGAL COUNSEL  ☐ YES  ☐ NO  | LEGAL COUNSEL INITIALS | RESULT  ☐ CONCUR  ☐ DISSENT |

LEGAL COUNSEL COMMENTS:

I have reviewed the above-referenced file and ☐ concur ☐ dissent with the Decision Review Unit.
COMMENTS:

| EXECUTIVE OFFICER SIGNATURE | DATE 11/13/95 |
|---|---|

BPT 1138 (4/87)                          Page 1 of 1                                    BOARD

BOARD OF PRISON TERMS                                                            STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| | |
|---|---|
| PRISONER'S NAME<br>CARDIN, LOUIS | CDC NUMBER<br>C-35792 |
| DATE OF HEARING  January 14, 1994 | LOCATION<br>CSP-SOL |

## LEGAL STATUS

| DATE RECEIVED<br>9-15-81 | DATE LIFE TERM STARTS (IF DIFFERENT)<br>9-15-81 | COUNTY<br>Los Angeles |
|---|---|---|
| OFFENSE  Murder 2nd | | CASE NUMBER<br>A364312 |
| COUNT NUMBER(S)  2 | | PENAL CODE SECTION(S) VIOLATED<br>187 |
| TERMS  15 - Life | MEPD  12-9-90 | |

## OTHER COMMITMENT OFFENSES *OR* *STAYED COUNTS*

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| M. GUADERRAMA | C. MAR | C BENTLEY |

OTHERS PRESENT:

☑ PRISONER (IF ABSENT, WHY?) _____

☑ ATTORNEY   PAT CASSADY _____

☑ DEPUTY D. A.   Tim Smith _____ · COUNTY OF   LOS ANGELES _____

☐ OTHERS: _____

## STATEMENT OF FACTS

☑ THE HEARING PANEL INCORPORATES BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON  11/29/89 _____ , PAGES  2 THROUGH  3 .

☐ THE STATEMENT OF FACTS IS

   ☐ QUOTED FROM THE BOARD REPORT, DATED _____, PAGE(S) _____ .

   ☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____ .

   ☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____ .

BPT 1000 (Rev. 8/90)

BOARD OF PRISON TERMS

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION  (BPT §2041)

I.  [ ]  PAROLE DENIED

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

---

II.  [ ]  PAROLE GRANTED

Panel recommendations and requests:
_____ Become _____ Remain disciplinary free.
_____ Work towards reducing his/her custody level.

A.  Base Period of Confinement . _____ .Upgrade _____ vocationally _____ .educationally____ Months
_____ Participate in _____ self-help (and) _____ therapy.
_____ Transfer to _____ Cat. X _____ Cat. T.

| Case No. | Count No. | Offense |
|---|---|---|

B.  Firearm Enhancement.................................................+ _____ Months

C.  Other Crimes Total .................................................+ _____ Months

| Case No. | Count No. | Offense | _____ mos. |
|---|---|---|---|

| Case No. | Count No. | Offense | _____ mos. |
|---|---|---|---|

| Case No. | Count No. | Offense | _____ mos. |
|---|---|---|---|

D.  Total Term .......................................................= _____ Months

E.  Postconviction Credit From _____ To _____ − _____ Months
(Date)                    (Date)

F.  Total Period of Confinement.....................................= _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

---

III.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

| PANEL HEARING CASE | | |
|---|---|---|
| Name | | Date |
| Name | | Date |
| Name | | Date |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|
| CARDIN, LOUIS | C-35792 | CSP-SOL | 1-14-94 |

Distribution: White—C. Fi
Canary—BF
Pink—Prison

# LIFE PRISONER ~~PAROLE~~ SHEET

| PERIOD OF CONFINEMENT | 2 1/95 Subs #2 |
|---|---|

*(RECORDS OFFICER USE ONLY)*

|  | YR | MO | D. |
|---|---|---|---|
| Adjusted Period of Confinement ............................................ | | | |
| Date Life Term Begins ............................................ | + | | |
| At Large Time ............................................ | + | | |
| PAROLE DATE ............................................ | = | | |

## MISCELLANEOUS

Prisoner stipulated to a one year denial due to unsuitability. BPT recommends he be retained at CSP-Solano to continue programming if his custody level permits.

| Prep. Time: | hr. | mi |
|---|---|---|
| Start Time: | am | pm |
| Stop Time: | am | pm |
| Total Time: | hr. | mi |

PENAL CODE SECTION 3042 NOTICES ☑ SENT (Date) November 29, 1993

### COMMITMENT OFFENSE

| 187 PC | Murder 2nd |
|---|---|
| (Code Section) | (Title) |

| A364312 | 2 |
|---|---|
| (Case Number) | (Count Number) |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|---|---|---|
| 9-15-81 | 9-15-81 | 12-9-90 |

| Type of Hearing | If Subsequent Hearing, Date of Last Hearing |
|---|---|
| ☐ INITIAL ☒ SUBSEQUENT (Hearing No.) 2 | 11-21-91 |

Department Representative

| Counsel for Prisoner | Address | |
|---|---|---|
| Pat Cassady | P. O. Box 199, Concord, | 94522-0199 |
| District Attorney Representative | County | |
| Tim Smith | Los Angeles | |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a __proposed__ decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

By: _____ Alan DC

| Presiding (Name) | Date |
|---|---|
| | 1/ |
| Concurring (Name) | Date |
| | |
| Concurring (Name) | Date |
| Carol Bentley | |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CARDIN, LOUIS | C-35792 | CSP-SOL | 11/93 | 1-14-94 |

BPT 1001 (REV. 1/91)

PERMANENT ADDEND

COPY SENT TO ... 1 1994

**BOARD OF PRISON TERMS**
**LIFE PRISONER HEARING – EXTRAORDINARY ACTION AND DECISION**

**STATE OF CALIFORNIA**
**BPT 1001A (Rev. 10/89)**

| ACTION TYPE (select one) | ☐ Waiver of Appearance | ☐ Request for Postponement | ☒ Waiver of Parole Consideration Hearing-Stipulation of Unsuitability |
|---|---|---|---|

| HEARING TYPE (select one) | ☒ Parole Consideration | ☐ Progress | ☐ Rescission | Hearing Date _1-14-94_ |
|---|---|---|---|---|

## WAIVER OF RIGHT TO ATTEND HEARING

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☐ I do not wish to attend my Board hearing and do not wish to be represented at the hearing. The hearing will be held in my absence.

☐ I do not personally wish to attend my hearing but I do wish to be represented by counsel at the hearing.

    ☐ I will employ counsel to represent me at the hearing.

    ☐ I cannot afford counsel and wish counsel appointed to represent me.

## POSTPONEMENT

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☐ I hereby request that the hearing indicated above be Postponed to _____ . __

The reasons for my request for a postponement are stated below.

## WAIVER OF HEARING AND STIPULATION TO UNSUITABILITY

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☒ I waive my right to a parole consideration hearing and I waive the right to have an attorney represent me at a hearing in my absence. I find that I am unsuitable for parole based on my reasons given on this form and therefore request that you find me unsuitable.

    ☒ One-year Denial      ☐ Two-year Denial      ☐ Three-year Denial

**PRISONER'S REASON(S) FOR REQUEST:**
(For Example: Psychiatric Evaluation Not Supportive, Programming Inadequate, Cat X Incomplete, etc.)

_Wants to offer board longer period of disciplinary_
_free time, more time in present job of micrographics_
_and more time in AA and VORG (Self-Help)_

| Signature of Prisoner | Date |
|---|---|
| X _Luis Cardin_ | _1-14-94_ |

| Signature of Attorney (if applicable) | Date |
|---|---|
| _Patricia A. Cassidy_ | _1-14-94_ |

| Signature and Title of Witness (CDC) | Date |
|---|---|
| | |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | DATE |
|---|---|---|---|---|
| | | | | |

BOARD OF PRISON TERMS
LIFE PRISONER HEARING – EXTRAORDINARY ACTION AND DECISION

STATE OF CALIFORNIA
BPT 1001A (Rev. 10/89)

☐ I certify to the best of my knowledge and information, the foregoing reasons as stated by the prisoner are accurate, and that the prisoner was capable of making a knowledgeable decision regarding his/her hearing.

The following information is submitted for the Board's consideration in making their decision:

_____

_____

_____

| CDPR Signature | Date |
| --- | --- |

*FOR BOARD OF PRISON TERMS USE ONLY*

## DECISION / ORDER

### WAIVER OF RIGHT TO ATTEND HEARING

1. ☐ Request is denied.

   ☐ Request is granted. Hearing will be conducted in absence of prisoner.

### POSTPONEMENT

2. ☐ Request is denied.

   ☐ Request is granted. Grant based on a finding of good cause. Place on _____ calendar.

### WAIVER OF HEARING AND STIPULATION TO UNSUITABILITY

3. ☐ Request is denied.

   ☑ Request is granted. The Board agrees to enter into the stipulation, on a finding of good cause, offered by the prisoner on the waiver of his/her Life Parole Consideration Hearing and orders a:

   ☑ One-year denial      ☐ Two-year denial*      ☐ Three-year denial**

   * The Board must find it unreasonable to expect that the prisoner would be eligible for parole during the second, or second and third year, and the Board must state the reasons for its finding.

   ** In addition to the above (*), the prisoner must have been convicted of more than one offense which involves the taking of a life.

(The basis of the finding of good cause for postponement or multiple-year denial must be stated below.)

   ☑ Good cause based on the reasons given by the prisoner.

Other comments (if applicable):

_____

_____

_____

**Signature of BPT Commissioners**

1. _____    Date _____

   _____    Date 1/14/94

BPT Action Taken At:    ☑ BPT Headquarters    ☑ Institution

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | DATE |
| --- | --- | --- | --- | --- |
| Carolin, Luis | C-35792 | CSP Solano | 1/14/94 | |

COPY SENT TO

BOARD OF PRISON TERMS                                                                            STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER |
|---|---|
| Cardin, Luiss | C-35792 |

| DATE OF HEARING | LOCATION |
|---|---|
| 11-21-91 @ 1:30 PM | CMF-S |

## LEGAL STATUS

| DATE RECEIVED | DATE LIFE TERM STARTS (IF DIFFERENT) | COUNTY |
|---|---|---|
| 9-15-81 | 9-15-81 | Los Angeles |

| OFFENSE | | CASE NUMBER |
|---|---|---|
| Murder 2nd | | A364312 |

| COUNT NUMBER(S) | PENAL CODE SECTION(S) VIOLATED |
|---|---|
| 2 | 187 |

| TERMS | MEPD |
|---|---|
| 15 - Life | 12-9-90 |

### OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| E Jong | M O'Connell | B Francisco |

OTHERS PRESENT:

☐ PRISONER (IF ABSENT, WHY?) _____

☐ ATTORNEY ____Kelley Burg_____

☐ DEPUTY D. A. _Nik Mikulicich_____ COUNTY OF _Los Angeles_____ _____

☐ OTHERS: _____

## STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATES BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON ____nov. 29 '89____, PAGES _2_ THROUGH _3_ .

☐ THE STATEMENT OF FACTS IS

☐ QUOTED FROM THE BOARD REPORT, DATED _____ _____, PAGE(S) _____ .

☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____ .

☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____ .

BPT 1000 (Rev. 8/90)

BOARD OF PRISON TERMS

*SUB 2*
*71/93*

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION (BPT §2041)

I.   [X]  PAROLE DENIED   *2 yrs*

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

II.  [ ]  PAROLE GRANTED

A.  Base Period of Confinement ............................................. _____ _____ Months

| Case No. | Count No. | Offense |
|---|---|---|
|  |  |  |

B.  Firearm Enhancement............................................+ _____ Months

C.  Other Crimes Total ..............................................+ _____ Months

| Case No. | Count No. | Offense | _____ mos. |
|---|---|---|---|
|  |  |  |  |
|  |  |  | _____ mos. |
| Case No. | Count No. | Offense |  |
|  |  |  | _____ mos. |
| Case No. | Count No. | Offense |  |

D.  Total Term .............................................= _____ Months

E.  Postconviction Credit From _____ To _____ — _____ Months
                                        (Date)                    (Date)

F.  Total Period of Confinement.................................. = _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

III.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

### PANEL HEARING CASE

| Name | Date |
|---|---|
| E Jong | 11 |
| Name | Date |
|  | /21/ |
| Name | Date |
|  | 91 |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|
| Cardin, Luis | C-35792 | CMF-S | 11-21-91 |

BOARD OF PRISON TERMS                                                                    STATE OF CALIF
LIFE PRISONER DECISION FACE SHEET                                    P/U Sub 2 ·11/93

## PERIOD OF CONFINEMENT

### (RECORDS OFFICER USE ONLY)

|                                  | YR | MO |
|----------------------------------|----|----|
| Adjusted Period of Confinement   |    |    |
| Date Life Term Begins          + |    |    |
| At Large Time                  + |    |    |
| PAROLE DATE                    = |    |    |

## MISCELLANEOUS

*Parole denied 2 yrs*

| Prep. Time: | hr. |
|-------------|-----|
| Start Time: | am |
| Stop Time:  | am |
| Total Time: | hr. |

PENAL CODE SECTION 3042 NOTICES    ☒ SENT    (Date) October 3, 1991

### COMMITMENT OFFENSE

| 187            | Murder 2nd      |
|----------------|-----------------|
| (Code Section) | (Title)         |

| A364312        | 2               |
|----------------|-----------------|
| (Case Number)  | (Count Number)  |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|----------------------|-----------------------|------------------|
| 9-15-81              | 9-15-81               | 12-9-90          |

| Type of Hearing ☐ INITIAL ☒ SUBSEQUENT (Hearing No.) 1 | If Subsequent Hearing, Date of Last Hearing 11-29-89 |
|--------------------------------------------------------|------------------------------------------------------|

Department Representative

| Counsel for Prisoner<br>Kelley Burg | Address<br>P.O. Box 231 Point Richmond |
|-------------------------------------|----------------------------------------|
| District Attorney Representative<br>Nik Mikulicich | County<br>Los Angeles |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a **proposed** decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

By:

| Presiding (Name) E Jong | Date 11/ |
|-------------------------|----------|
| Concurring (Name)       | Date 11/21/ |
| Concurring (Name)       | Date /91 |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|-----------|-------------|----------|--------------|
| Cardin, Luis | C-35792 | CMF-S | 11/91 | 11-21-91 |

BPT 1001 (REV. 1/91)

PERMANENT ADDE

COPY SENT TO

## CALIFORNIA BOARD OF PRISON TERMS

In the Matter of the                              Life Prisoner

Hearing of                         Subsequent Parole Consideration (1)

CARDIN, Luis                                  Denied (2 Years)

C-35792

CMF-S

This matter was heard before the Board of Prison Terms (BPT) on November 21, 1991, at the California Medical Facility - South. The hearing panel was composed of E. Tong, Commissioner; M. O'Connell, Commissioner; and R. Francisco, Deputy Commissioner.

Present at the hearing were L. Cardin, prisoner; K. Burg, counsel for prisoner; and N. Mikulicich, Deputy District Attorney, Los Angeles.

Any others present are identified in the transcript.

Oral and documentary evidence was submitted and after due consideration of all the evidence, the panel makes the following findings:

### Legal Status

On September 15, 1981, the prisoner was received in prison pursuant to Penal Code (PC) § 1168 for a violation of PC § 187, second degree murder (Los Angeles County Case No. A-364312, count 1). The controlling minimum eligible parole date (MEPD) was December 9, 1990.

PC § 3041(a) provides that the BPT shall meet with persons sentenced under PC § 1168 and shall normally set a parole release date unless, pursuant to PC § 3041(b), the Board determines that a parole date cannot be fixed at this hearing.

This hearing is conducted pursuant to Title 15, California Code of Regulations (15 CCR), Division 2, Chapter 3, Article 11, which sets forth parole consideration criteria and guidelines for life prisoners implementing PC § 3041.

### Statement of Facts

Incorporated by reference as if fully set forth herein from the BPT hearing of November 29, 1989, pages two and three.

### Parole Suitability

15 CCR § 2402(a) requires that the panel first determine whether the prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison. 15 CCR § 2402(c) sets forth circumstances tending to show unsuitability and 15 CCR § 2402(d) sets forth circumstances tending to show suitability. These regulations are guidelines only.

The panel relied on the following circumstances in determining whether or not the prisoner is suitable for parole:

1. Commitment offense. The offense was carried out in a dispassionate and calculated manner which exhibited a callous disregard for the lives of others.

These conclusions are drawn from the Statement of Facts

Case 3:08-cv-01847-JSW    Document 1-2    Filed 04/07/2008    Page 43 of 66

wherein the prisoner shot and killed the victim who was trying to protect his girl friend from the advances of the prisoner.

2.  Previous record. The prisoner has an unstable social history reflected by his fathering three children by three different women and not providing for the care of any of them. The prisoner's criminal record includes illegal entry into the United States, drunk driving and battery.

3.  Psychiatric factors. The Psychiatric Evaluation dated August 20, 1991, authored by George Maloof, M.D., is not supportive or release noting only slight psychiatric improvement.

Nevertheless, the prisoner should be commended for upgrading academically, for developing a skill in micrographics and for his continued participation in Breaking Barriers. However, these positive aspects of his behavior do not outweigh the factors of unsuitability.

Based on the information contained in the record and considered at this hearing, the panel concludes and states, as required by PC §§ 3043 and 3043.5, that the prisoner would pose a threat to public safety if released on parole.

Therefore, the prisoner is found unsuitable for parole.

PC § 3041.5(b)(2) permits a two year denial if the Board finds that it is not reasonable to expect that parole would be granted at a hearing during the following year and states the basis for the finding. In addition to the foregoing reasons supporting postponement of parole consideration, the panel also specifically finds that it is not reasonable to expect that parole would be granted at a hearing scheduled earlier based on

CARDIN, L.  C-35792                    -3-                    11/21/91
km

the following facts:

1.   The prisoner committed the offense in an especially senseless callous manner. Specifically, he killed the young victim who was trying to protect his girl friend. As a result, a longer period of observation and evaluation is required before the Board can safely set a parole date.

2.   The prisoner recently committed a serious disciplinary violation by attempting to steal eyeglasses from the lens lab resulting in his termination from the vocational program. Therefore he requires a longer period of observation and evaluation before the Board should set a parole date.

3.   A recent Psychiatric Evaluation dated August 20, 91, authored by George Maloof, M.D., indicates a need for a longer period of observation and evaluation or treatment.

4.   The prisoner has not completed necessary programming which is essential to his adjustment and needs additional time to gain such programming. He needs to engage in self-help programs as they are available to deal with his substance abuse and to gain greater insight into the underlying dynamics of the life offense.

The next hearing will be scheduled in two years.

### Recommendation

PC § 3041.5(b)(2) provides that within 20 days following any meeting where a parole date has not been set, the Board shall send the prisoner a written statement setting forth the reason or reasons for refusal to set a parole date and when the prisoner can reasonably expect to be considered again for the setting of a

CARDIN, L.  C-35792                    -4-                    11/21/91
km

parole date and in what beneficial activities the prisoner might participate.

This case shall be scheduled for hearing for parole consideration as provided in 15 CCR § 2270(c).

In preparation for the next parole consideration hearing, the panel recommends that the prisoner:

1. Remain disciplinary free.

2. Continue to upgrade vocationally.

3. Participate in self-help programming for substance abuse and gain greater insight into the underlying dynamics of the life offense.

### Order

Based on the foregoing findings and reasons, parole is denied.


EFFECTIVE DATE OF THIS DECISION      **DEC 17 1991**      .


CARDIN, L.  C-35792                  -5-                  11/21/91
km

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

## LIFE PRISONER: PAROLE CONSIDERATION
## PROPOSED DECISION  (BPT §2041)

**I.** ☑ PAROLE DENIED ( 2 ) years

   If this proposed decision denying parole is approved, the Board will send you a copy of the approved
   decision, including the reasons for denial of parole, within 30 days of the hearing.

---

**II.** [ ]  PAROLE GRANTED

   A.  Base Period of Confinement .................................................. _____ Months

   | Case No. | Count No. | Offense |
   |----------|-----------|---------|

   B.  Firearm Enhancement........................................................+ _____ Months

   C.  Other Crimes Total ...........................................................+ _____ Months

   | Case No. | Count No. | Offense | _____ mos. |
   |----------|-----------|---------|-----------------|

   | Case No. | Count No. | Offense | _____ mos. |
   |----------|-----------|---------|-----------------|

   | Case No. | Count No. | Offense | _____ mos. |
   |----------|-----------|---------|-----------------|

   D.  Total Term ...................................................= _____ Months

   E.  Postconviction Credit From _____ To _____ — _____ Months
                                      (Date)            (Date)

   F.  Total Period of Confinement.......................................... = _____ Months

   The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed
   pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days.
   At that time appropriate pre-prison credits will be applied and a parole release date computed.

   You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or post-
   ponement of your parole date.

---

**III.**  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed
   decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be
   scheduled for a new hearing, as appropriate.

| PANEL HEARING CASE | | |
|---|---|---|
| Name  R Castro | | Date |
| Name  William Stedd | | Date |
| Name  Joseph G. Cutts  P.P. | | Date |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|------|-----------|-------------|--------------|
| CARDIN, Luis | C-35792 | CMF-S | 11-29-89 |

Distribution: White—C, Fi
Canary—BF
Pink—Prison

OF PRISON TERMS

STATE OF CALIFORNIA

PRISONER DECISION FACE SHEET

| | PERIOD OF CONFINEMENT | | | |
|---|---|---|---|---|
| | (RECORDS OFFICER USE ONLY) | YR | MO | DAY |
| Adjusted Period of Confinement ................................................... | | | | |
| Reception Date (See BPT §2289) ................................................ | + | | | |
| At Large Time ................................................................................ | + | | | |
| PAROLE DATE ............................................................................... | = | | | |

**MISCELLANEOUS**

*Parole denied - two years*

---

PENAL CODE NOTICES

SECTION 3042    ☒ SENT _____ 10-20-89
(DATE)

COMMITMENT OFFENSE

187 P.C.                                Murder 2nd
(CODE SECTION)                          (TITLE)

A364312                                 2
(CASE NUMBER)                           (COUNT NUMBER)

| Date Received by CDC | Controlling MEPD |
|---|---|
| 9-15-81 | 12-9-90 |

| Type of Hearing   ☒ INITIAL   ☐ SUBSEQUENT ___ (HEARING NO.) | If Subsequent Hearing, Date of Last Hearing |
|---|---|

Department Representative

| Counsel for Prisoner   Kelly Burg | Address   P.O. Box 2092, San Rafael 94912 |
|---|---|
| District Attorney Representative | County   Los Angeles |

**PAROLE HEARING CALENDAR**

*The following represents the findings, determination, and order of the Board of Prison Terms, State of California.*

By:

Presiding (Name)                                                    Date
R. Castro

Concurring (Name)                                                  Date
Joseph A. Writy   P.P.

Concurring (Name)                                                  Date
Willian

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CARDIN, Luis | C-35792 | CMF-S | 11/89 | 11-29-89 |

2.  Change the language on page 7 fo the proposed decision in number I to:

> ". . . wherein the prisoner released the young female when he saw the boyfriend coming and attempted to drive off. The boyfriend chased the car and, upon catching it in traffic, the prisoner shot the boyfriend, killing him."

3.  Delete paragraph number 2 on page 7 and renumber.

| DECISION REVIEW UNIT SIGNATURE | | DATE |
|---|---|---|
| WILLIAM V. CASHDOLLAR | | 12-210 |

| REVIEWED BY LEGAL COUNSEL | LEGAL COUNSEL INITIALS | RESULT |
|---|---|---|
| ☐ YES  ☐ NO | | ☐ CONCUR   ☐ DISSENT |

LEGAL COUNSEL COMMENTS:

I have reviewed the above-referenced file and  ☒ concur   ☐ dissent with the Decision Review Unit.

COMMENTS: Refer To Decision Review Committee

| CHIEF DEPUTY COMMISSIONER SIGNATURE | | DATE |
|---|---|---|
| amla B. Douglas | | 12-22-89 |

BPT 1138 (4/87)                    Page 2 of 12
BOARD                                         STATE OF CALIFORNIA

BOARD OF PRISON TERMS                                                          STATE OF CALIFORNIA
## DECISION REVIEW COMMITTEE REVIEW OF PROPOSED DECISION
====================================================================================

| INMATE    Luis Cardin | CDC Number C 35792 |
|---|---|

| TYPE OF HEARING    INITIAL LIFE PAROLE CONSIDERATION | DATE OF HEARING 11/29/89 |
|---|---|

CHOOSE ONE:              ☐ Schedule new hearing          ☑ Modify decision

MODIFICATION ORDERED:

PLEASE CHOOSE BY CIRCLING

1. Delete the "Institutional behavior" section on page 5 of the decision and renumber the sections.

2. Change the language on page 7 fo the proposed decision in number I to:

> ". . . wherein the prisoner released the young female when he saw the boyfriend coming and attempted to drive off. The boyfriend chased the car and, upon catching it in traffic, the prisoner shot the boyfriend, killing him."

3. Delete paragraph number 2 on page 7 and renumber.

4. Take the following action:  (please specify)_____

_____

_____

SUPPORTIVE REASONING FOR DECISION:

This more clearly represents the intention of the hearing panel.

| COMMISSIONER SIGNATURE | DATE | ☑ CONCUR | ☐ DISSENT |
|---|---|---|---|
| | 1/9/70 | | |
| COMMISSIONER/D.C. SIGNATURE | DATE | ☑ CONCUR | ☐ DISSENT |
| | 1/9/90 | | |
| COMMISSIONER/D.C. SIGNATURE | DATE | ☑ CONCUR | ☐ DISSENT |
| E Jong | 1/9/90 | | |

I dissent from the majority for the following reasons:

_____

SIGNATURE                                          DATE
====================================================================================
BPT 1139 (4/87)

BOARD OF PRISON TERMS                                                           rE OF CALIFORNIA
## REVIEW OF PROPOSED DECISION

======================================================================
☐ APPROVED    ☒ . REFER TO DECISION REVIEW COMMITTEE ☐ REFER TO RECONSIDERATION PANEL

| INMATE    Luis Cardin | CDC NUMBER  C 35792 |
|---|---|
| TYPE OF HEARING  Initial Parole Consideration Hearing | DATE OF HEARING 11/29/89 |

The Decision Review Unit (LMS) has completed a review of the above hearing and has identified the following issues which need further review.

1. On page 5 of the proposed decision the hearing panel states as follows:

> "The prisoner has programmed in a limited manner while incarcerated and failed to develop a marketeable skill that can be put to use upon release with a completed certificate. He has failed to upgrade educationally and vocationally as previously recommended by the Board at a recommendation hearing. He has failed to demonstate any effort to engage in therapy programs, he has just recently started Alcoholics Anonymous (AA) and he has not been involved in any prior occasion in self-awareness programs."

According to the Board report since incarceration the prisoner has increased his GPL from 4.9 to l2.4. Also according to the Board report on Sept. 8, l989, he was presented with a certificate of completion for 'notable perfomance and successful completion in Microfilm technology.' Finally, accrding to the Board report:

> "Cardin maintains good work records and has addressed substance abuse through participation in 'Alcoholic's Anonymous' and, more importantly, 'Breaking Barriers' self-help program. . . . Mr Cardin, in addition to remaining disciplinary free, has managed to maintain positive relations with staff in both vocational and daily prison contacts. His academic level ha increased significantly and he has involved himself in self-help programs."

The author of the current psychiatric report states the following:

> "He has involved himself in Breaking Barriers, and completed that program in August l989. He spends his free time mostly in athletic pursuits. He has not been able to upgrade himself educationally due to schedule conflicts with his vocational trade of micrographics. He apparently has completed about one-fourth of the total program."

2. On page 7 of the proposed decision the panel synopsizes the crime as follows:

> ". . . wherein he shot to death a young victim, age l7, who was attempting to help a second victim, a young female who the prisoner was attempting to force into his car."

According to the probation officer's report the prisoner released the young female when he saw the boyfriend coming and attempted to drive off. The boyfriend chased the car and, upon catching it in traffic, the prisoner shot the boyfriend, killing him.

3. On page 7 of the proposed decision the hearing panel states that Dr. Walk's report indicates a need for a longer period of observation and/or treatment. DRU asks that the DRC consider this statement in view of the psychiatric report.

### RECOMMENDATION:

1. Delete the "Institutional behavior" section on page 5 of the decision and renumber the sections.

CALIFORNIA BOARD OF PRISON TERMS

In the Matter of the

Hearing of

CARDIN, Luis

C-35792

CMF-S

Life Prisoner

Initial Parole Consideration

Denied (2 Years)

This matter was heard before the Board of Prison Terms (BPT) on November 29, 1989, at the California Medical Facility. The hearing panel was composed of R. Castro, Commissioner; J. Aceto, Commissioner; and W. Elliott, Deputy Commissioner.

Present at the hearing were: L. Cardin, Prisoner; K. Burg, Counsel for Prisoner; and D. Ross, Deputy District Attorney, Los Angeles County.

Any others present are identified in the transcript.

Oral and documentary evidence was submitted and after due consideration of all the evidence, the panel makes the following findings:

## Legal Status

On September 15, 1981, the prisoner was received in prison pursuant to Penal Code (PC) §1168 for a violation of PC §187, second degree murder (Los Angeles County Case No. A-364312). The controlling minimum eligible parole date (MEPD) is December 9, 1990.

FOR
RECORDS OFFICER
USE
Pre-prison
Credit

PC §3041(a) provides that the BPT shall meet with persons sentenced under PC §1168 and shall normally set a parole release date unless, pursuant to PC §3041(b), the Board determines that a parole date cannot be fixed at this hearing.

This hearing is conducted pursuant to Title 15, California Code of Regulations (15 CCR), Division 2, Chapter 3, Article 5, which sets forth parole consideration criteria and guidelines for life prisoners implementing PC §3041.

## Statement of Facts

On or about December 2, 1980, victim Penny Peran met the prisoner outside a 7-11 store located at Ninth and Westmoreland. Upon leaving the sotre, the prisoner attempted to pull the victim to his automobile. The victim's boyfriend was approaching and the prisoner upon seeing him released the victim and entered his car and drove off. The murder victim, Dominguez, chased the prisoner on foot and when he approached within five to 10 feet of the driver's side of the prisoner car, the prisoner shot him. The victim was struck once in the chest and the prisoner drove off. Statements of witnesses indicated that the victim did not have a weapon, and the prisoner had the opportunity to drive from the scene without the conflict.

CARDIN, L.  C-35792          -2-          11/29/89
ld

A physical description of the prisoner and his automobile was obtained.

On December 7, 1980, Linda Coinsuett, who was living with the prisoner and his girlfriend, reported that the prisoner attempted to rape her. A neighbor, Linda Martinez, overheard her screams and knocked on her door, causing the prisoner to flee. As the prisoner was attempting to run from his residence, he noticed police officers approaching. He threw a handgun which he was carrying under a nearby car. The prisoner was originally arrested on the attempted rape and the handgun was recovered. Later testing of this gun and matching of the prisoner's car and his physical description resulted in the connection of the prisoner to the murder which occurred five days earlier.

### Parole Suitability

15 CCR §2402(a) requires that the panel first determine whether the prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison. 15 CCR §2402(c) sets forth circumstances tending to show unsuitability and 15 CCR §2402(d) sets forth

CARDIN, L.  C-35792          -3-          11/29/89
1d

circumstances tending to show suitability.    These
regulations are guidelines only.

The panel relied on the following circumstances in
determining whether or not the prisoner is suitable for
parole:

1.    Commitment offense.    The offense was carried out in
an especially atrocious and callous manner and the motive
of the crime is inexplicable.

These conclusions are drawn from the Statement of Facts
wherein the prisoner while attempting to force a young
female into his car was stopped by the victim who came to
her assistance.    While approaching the prisoner's car the
prioner took his gun and shot the 17-year-old victim in the
chest causing his immediate death.    The prisoner was
arrested a few days later when police were called on an
attempted rape of another victim.    He was in possession of
a gun at the time.

2.    Previous record.    The prisoner has a record of
violence and assaultive behavior.    The record revealed the
prisoner was convicted of battery on June 8, 1979.    He has
an unstable social history which includes a long record of
using aliases due to his illegal status and several arrests
for criminal behavior.    He has failed a previous grant of
probation and cannot be counted upon to avoid criminality.

CARDIN, L.   C-35792           -4-            11/29/89
ld

He was on summary probation at the time of the murder for battery. He has failed to profit from society's previous attempts to correct his criminality.

The prisoner's prior criminal record includes drunk driving, battery, and illegal entry into the United States numerous times.

3. Psychiatric factors. The Psychiatric Evaluation dated October 12, 1989, by Donald R. Walk, M.D., Consulting Psychiatrist, is inconclusive for parole readiness and he gives one recommendation of the possibility of psychosexual problems that could be resolved by the prisoner completing the Category X evaluation.

The panel was not impressed with the prisoner's explanation of what took place leading up to the shooting of the victim. Evidence of remorse is questionable as is his credibility.

The panel finds the prisoner needs therapy in order to face, discuss, understand and cope with stress in a non-destructive manner. Until progress is made, he continues to be unpredictable and a threat to others.

The prisoner's gains are short term and he must demonstrate an ability to maintain gains over an extended period of time.

The prisoner is commended for his good work habits,

fore remaining disciplinary free and for his involvement in micrographics training.

Based on the information contained in the record and considered at this hearing, the panel concludes and states, as required by PC §§3043 and 3043.5, that the prisoner would pose a threat to public safely if released on parole.

Therefore, the prisoner is found unsuitable for parole.

PC §3041.5(b)(2) permits a two year denial if the Board finds that it is not reasonable to expect that parole would be granted at a hearing during the following year and states the bases for the finding. In addition to the foregoing reasons supporting postponement of parole consideration, the panel also specifically finds that it is not reasonable to expect that parole would be granted at a hearing scheduled earlier based on the following facts:

1.    The prisoner committed the offense in an especially heinous, atrocious and cruel manner wherein the prisoner released the young female when he saw the boyfriend coming and attempted to drive off. The boyfriend chased the car and, upon catching it in traffic, the prisoner shot the boyfriend, killing him.

2.    The prisoner has not completed necessary programming. He needs to continue his AA programming,

CARDIN, L.    C-35792              -6-              11/29/89
1d

complete his vocational trade, participate in therapy, and improve his educational record.

The next hearing will be scheduled in two years.

Recommendation

PC §3041.5(b)(2) provides that within 20 days following any meeting where a parole date has not been set, the Board shall send the prisoner a written statement setting forth the reason or reasons for refusal to set a parole date and when the prisoner can reasonably expect to be considered again for the setting of a parole date and in what beneficial activities the prisoner might participate.

This case shall be scheduled for hearing for parole consideration as provided in 15 CCR §2270(c).

In preparation for the next parole consideration hearing, the panel recommends that the prisoner:

1. Remain disciplinary free.

2. Upgrade vocationally and educationally.

3. Participate in self-help such as AA and therapy programming when available.

Order

Based on the foregoing findings and reasons, parole is denied.

EFFECTIVE DATE OF THIS DECISION ___ **JAN 1 8 1990** ___.

CARDIN, L.  C-35792          -7-          11/29/89
ld

BOARD OF PRISON TERMS

STATE OF CALIFORNI

## LIFE PRISONER: DOCUMENTATION HEARING (BPT §2269.1)

BPT REPRESENTATIVE

### SENTENCE INFORMATION

| OFFENSE (CODE SECTION AND TITLE) | CASE NUMBER | COUNT NUMBER |
|---|---|---|
| P-187 MURDER 2ND | LA A364312 | 02 |

| DATE RECEIVED CDC | MIN ELIG PAROLE DATE | EARLIEST MIN ELIG PAROLE DATE |
|---|---|---|
| 9-15-81 | 12-9-90 | |

| INITIAL HRG SCHEDULED | PERIOD COVERED BY THIS HEARING | PRIOR DOCUMENTATION HEARING DATES |
|---|---|---|
| 11-89 | | |

### INFORMATION CONSIDERED

| CDC 115 CHRONOS | LAUDATORY CHRONOS | |
|---|---|---|
| | DATE | CIRCUMSTANCES |
| ☐ DISCIPLINARY FREE | | Se board report |
| ☐ MAJOR DISCIPLINARY (SERIOUS) | | of 8-14-87 |
| ☐ MINOR DISCIPLINARY (ADMIN ) | | |

| CDC 128 CHRONOS (NEGATIVE) | | CHRONOS — WORK, EDUCATIONAL, VOCATIONAL, ETC. | |
|---|---|---|---|
| DATE | CIRCUMSTANCES | DATE | CIRCUMSTANCES |
| | | | |

### INSTRUCTIONS TO CDC STAFF

DOCUMENTS STILL REQUIRED: _____

PSYCHIATRIC

REFER TO CATEGORY _____ P-R

COMPLETE PRIOR TO _____

PLACE ON APPROPRIATE

☐ LIFE PRISONER DOCUMENTATION CALENDAR

☒ LIFE PRISONER PAROLE CONSIDERATION HEARING CALENDAR    11/89  PCH

OTHER _____

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DA] |
|---|---|---|---|---|
| CARDIN, LUIS | C-35792 | CIF | 9/87 | 9/21/87 |

BPT 1009 (REV 4 86)    PAGE 1 OF ____ PAGES    PERMANENT ADDEND

AFTER REVIEWING WITH THE PRISONER THE FACTORS WHICH MIGHT BE OF CONCERN AT HIS/HER INITIAL PAROLE HEARING, THE PANEL MADE THE FOLLOWING EVALUATIONS AND FUTURE RECOMMENDATIONS

RE VOCATIONAL TRAINING _Has butcher shills_

RE ACADEMICS _Probable dropout - not interested_

RE WORK RECORD _good record_

RE GROUP ACTIVITIES _Needs goups focused on substance abuse_

RE PSYCHIATRIC TREATMENT _____

RE PRISON BEHAVIOR _Maintain clean record._

RE OTHER _____

BPT REPRESENTATIVE SIGNATURE

DATE  9-21-87

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|-----------|-------------|----------|--------------|

Board of Prison Terms                                          State of California

LIFE PRISONER:  DOCUMENTATION HEARING (BPT §2269.1)

| BPT PANEL | | DEPARTMENT REPRESENTATIVE |
|---|---|---|
| Name (Representative) | (Representative/Member) | Name |
| R. SEABRIDGE | K. WASHINGTON | NONE |

SENTENCE INFORMATION

| Offense    P187 | Murder 2nd | A364312, | 2 |
|---|---|---|---|
| (Code Section) | (Title) | (Case Number) | (Count Number) |

| Date Received CDC | Recommendation Hearing Date | Initial Hearing Scheduled |
|---|---|---|
| 9-15-81 ✓ | 6-82 ✓ | 11-87 ✓ |

| Min. Elig. Parole Date | Prior Documentation Hearing Dates |
|---|---|
| 12-15-88 ✓ | NONE |

INFORMATION CONSIDERED

Documents Considered (for this hearing)

[X] Central File                         [ ] CDC 115's    Dates      Circumstances

[X] BPT Board Report  9-4-84                    NONE

[X] Psychiatric Evals.: 9-2-83 ; 9-17-84

[X] Work Chronos: 9-3-82 ; 10-24-83

[ ] Education Chronos: NONE

[ ] Voc.Training Chronos: NONE

[X] CDC 128's   Dates    Circumstances          [ ] Other    Dates      Title
    128-B   8-12-83   Positive Work
                      Chrono, etc.

(Continuation Sheet, Page 4)

Instructions to CDC Staff:  Documents still required: NONE

Psychiatric:  Refer to Category   X   .  Complete prior to Next Board Hearing *

Place on Appropriate   [X] Life Prisoner Documentation Calendar.

                       [X] Life Prisoner: Parole Consideration Hearing. (11/87)

*REASON: See obverse side under Psychiatric. BPT Concerned about Psyc Evn
Failure to Address this Sexual Crimes - Refer FOR PAGES 5 THRU 11
Cnt. X Program Should Enter Total Events AND Address Sex Crimes

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DAT |
|---|---|---|---|---|
| CARDIN, Luis | C-35792 | CMF | 9-84 | 9-25-84 |

After reviewing with the inmate the factors which might be of concern at his/her initial parole hearing, the panel made the following evaluations and future recommendations:

Re: Vocational Training _Claims outside experience as welder and self-employed auto mechanic. Degree of competency unknown. Via OJT has learned to operate specialized painting machinery._

Re: Academics _No participation. Very limited formal educational background. In future should consider any educational program that will improve ability in English language._

Re: Work Record _Appears to have good work ethic as evidenced by work reports at Folsom. Continue to maintain a good work record._

Re: Group Activities _Minor history of alcohol & marihuana use - primarily socially. However, some indications of occasional alcohol abuse (See CII). Might consider Alcoholics Anonymous._

Re: Psychiatric Treatment _Panel does not concur with latest psychiatric conclusion that offense "a one time only event." Note multiple offenses and psycho-sexual inferences from crimes not addressed. May need psycho-therapy._

Re: Prison Behavior _Has been disciplinary free since incarceration. Continue to maintain a clear record in this area._

Re: Other _____

_____

_____

_____

(Continuation Sheet, Page 4)

| PANEL HEARING CASE | | |
|---|---|---|
| Name (Representative) | Representative/Member | Date |
| _Eldridge_ | | _9-25-84_ |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CARDIN, Luis | C-35792 | CMF | 9-84 | 9-25-84 |

BPT 1009 (1/1/82)          Page 2 of _4_ pages          PERMANENT ADDEND

Board of Prison Terms                                                    State of California

LIFE PRISONER: DOCUMENTATION HEARING:
                POSTCONVICTION CREDIT WORKSHEET

| Name CARDIN, Luis | | CDC Number C-35792 |
|---|---|---|
| Hearing Date ~~9-04~~ 9-25-84 | Reception Date 9-15-81 ✓ | MEPD 12-15-88 |

INSTRUCTIONS:  Enter each year from reception date to present at Initial Documentation
               Hearing and from previous hearing to present at Subsequent Documentation
               Hearings.  List all factors which will be considered once the prisoner is
               deemed suitable for parole.  The panel finding suitability will assign
               postconviction credits.

| YEAR | PROGRAM SUMMARY: POSITIVE AND NEGATIVE FACTORS |
|---|---|
| 15-9-81 Da Mo Yr TO 14-9-82 Da Mo Yr | Rec'd CDC; RCC-CIM, Processed and Transferred to Folsom 10-14-81 For Assignment. Close "B" "R" Custody. Unassigned until August 1982. At that time given work assignment in Industries (License Plate) As welder. Average work Performance. Clear Disciplinary Record. No other Reported Activities. |
| 15-9-82 Da Mo Yr TO 14-9-83 Da Mo Yr | At Folsom Entire period. Close B "R" Custody. Continued assign-ment in Correctional Industries License Plate Factory. Reassigned from welder to Roller Painter, printing License Plates. Overall performance slightly above average. Clear Disciplinary Record. No other Recorded Activities |
| 15-9-83 Da Mo Yr TO 25-9-84 Da Mo Yr | At Folsom until Transfer to CMF For Medical Reasons on 8-1-84. Medium A "R" Custody Granted 10-26-83. Continued work Assignment in Industries LPF. No other Activities. Clear Disp-linary Record. Transfer to CMF for Removal of bilateral Pterygiums (eye Growths). |

BPT 1009 (1/1/82)                        Page 3 of 4 pages

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

## PAROLE RECOMMENDATION HEARING; LIFE PRISONER (BPT §2267)

| BPT PANEL | DEPARTMENT REPRESENTATIVE |
|---|---|
| Name (Representative)<br><br>J. CROW   /   D. MOORE | Name<br><br>D. EL ALLEN,  CCI |

### SENTENCE INFORMATION

| | | | |
|---|---|---|---|
| Offense ___187 PC___<br>(CODE SECTION) | ___Murder 2nd___<br>(TITLE | ___A364312___<br>(CASE NUMBER) | ___2___<br>(COUNT NUMBER) |

| Maximum Term | Minimum Elig. Parole Date |
|---|---|
| [XX]  Life   15 to Life | 12-9-90 |

### INFORMATION CONSIDERED

**Legal Documents**

[✓] Abstract of Judgment __9-8-81__ (DATE)

[✓] Sentencing Transcript __9-8-81__ (DATE)

[ ] Trial Transcript

[ ] Other _____

**Case Record**

[✓] Cumulative Summary __11-22-81__ (DATE)

[✓] POR __8-25-81__ (DATE)

[✓] Rap Sheet

[ ] Other _____

[ ] Arrest & Crime Report _____ (DATE)

**Reports**

[ ] CDC Reports _____ (DATE)

[ ] Psychological/ Psychiatric Report _____ (DATE)

[ ] Material Submitted by Prisoner/Attorney _____

[ ] Other _____

__7/82 issue__

_Place on 9/84 Doc hrg #1_

Place on Life Parole Consideration Calendar during 13th month prior to Minimum Eligible Parole Date.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CARDIN, Luis O. | C-35792 | Folsom | 6-82 | |

After reviewing with the inmate the fact which might be of concern at his/her initial group hearing, the panel made the following recommendations:

Re: Vocational Training _Claims and auto mechanic skills—_
_Plans To return To That Trade ._

Re: Academics _needs basic education - English ._

Re: Work Record _not working at Folsom due To custody_

Re: Group Activities _____

Re: Psychiatric Treatment _Pre Board Evaluation_

Re: Prison Behavior _no expected to be a problem_

Re: Other _____

To CDC Staff:

☐ Request documents _____

☐ Refer for Category _____ Placement _____

PANEL HEARING CASE

Name (Representative)
_Joe Cin_

Date
6-8-82

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|-----------|-------------|----------|--------------|
| CARDEN, Luis O. | C-35792 | Folsom | 6-82 | |

# EXHIBIT C
# (PSYCH EVALUATIONS)

**MENTAL HEALTH EVALUATION FOR**
**THE BOARD OF PRISON HEARINGS**
**April, 2006 Calendar**

**CORRECTIONAL TRAINING FACILITY SOLEDAD**
**MARCH, 2006**

| | |
|---|---|
| **NAME:** | **CARDIN, LUIS** |
| **CDC#:** | **C-35792** |
| **DOB:** | **5/16/55** |
| **OFFENSE:** | **PC 187 MURDER, SECOND DEGREE** |
| **DATE OF OFFENSE:** | **12/2/80** |
| **SENTENCE:** | **15 YEARS TO LIFE** |
| **EVALUATION DATE:** | **3/14/06** |
| **MEPD:** | **3/6/85** |

## I.    IDENTIFYING INFORMATION:

Mr. Luis Cardin is a 50 year old, Hispanic, first term, widowed male that is a native of El Salvador. He has a US-INS hold, and he plans to return to El Salvador on his release. He has 25 years in custody on his sentence. He is a Christian.

## SOURCES OF INFORMATION:

This evaluation is based upon a single 90 minute interview, plus review of the central and medical files.

The psychological evaluation by Dr. Terrini, staff psychologist at CTF-Soledad, on 2/17/99, has the psychosocial assessment. As a result, this information will not be repeated at this time.